**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

MELISSA HODGKINS,
STACY REWITZER,
RENEE SCHWARTZKOPF, and
HEATHER CROWE, on behalf of themselves,
individually, and on behalf of all others similarly situated,

                                   Plaintiffs,

     v.

FRONTIER AIRLINES, INC.,

                                   Defendant.

_____

**COMMPLAINT AND JURY TRIAL DEMAND**
_____


     Plaintiffs Melissa Hodgkins, Stacy Rewitzer, Renee Schwartzkopf, and Heather Crowe,

on behalf of themselves and others similarly situated, by and through their attorneys Sara Neel

and Mark Silverstein of the AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO,

Galen Sherwin of the WOMEN'S RIGHTS PROJECT OF THE AMERICAN CIVIL LIBERTIES UNION

FOUNDATION, Vincent Levy, Jayme Jonat, and Lani Perlman of HOLWELL SHUSTER &

GOLDBERG LLP, and Juno Turner of TOWARDS JUSTICE respectfully allege for their Complaint

and Jury Demand as follows:

## INTRODUCTION

     1.     Named Plaintiffs in this case are female flight attendants at Frontier Airlines, with

several decades of flying experience between them, who had children and breastfed their babies

during their employment with Frontier. They chose their careers as flight attendants because of

their love of travel, their joy in meeting new people and learning about different places, and their dedication to helping others. Like most expectant parents, when it came time to start their families, they were overjoyed to start this exciting new chapter of their lives. At the same time, they were dedicated to the careers they loved and assumed they would be able to continue working while raising their children—after all, the right to keep your job during pregnancy and after having a baby has been the law for more than 40 years, since the enactment of the Pregnancy Discrimination Act ("PDA"). Yet Plaintiffs found themselves faced with mounting obstacles once they became pregnant that forced them to make impossible choices between their families and their livelihood—precisely the type of choices that the PDA was intended to prevent.

2.      Frontier's failure to account for Plaintiffs' needs related to pregnancy and breastfeeding caused them to suffer serious penalties, both at and outside of work, simply because they had children. Plaintiffs faced discipline for absences related to pregnancy, and were eventually forced onto unpaid leave weeks or months before their due dates with no alternatives, depriving them of critical income when they needed it the most. With no paid parental leave and only the short unpaid leave required by federal law under the Family and Medical Leave Act ("FMLA")—if any remained to them— Plaintiffs were all still breastfeeding their newborns when it came time for them to return to work. Yet Frontier refused to make it possible for them to pump breast milk on the job, which they needed to do to be able to continue nursing. This left Plaintiffs with the Hobson's choice of continuing to breastfeed or earning a paycheck. Plaintiffs paid a steep price as a result of these policies, including being forced onto unpaid leave, forced to give up breastfeeding—along with the many associated benefits for themselves and their babies—and forced to work under conditions that have caused them physical pain and emotional

distress and have put their health at risk.

3.      For example, after Frontier refused to honor her requests for accommodations, such as schedule modifications that would enable her to pump between flights or temporary reassignment to a ground position, Plaintiff Stacy Rewitzer was forced off the job during the entire duration of the period she was breastfeeding. Plaintiff Renee Schwartzkopf was afraid to request accommodations at all for fear of losing her income, and was left with no choice but to pump breast milk for her child in an unsanitary airplane lavatory, fearing daily the loss of her job. Plaintiff Melissa Hodgkins made the heartbreaking decision to give up breastfeeding in order to return to work following the birth of both of her babies due to the lack of available or appropriate accommodations. Plaintiff Heather Crowe was faced with the same painful decision earlier this year when Frontier ignored her requests for a temporary ground position so she could continue to breastfeed her newborn.

4.      Frontier's policies and practices challenged here are a legacy of the long and unfortunate history of sex discrimination in the airline industry as a whole. Most airlines at one time had explicit policies forcing female flight attendants off the job when they got married or became pregnant, subjecting them to discriminatory requirements related to their weight and appearance, and imposing blatant gender stereotypes. One infamous ad contained the tagline, "I'm Cheryl, fly me!" Although many of these more overt practices have been abandoned in the face of lawsuits and public outcry, more subtle forms of discrimination persist, many of which have the same effect of forcing women off the job, especially when they become pregnant or have children.

5.      Frontier's policies and practices have had precisely that effect. Plaintiffs allege on behalf of themselves and a class of all similarly situated workers that Frontier has systematically

discriminated against pregnant and breastfeeding flight attendants by penalizing them for pregnancy-related absences protected under the FMLA, singling out pregnancy and breastfeeding for worse treatment than other conditions, and failing to comply with Colorado laws that require employers to accommodate pregnancy and related medical conditions and specifically mandate the provision of break time and a private, sanitary location to pump. Plaintiffs seek commonsense policy changes that would enable pregnant and breastfeeding flight attendants to continue working and eliminate the many disadvantages they suffer, compensation for themselves and other women who have been similarly harmed, as well as a declaration that Frontier's policies and practices were unlawful.

6.     The principal policies and practices challenged in this case include:

a.     ***Penalization of Pregnancy Under the Dependability Policy:*** Like all pregnant workers, Plaintiffs required regular prenatal care, and several developed medical conditions such as fatigue, pain, swelling, or nausea that required them to take time off from work. Yet under its strict "dependability policy," Frontier penalized them and other pregnant flight attendants for certain absences related to pregnancy. This practice discriminated against Plaintiffs by treating pregnancy-related absences worse than other types of absences, including non-pregnancy-related absences under the FMLA and absences resulting from disabilities, and deterred Plaintiffs from using their legally protected rights to pregnancy-related FMLA leave.

b.     ***Forced Unpaid Leave and Refusal to Accommodate Pregnancy:*** As is true for all pregnant flight attendants, particularly in the third trimester, Plaintiffs also eventually developed restrictions during the course of their pregnancies that rendered them unable to continue flying. As a result, Plaintiffs and other pregnant flight attendants

4

found themselves grounded, often months before they had their babies, and forced to go on unpaid leave. Yet Frontier provided no options for flight attendants that would have enabled them to continue working during the period when they were grounded. Frontier has ignored or outright denied requests for temporary job reassignment from Plaintiffs and other pregnant flight attendants who have sought such an accommodation, while providing flight attendants with similar restrictions for reasons other than pregnancy the option to seek a temporary alternative assignment in a ground position.

      c.      ***Refusal to Accommodate Breastfeeding and Ban on Pumping on Duty:***
Because Frontier offered flight attendants neither paid time off for recovery from childbirth nor any parental leave, and because many flight attendants used a significant portion of or exhausted their available leave under the FMLA due to being forced off the job at a certain point during their pregnancies, they were often expected to return to work within mere weeks of giving birth. Although many flight attendants, including Plaintiffs, were still breastfeeding when they returned to work, Frontier had no policy to address flight attendants' needs for accommodations related to breastfeeding. Frontier provided neither breaks to express breast milk nor accessible, sanitary facilities for flight attendants to use for pumping while they were working. And Frontier has systematically refused to respond to Plaintiffs' requests for accommodations related to breastfeeding and to provide any such accommodations. Instead, Frontier has categorically denied all requested accommodations that would allow flight attendants who are breastfeeding to remain on the job, and informed them they would not be permitted to return to work until they were cleared of any restrictions, including that they no longer needed accommodations to pump. Frontier has gone so far as to prohibit flight attendants from

5

pumping at all while on the job, even during breaks from their duties. Because flight attendants commonly work eight- to twelve- hour days, this effectively amounts to a ban on continuing to breastfeed after returning to work.

7.      Plaintiffs allege, on behalf of themselves and the Classes they seek to represent, that Frontier's treatment of flight attendants who are pregnant or breastfeeding has violated and continues to violate state and federal law, including: Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the Family and Medical Leave Act, 5 U.S.C. § 6381 *et seq.* ("the FMLA"); the Colorado Law on Reasonable Accommodations for Pregnancy, Childbirth, and Related Conditions, Colo. Rev. Stat. Ann. § 24-34-402.3; the Colorado Workplace Accommodations for Nursing Mothers Act, Colo. Rev. Stat. § 13-1-124(1) ("WANMA"); and the Colorado Anti-discrimination Act, Colo. Rev. Stat. § 24-34-401 *et seq.* ("CADA"). They seek declaratory and injunctive relief and monetary damages to redress the effects of Frontier's systemic, pervasive and discriminatory employment policies and practices.

## JURISDICTION AND VENUE

8.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs are asserting federal claims under Title VII and the FMLA, as well as Colorado state law.

9.      This Court also has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

10.     Personal jurisdiction over Frontier Airlines is proper because Frontier does business in the state of Colorado, including operating its principle place of business in Denver County, Colorado, and a principle airline hub at Denver International Airport; because a substantial part of the events giving rise to the action occurred in Denver, Colorado; and because

the employment records relevant to the challenged employment practices are maintained and administered in this District.

11.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the employment practices alleged to be unlawful were committed in and around Denver, Colorado.

12.     This Court has pendent jurisdiction over Plaintiffs' Colorado state law claims brought under the Colorado Law on Reasonable Accommodations for Pregnancy and Related Conditions, CADA, and WANMA, as those claims arise from the same nucleus of operative facts as Plaintiffs' federal statutory claims.

## PARTIES

13.     Plaintiff Melissa Hodgkins is and has been at all relevant times a flight attendant employed by Frontier Airlines. She was at all times relevant hereto a resident of and domiciled in Littleton, Colorado. She has been based out of Denver International Airport for the majority of the relevant time period.

14.     Plaintiff Stacy Rewitzer (née Schiller), is and has been at all relevant times a flight attendant employed by Frontier Airlines. She was at all times relevant hereto a resident of and domiciled in Castle Rock, Colorado. She is based out of Denver International Airport.

15.     Plaintiff Heather Crowe is and has been at all relevant times a flight attendant employed by Frontier Airlines. She was based in Orlando, Florida from September 2015 through February 2016. She was at all other times relevant hereto a resident of and domiciled in Denver, Colorado. She is based out of Denver International Airport.

16.     Plaintiff Renee Schwartzkopf is and has been at all relevant times a flight attendant employed by Frontier Airlines. She was at all times relevant hereto a resident of and domiciled in Denver, Colorado. She is based out of Denver International Airport

17.     All of the Plaintiffs had worked for Defendant for over a year at the time of each of their pregnancies.

18.     All of the Plaintiffs had worked at least 504 hours for the Defendant in the same year as each of their pregnancies.

19.     Defendant Frontier Airlines is a corporation registered in and with a principle place of business located in Denver, Colorado.

20.     Frontier Airlines had 50 or more employees within 75 miles of the locations where Plaintiffs worked.

## FACTUAL ALLEGATIONS

**A.      BACKGROUND RELEVANT TO PREGNANCY AND BREASTFEEDING[1]**

21.     The typical duration of pregnancy is 40 weeks.

22.     The condition of being pregnant does not by itself disqualify a flight attendant from flying.

23.     To decrease risks of negative health outcomes, pregnancy requires regular prenatal care, including regular doctors' visits that increase in frequency as a pregnancy progresses.

24.     For some individuals, pregnancy may cause physiological changes and conditions such as morning sickness, swelling, fatigue and pelvic pain. Depending on their individual health circumstances, a pregnant flight attendant's health care provider may also place restrictions on performing specific activities. These conditions or restrictions are likely to limit a pregnant flight attendant's ability to perform their job duties at a certain point during the pregnancy. The point at

---

[1] For purposes of this Complaint, the term "breastfeeding" includes both feeding a baby breast milk directly from the breast or feeding pumped breast milk from a bottle or other feeding method. The terms "breastfeeding" and "lactation" are also used interchangeably to describe the condition of the human body that results in production and secretion of breast milk.

which that happens varies from person to person depending on individual medical circumstances along with other factors.

25.     Lactation is the production and secretion of breast milk by the mammary glands. Lactation arises following and as a direct result of pregnancy and childbirth due to hormones secreted in the body during and after birth.

26.     A broad consensus exists among medical and public health experts that breastfeeding is optimal for infants for a year or longer following birth, and that it has broad developmental, psychological, social, economic and environmental benefits. According the United States Surgeon General, breastfeeding protects babies from illnesses like ear, skin, and respiratory infections, diarrhea, and vomiting, as well as longer-term conditions such as obesity, type 1 and 2 diabetes, and asthma. In addition, those who breastfeed their babies for the recommended duration themselves benefit from lower risks of post-partum depression, breast cancer, heart disease, and other ailments.

27.     All major leading medical associations, including the American Academy of Pediatrics, the American Academy of Family Physicians, the American Public Health Association, the American College of Obstetricians and Gynecologists, the American Academy of Nutrition and Dietetics, and the World Health Organization endorse breastfeeding as optimal because of the demonstrated health benefits both for those who breastfeed and their infants.

28.     The American Academy of Pediatrics recommends that infants be fed breast milk exclusively for the first six months following birth, and that after six months, they be fed primarily breast milk supplemented by other foods. Breastfeeding is recommended for at least a year "or as long as is mutually desired by mother and infant."

29.     Those who are breastfeeding and are separated from their babies must remove, or

"express," breast milk from the breast, on roughly the same schedule as the baby's feeding schedule. This is usually accomplished by using a breast pump, which is a manual or electric device for drawing milk from the breasts by suction, and the process of removing breast milk from the breasts with a pump is referred to as "pumping." Regular pumping ensures that there is a supply of milk on hand for the baby to take from a bottle regardless of whether the breastfeeding parent is physically present and helps to maintain adequate production of breast milk.

30.     While the pumping schedule varies from person to person based on numerous factors, those who are breastfeeding typically need to pump breast milk every two to three hours for the first year of their baby's life.

31.     The process of pumping typically takes between 15 and 25 minutes, depending on the individual.

32.     The process of pumping can, if necessary, be terminated at a moment's notice in roughly the same amount of time it would take to terminate a trip to the restroom for other physiological needs.

33.     Failure to remove milk from the breasts with sufficient frequency causes pain, swelling, discomfort, and leaking breast milk, and can lead to medical complications, including blocked ducts or mastitis, an infection of the breast tissue, as well as diminished milk supply, and ultimately cessation of lactation altogether.

34.     In accordance with the medical consensus in support of breastfeeding, the United States and the State of Colorado have adopted policies that support continuation of breastfeeding upon return to the workforce.

35.     Obstacles to pumping at work are associated with shorter duration of

breastfeeding and are a leading reason that many workers terminate breastfeeding despite their desire to continue doing so.

36.     A restroom or lavatory is generally not considered an appropriate place to express breast milk and should be used only as a last resort. Even if a restroom is kept clean, the potential for contamination by harmful bacteria makes it risky to handle either breast pumping equipment or breast milk itself. There are also concerns related to comfort, privacy, and availability that apply to both single-user and multi-user facilities.

37.     In accordance with the strong medical consensus on the benefits of breast milk and breastfeeding, and in accordance with their doctors' recommendations, all Plaintiffs wished and intended to breastfeed their babies.

## B.      COMMON FACTUAL ALLEGATIONS AS TO FRONTIER'S POLICIES AND PRACTICES RELEVANT TO PREGNANCY AND BREASTFEEDING

### Penalization of Pregnancy-Related Absences Under Frontier's "Dependability" Policy

38.     At all relevant times Frontier had a policy of requiring employees to notify Frontier as soon as the employee learned they were pregnant.

39.     At all relevant times Frontier maintained and continues to maintain a "Dependability Policy" under which flight attendants were assigned points for each attendance "occurrence" such as an absence or tardiness—including trips missed due to illness.

40.     Per the Employee Handbook in effect during the relevant time period, flight attendants received 1.5 points per occurrence even if they had a medical excuse from their doctor. Flight attendants began to face disciplinary action after accruing three to four points and were subject to termination after accruing eight points. Points would "roll off" after twelve months, but the clock for the twelve-month roll-off period would be frozen during the period of any FMLA or medical leave of absence, including time off to recover from childbirth.

41.     The Dependability Policy exempted certain types of absences from accruing points, including "absences for approved leaves." Such leaves might include FMLA leaves, military leaves, and medical leaves. Excused absences did not trigger accrual of points under the policy. The policy further permitted absences to be excused for reasons including "previous overtime, road trips, scheduled training classes, weather conditions or individual (such as a recognized disability-related situation) or facility/business conditions" upon approval by the manager of the department.

42.     The Dependability Policy allowed flight attendants with six months of perfect attendance to be awarded two credit points to their "bank" of available days off for twelve months, which could result in up to six hours (three hours if part-time) of bonus pay over a twelve-month period.

43.     Frontier's discriminatory Dependability Policy has resulted in harsh consequences for pregnant flight attendants. Although a pregnancy-related absence should qualify as an absence that would not accrue points under the Dependability Policy because it qualifies for FMLA leave, in practice, Frontier has routinely assigned points to flight attendants for absences related to pregnancy and has refused to re-code those absences after the fact in a manner that would exempt them from accruing points.

44.     The Dependability Policy also made it nearly impossible for pregnant flight attendants to achieve perfect attendance records due to common pregnancy-related health issues as well as the need to obtain regular prenatal care.

**Forced Unpaid Leave and Refusal to Accommodate Pregnancy**

45.     Flight attendants who lose their certification to fly during pregnancy are grounded and placed on FMLA leave if they qualify, or on medical leave if they do not.

46.     Frontier did not offer paid leave to flight attendants who were grounded due to pregnancy or related conditions. Any FMLA or medical leave taken by flight attendants who were grounded as a result of pregnancy or pregnancy-related conditions was unpaid, except to the extent that a flight attendant was able to use any accrued paid time off during the leave.

47.     Frontier has maintained a policy, pattern or practice of refusing to engage in an interactive process with or to provide reasonable accommodations, including temporary alternative job assignments, to flight attendants who are grounded due to pregnancy or related conditions. Instead Frontier has ignored or categorically denied all requests for accommodation that would enable pregnant flight attendants to continue working during the period when they are grounded.

48.     At all relevant times, Frontier has maintained a policy pursuant to the Americans with Disabilities Act ("ADA") under which it engages in an interactive process with and provides reasonable accommodations to qualified individuals with disabilities, including accommodations such as job restructuring, modified work schedules, reassignment to vacant positions, and adjustment or modification of job duties.

49.     At all relevant times, Frontier has also maintained a policy or practice of providing accommodations such as temporary alternative job reassignment to flight attendants with medical conditions unrelated to pregnancy or childbirth, including flight attendants with on-the-job injuries.

50.     Upon information and belief, Frontier has provided temporary ground assignments to flight attendants recovering from on-the-job injuries resulting from incidents ranging from falling off of the employee bus, tripping on ice, having hot coffee splattered in the face, and tripping in the airplane aisle.

51.     Upon information and belief, Frontier has also offered a flight attendant who suffered from a pulmonary embolism off of the job and who was not fit to fly the opportunity to work at Frontier's General Office in connection with recruiting.

52.     Upon information and belief, Frontier has permitted flight attendants with medical conditions and on-the-job injuries to work at a Goodwill Industries thrift store or to do office work while receiving a paycheck from Frontier. For example, upon information and belief, Frontier assigned at least one other flight attendant to work at a Goodwill Industries thrift store when she was injured on the job due to turbulence.

**<u>Refusal to Accommodate Breastfeeding and Ban on Pumping While on Duty</u>**

53.     During the relevant time period, Frontier's Collective Bargaining Agreement ("CBA") referenced "maternity leave," but did not have any policy providing for a specified period of paid or unpaid maternity leave or parental leave for flight attendants after giving birth, outside of what may have been available under the FMLA. Instead, Frontier's "maternity leave" consisted of the period of unpaid leave that commenced when the flight attendant lost clearance to fly during pregnancy.

54.     Flight attendants who take time off after giving birth are placed on FMLA leave if they qualify, or on medical leave if they do not. Both forms of leave are unpaid. Medical leaves are intended for an employee's own illness, injury, or pregnancy, and are granted at the discretion of Frontier.

55.     Many flight attendants, including several of the Plaintiffs, use or used a significant amount of the twelve weeks available under FMLA during their pregnancy and therefore were due to return to work before they had fully recovered from childbirth. Many flight attendants, including all Plaintiffs, were still breastfeeding their babies at the time they were due

to return to work.

56.     At all relevant times, Frontier had no written policies related to flight attendants who were breastfeeding.

57.     At all relevant times, Frontier has not asked flight attendants who are preparing to return to work following childbirth whether they intend to pump at work. Unless the flight attendant specifically requested accommodations related to breastfeeding, Frontier did not discuss or provide guidance to flight attendants as to what was or was not permitted with respect to pumping on the job.

58.     At all relevant times, Frontier has provided flight attendants with break time for physiological needs such as using the restroom, but it has not provided break time for the purpose of expressing breast milk for their nursing child.

59.     At all relevant times, Frontier has not provided any non-bathroom locations near employees' work areas where flight attendants who are breastfeeding are able to pump breast milk while they are working.

60.     At all relevant times, pumping in the lavatory was a widespread practice among flight attendants who were breastfeeding, despite it being unsanitary, cramped, and uncomfortable.

61.     Frontier has maintained a policy, pattern, or practice of refusing to provide reasonable accommodations to flight attendants who were breastfeeding that would have enabled them to continue breastfeeding and still return to work without risking their health. Instead Frontier has ignored or categorically denied all accommodation requests related to breastfeeding.

62.     Frontier has maintained a policy, pattern, or practice of requiring flight attendants who request accommodations related to breastfeeding, including Plaintiffs, to be clear of all

restrictions—and specifically, of restrictions related to their need to pump breast milk—in order to return to duty.

63.     Frontier has maintained a policy, pattern, or practice of prohibiting flight attendants who request accommodations related to breastfeeding, including Plaintiffs, from pumping while on duty.

64.     Flight attendants at Frontier commonly work ten to twelve hours a day, with flight times ranging from approximately one to five hours. Frequently, flight attendants have overnight trips of two to four nights in length, spanning multiple cities.

65.     Under Frontier's CBA, flight attendants bid for their schedules about a month prior to the schedule being issued. Bidding is based on seniority such that flight attendants with longer tenure with the company, and thus more seniority, receive priority in bidding for flights.

66.     As a result of the seniority system, flight attendants who have been with the company less time have even less control over their schedules than those with more seniority. Flight attendants with lower seniority tend to be younger than those with more seniority, and many with lower seniority are at an age where they are starting and/or growing their families.

67.     It is difficult or impossible for most flight attendants who are breastfeeding to bid for and obtain a schedule that would consistently provide short enough flights and a long enough time on the ground between flights to allow them to pump regularly or at all between flights on or off the airplane, without also resorting to pumping during the flight.

68.     There is typically a period of time lasting around 45 minutes between flights; however, flight attendants are required to report to the aircraft 45 minutes before departure and have duties on board both before and after each flight.

69.     The flight attendants' duties of deplaning, cleaning, and reboarding the aircraft

16

frequently take up all the available time on the ground between flights such that flight attendants are generally unable to leave the plane between flights. Additionally, the period on the ground is sometimes compressed due to flight delays.

70.     Flight attendants may experience longer duty days without prior notice during periods of "Irregular Operations," which are defined as disruptions in the schedule caused by circumstances outside of Defendant's control. Shifts may last up to 16 hours a day during Irregular Operations.

71.     Once the plane is airborne, flight attendants' duties include snack and beverage service, collecting trash, and responding to individual passenger inquiries.

72.     When these duties are complete, there are frequently substantial periods of time when flight attendants are unoccupied. During such times, it is customary for them to talk, eat, or read in the back of the plane. It is commonplace for flight attendants to take short breaks or visit the restroom during those unoccupied periods.

73.     Frontier does not prohibit or monitor in any way flight attendants' breaks or use of the restroom while on duty to take care of other personal or physical needs, such as going to the bathroom, applying makeup, or otherwise attending to their personal appearance.

74.     Frontier flight attendants are trained to attend to emergencies, including emergencies when one or more other crewmembers are incapacitated.

75.     Despite flight attendants' freedom to use their unoccupied time more or less as they desire, Frontier has banned flight attendants who disclose that they are breastfeeding from using this time to pump breast milk while they are on duty.

C.     **INDIVIDUAL FLIGHT ATTENDANTS'/CLASS REPRESENTATIVES' FACTUAL ALLEGATIONS**

**Stacy Rewitzer**

76.     Ms. Rewitzer has been employed as a flight attendant at Frontier since 2006. Ms. Rewitzer became pregnant with her son in August 2015 and worked until the 28th week of her pregnancy.

77.     Due to complications associated with her high-risk pregnancy, Ms. Rewitzer exhausted her FMLA leave during the first trimester of her pregnancy. As a result, she went on "non-FMLA medical leave" and personal leave when she was no longer able to fly. Aside from several days that were covered by accrued paid vacation leave, the leave was unpaid.

78.     Ms. Rewitzer gave birth on May 17, 2016 and was cleared by her doctor to return to work on August 9, 2016, with a restriction on lifting, pushing, pulling, or carrying more than 25 pounds.

79.     On August 23, 2016, Ms. Rewitzer spoke with Frontier's Manager in Workers Compensation & Leaves of Absence, Julie Pariseau, to inquire about breastfeeding accommodations for Ms. Rewitzer's return to work, and specifically, about Frontier providing a place other than a restroom to express breast milk every two to three hours. She also raised the possibility of a temporary ground assignment. During that conversation, Ms. Pariseau asked Ms. Rewitzer why she was not resigning due to her need for breastfeeding accommodations.

80.     Frontier provided Ms. Rewitzer with a list of approved lactation rooms at outstations but did not respond to any of her other requests or offer her any assistance modifying her schedule. Instead, Frontier suggested that Ms. Rewitzer bid for trips with adequate ground time to allow for breaks to pump on the ground before and after the flight, without identifying any such options or offering any alternatives for when there was inadequate ground time to

pump. When Ms. Rewitzer conveyed that it would not be possible to continue breastfeeding without accommodations, Frontier unilaterally placed Ms. Rewitzer on a non-FMLA medical leave.

81.     On August 26, 2016, Ms. Rewitzer emailed Ms. Pariseau to inform her that she would be willing to continue working for Frontier in another capacity if Frontier was not able to provide accommodations that would allow her to continue performing her duties as a flight attendant. Ms. Rewitzer suggested that she could work at Frontier's General Office one or two days a week to help with hiring or fill in for someone who was on vacation. Frontier never responded to this request.

82.     Over the next several months, from September 2016 through April 2017, Ms. Rewitzer made numerous requests proposing a variety of other potential accommodations, including temporary assignment to a ground position, regular breaks, preference for shorter flights and for trips with longer times on the ground, provision of clean, private, secure, and convenient pumping locations at outstations, confirmation that she would not be disciplined for pumping on board in the galley if necessary during the flight, or an extension of her medical leave. Ms. Rewitzer also indicated that she was open to discussing any other alternatives. Frontier Human Resources personnel responded by extending Ms. Rewitzer's medical leave in 30-day increments.

83.     In correspondence with Ms. Rewitzer from February through April 2017, Frontier made clear that it was prohibiting her pumping at all while on duty. In February 2017, Ms. Pariseau stated that Frontier "cannot offer any accommodations to nursing flight attendants" and that there was "no other option" than for Ms. Rewitzer to "return to work full duty without any restrictions, including nursing accommodations." In March 2017, Ms. Pariseau reminded Ms.

19

Rewitzer that she must be released "without any restrictions or accommodation requests" before she could return to work. In April 2017, Frontier again stated that Frontier "can not [*sic*] accommodate any restrictions for a safety sensitive position" and that if Ms. Rewitzer needed any of the requested accommodations then she would "need to be out on medical leave until [she was] released without restrictions." Frontier never responded to her other requests.

84.     Ms. Rewitzer remained on unpaid medical leave from August 2016 through June 2017, despite being willing and able to return to work with accommodations.

85.     In January 2016, Ms. Rewitzer took medically necessary absences on January 2-6 and January 10-14 due to pregnancy and pregnancy-related conditions or disabilities, including insomnia, fatigue, and digestive issues. As a result, she accrued three points under the Dependability Policy, resulting in her having a total of 7.5 points, leaving her half a point away from being terminated.

86.     Over the next several months, she made repeated requests to have the three points she had accrued in January for pregnancy complications re-categorized as approved FMLA medical leave. Frontier denied each of those requests.

87.     Ms. Rewitzer also made repeated requests for excused days off for trips on February 7-11 due to pregnancy-related health complications. Frontier denied those requests on the ground that the dates coincided with Super Bowl weekend. Ms. Rewitzer worked the trip for fear of accruing dependability points, despite her anxiety and her doctor's recommendation. She stopped working immediately after that trip and went on leave for the remainder of her pregnancy.

88.     Frontier's Dependability Policy harmed Ms. Rewitzer by causing her to accrue points for absences related to pregnancy, deterring her from calling in sick when she was sick or

needed medical care during her pregnancy for fear of jeopardizing her job, and for fear that she would have no points left after her baby was born should her baby get sick and she need to miss work.

89.     As a result of Frontier's policies relating to pregnancy and its refusal to accommodate Ms. Rewitzer's pregnancy or her medical need to express breast milk, Ms. Rewitzer has suffered economic harms, including lost income, increased out-of-pocket costs of health insurance, and loss of accrued benefits and seniority, as well as non-economic harms, including physical pain and suffering and emotional distress.

90.     Ms. Rewitzer continues to be subject to Frontier's discriminatory policies and practices on an ongoing basis. These policies have impacted and continue to impact her plans with respect to her family and her personal reproductive decisions.

**Melissa Hodgkins**

91.     Ms. Hodgkins has been employed as a flight attendant at Frontier since 2007.

92.     Ms. Hodgkins has had two children while employed at Frontier, in 2015 and 2017.

93.     Prior to her return to work after both of her pregnancies, Frontier did not inform her of any policy regarding flight attendants who are breastfeeding or regarding pumping while on duty.

94.     After having her first baby, Ms. Hodgkins knew that if she were to attempt to continue breastfeeding, she would have to find a way to pump breast milk while working. She understood from speaking with other Frontier employees who had nursed their babies that it was their practice to pump in the aircraft lavatories. Ms. Hodgkins did not want to pump in the restroom because of concerns about sanitation. She also did not think she could make pumping

work in light of her relatively low seniority and her unpredictable schedule. She therefore weaned her baby prior to returning to work, despite her desire to breastfeed until her baby was at least a year old.

95.    Ms. Hodgkins became pregnant with her second child in April 2017. During her pregnancy, Ms. Hodgkins accrued 1.5 points under Frontier's Dependability Policy for an absence in August due to pregnancy-related fatigue.

96.    Ms. Hodgkins' physician informed her that she should not fly after November 16, 2017 due to a lifting restriction that would commence at that time. On October 17 and 26, 2017, Ms. Hodgkins requested a ground assignment starting on that date until the end of her pregnancy.

97.    On October 30, 2017, Frontier denied Ms. Hodgkins' request, stating that "Frontier does not provide temporary light duty assignments at its corporate headquarters or at the airport as an accommodation to any flight attendant for a medical condition." Frontier then placed Ms. Hodgkins on unpaid leave starting on November 8, 2017 stating that she was "not cleared to fly at this time," even though it was a week before the lifting restriction placed by her doctor was to take effect. As a result, she was grounded from her already-scheduled flights.

98.    After she gave birth, Ms. Hodgkins felt that in light of her past experience, her only option was to remain on unpaid medical leave for the period of time she was breastfeeding, and then to wean her baby before returning to work.

99.    Ms. Hodgkins had also become aware of the experiences of Ms. Rewitzer, as well as another flight attendant, Jo Roby, who had been forced onto unpaid leave in January 2017 after inquiring about accommodations for pumping, including requesting schedule modifications and permission to pump during flight. Upon information and belief, Ms. Roby, like Ms. Rewitzer, had been grounded as a result of her accommodation requests, and prohibited from

pumping while on duty, on the ground or in flight, on the basis that it would pose safety risks to herself and to others.

100.     For fear of being grounded, Ms. Hodgkins weaned her baby before returning to work. She would have continued breastfeeding for significantly longer had there been any other options available.

101.     As a result of Frontier's policies relating to pregnancy and its refusal to accommodate Ms. Hodgkins' pregnancy or breastfeeding, Ms. Hodgkins has suffered economic harms, including lost income, increased out-of-pocket costs of health insurance, and loss of accrued benefits and seniority, as well as non-economic harms, including physical pain and suffering and emotional distress.

102.     Frontier's Dependability Policy harmed Ms. Hodgkins by causing her to accrue points for absences related to pregnancy, and deterring her from calling in sick when she was herself sick or needed medical care during her pregnancy for fear of jeopardizing her job, and for fear that she would have no points left after her babies were born should they get sick and she need to miss work.

103.     Ms. Hodgkins continues to be subject to Frontier's discriminatory policies and practices on an ongoing basis, and these policies have impacted and continue to impact her plans with respect to her family and her personal reproductive decisions.

**Renee Schwartzkopf**

104.     Ms. Schwartzkopf has been employed as a flight attendant at Frontier since 2006.

105.     Ms. Schwartzkopf became pregnant with her son in May 2016 and worked until approximately the 34th week of her pregnancy, in late December 2016, when she went out on leave. Aside from the four weeks that were covered by accrued paid vacation, her parental leave

was unpaid.

106.     After she gave birth to her son by cesarean section on January 30, 2017, Ms.

Schwarzkopf's doctor certified that she could return to work without restrictions on April 1,

2017.

107.     Frontier required Ms. Schwartzkopf to attend a day-long recurrent training on

April 21, 2017 before she could return to flying. Her son was three months old at the time and

she had a medical need to express breast milk every two to three hours for about 10 to 20

minutes.

108.     Ms. Schwartzkopf informed Frontier of her medical need for breaks to express

breast milk during training and submitted the required "Request for Accommodation"

paperwork, which required her doctor to describe her medical "impairment." She submitted the

form and was permitted breaks to pump breast milk during the training.

109.     Although Frontier's Human Resources and Leave of Absence departments were

aware that Ms. Schwartzkopf was breastfeeding due to her accommodation requests prior to the

April training, the company never advised her of any policy regarding pumping in flight or told

her that she was prohibited from doing so.

110.     Frontier also never provided Ms. Schwartzkopf with a list of approved locations

to pump, either at Denver International Airport or at outstations.

111.     Ms. Schwartzkopf was aware that Frontier had prohibited some breastfeeding

flight attendants who had requested accommodations—including Ms. Rewitzer and Ms. Roby—

from pumping breast milk while on duty, and that as a result of Frontier's refusal to provide

reasonable accommodations for breastfeeding, they had been placed on unpaid medical leave.

112.     Several flight attendants who had breastfed their children told Ms. Schwartzkopf

that it was common practice for employees who were nursing to pump on board the plane during quiet periods of a flight.

113.     Ms. Schwartzkopf and her family were not in a financial position to risk months without her income. She feared that she, too, would be forced onto unpaid leave if she requested additional accommodations.

114.     She bid for and was awarded a Job Share (part-time hours) for May–June 2017 and returned to a regular full-time flight schedule in July 2017. At the time she returned to work in April 2017, she was still breastfeeding.

115.     It was generally not feasible for Ms. Schwartzkopf to pump on the ground in between flights because the time between flights was too short and she was typically engaged in active duties related to deplaning and boarding passengers, preparing the airplane for the next flight, and conducting the required safety checks.

116.     It was not possible for her to bid for a schedule that would consistently involve short enough flights and long enough time on the ground between flights to allow her to pump in the airport facilities.

117.     Ms. Schwartzkopf had no choice but to pump in the family bathroom in Denver International Airport, or in the airplane lavatory while the plane was in flight between the times when she was actively engaged in her duties. All of these options were unsanitary.

118.     Ms. Schwartzkopf did not request prior permission or inform a supervisor because she feared she might be prohibited from pumping in flight and forced onto unpaid leave, or that she might face disciplinary action that could cost her job.

119.     As a result of Frontier's policies and practices relating to pregnancy and its refusal to accommodate Ms. Schwarzkopf's pregnancy or her medical need to express breast

milk, Ms. Schwartzkopf suffered non-economic harms, including physical pain and suffering and emotional distress.

120.    Frontier's Dependability Policy deterred Ms. Schwartzkopf from calling in sick when she was herself sick or needed medical care during her pregnancy, for fear of jeopardizing her job, and for fear that she would have no points left after her baby was born should her baby get sick and she need to miss work.

121.    Ms. Schwartzkopf continues to be subject to Frontier's discriminatory policies and practices on an ongoing basis, and these policies have impacted and continue to impact her plans with respect to her family and her personal reproductive decisions.

**Heather Crowe**

122.    Ms. Crowe has had three children while employed at Frontier, in October 2013, May 2016, and June 2018.

123.    After each of her pregnancies, prior to her return to work, Frontier did not inform her of any policy regarding flight attendants who are breastfeeding or regarding pumping while on duty.

124.    When Ms. Crowe returned to work after each of her first two pregnancies, her schedule did not allow her sufficient time to pump on the ground in between flights. She therefore expressed milk in the aircraft lavatory during the times she was not actively engaged in her duties. She often did not feel comfortable taking sufficient time to fully empty her breasts, and she suffered from pain and engorgement on numerous occasions.

125.    On two separate occasions Ms. Crowe was informed by a fellow flight attendant while she was pumping in the lavatory that a passenger was having a medical emergency. Ms. Crowe immediately removed her pump and exited the lavatory to assist. On each occasion it took

less than one or two minutes to stop pumping, exit, and start to assist with the passenger.

126.    During Ms. Crowe's second pregnancy, she had sinus infections that were exacerbated by her pregnancy, but she feared being absent from work because she might accrue points under the Dependability Policy. During her third pregnancy, she again suffered from a sinus infection and was unable to fly. Despite presenting Frontier with a note from her doctor, she still accrued points under the Dependability Policy for her absence.

127.    After the birth of her second child, she sought to extend her leave beyond the time that remained to her under the FMLA in order to breastfeed. Frontier denied her request, stating that non-FMLA Medical Leave "may only be used for your own illness or injury" and that the "nature of [her] request noted does not meet the criteria of an illness or injury." Only after she was diagnosed with post-partum depression did Frontier extend her medical leave.

128.    During her third pregnancy, Ms. Crowe requested medical leave until her son had obtained seven or eight months of age, and after that, a ground position so that she could continue to pump breast milk when she returned to work. Frontier ignored her request for a temporary ground position, but ultimately granted Ms. Crowe unpaid non-FMLA leave from August 18, 2018 through February 9, 2019.

129.    During her third pregnancy, she again suffered from a sinus infection and was unable to fly. Despite presenting Frontier with medical documentation, including a note from her obstetrician regarding her pregnancy-related condition, she still accrued points in March and April 2018 under the Dependability Policy for her pregnancy-related absences.  These points remain on Ms. Crowe's record and have led to disciplinary action by Frontier.

130.    Ms. Crowe returned to work while she was still breastfeeding her third child and had no choice but to pump in the unsanitary airplane lavatory.

131.     As a result of Frontier's policies relating to pregnancy and its refusal to accommodate Ms. Crowe's pregnancy or her medical need to express breast milk, she has suffered economic harms, including lost income, increased out-of-pocket costs of health insurance, and loss of accrued benefits and seniority, as well as non-economic harms, including physical pain and suffering and emotional distress.

132.     Frontier's Dependability Policy harmed Ms. Crowe by causing her to accrue points for absences related to pregnancy, and deterring her from calling in sick when she was herself sick or needed medical care during her pregnancy for fear of jeopardizing her job, and for fear that she would have no points left after her baby was born should her baby get sick and she need to miss work.

133.     Ms. Crowe continues to be subject to Frontier's discriminatory policies and practices on an ongoing basis, and these policies have impacted and continue to impact her plans with respect to her family and her personal reproductive decisions.

## D.     EXHAUSTION OF ADMINISTRATIVE REMEDIES AND MEDIATION

134.     Plaintiff Stacy Rewitzer filed an EEOC charge concerning the above-allegations on May 16, 2017.

135.     Plaintiffs Melissa Hodgkins and Renee Schwartzkopf filed EEOC charges concerning the above-allegations on October 6, 2017. Plaintiff Hodgkins supplemented the factual allegations in her charge on February 9, 2018.

136.     Plaintiff Heather Crowe filed an EEOC charge concerning the above-allegations on June 15, 2018. Plaintiff Crowe supplemented the factual allegations in her charge on January 4, 2019.

137.     On June 29, 2017, Plaintiffs entered an agreement with Defendant to toll the

statute of limitations for Plaintiff Rewitzer (née Schiller)'s WANMA claims as of May 26, 2017

through the date of receipt of a Right to Sue letter from the EEOC. On October 18, 2019,

Plaintiffs entered a supplemental agreement to toll the WANMA claims of Plaintiffs

Schwartzkopf, Hodgkins, and Crowe as of August 8, 2018 through the date of receipt of a Right

to Sue letter from the EEOC.

138.    Since the time of the filing of their EEOC charges, Plaintiffs have made multiple

mediation offers to Frontier. Frontier initially either did not respond or declined to mediate.

139.    Most recently, on August 16, 2019, Plaintiffs proposed mediation and agreed to

certain terms set by Frontier. Discussions regarding mediation terminated on September 24,

2019, when Frontier declined to mediate on those terms. Plaintiffs are therefore unable to resolve

their claims through mediation.

140.    On December 2, Plaintiffs requested a "Notice of Right to Sue" from the EEOC.

## CLASS ALLEGATIONS

141.    Ms. Hodgkins, Ms. Schwartzkopf, Ms. Rewitzer, and Ms. Crowe ("Named

Plaintiffs") incorporate by reference the allegations set forth in the above paragraphs.

142.    Named Plaintiffs seek to certify two Plaintiff Classes of flight attendants

employed by Defendant Frontier Airlines and harmed by Defendant's policies and practices

regarding pregnancy and lactation. Named Plaintiffs will seek to certify the Plaintiff Classes

pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure for both the

purposes of injunctive and monetary relief. In the alternative, Named Plaintiffs will seek to

certify the Plaintiff Classes pursuant to Rules 23(a), (b)(2), and (c)(4), or merely under Rules

23(a) and (b)(2).

143.    Named Plaintiffs seek class certification for purposes of the prosecution of all

state and federal claims alleged herein. The limitations period for each federal or state law claim is the full statute of limitations period for each such claim.

144.    Named Plaintiffs bring this class action on behalf of the following classes ("the Classes"), defined as follows:

a.    *"Pregnancy Class":* All current and former Frontier flight attendants who became pregnant at any point during the class period.

b.    *"Breastfeeding Class":* All current and former Frontier flight attendants who breastfed, directly or by feeding their child their own expressed breast milk, while employed by Frontier, including those who breastfed while on any form of leave following the birth of a child, at any time during the class period.

## Rule 23(a)

145.    **Numerosity.** The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Upon information and belief, according to publicly available sources, Frontier employed approximately 1,500-1,600 flight attendants during the relevant time period, approximately 70% or more of whom (approximately 1,150) were female. More precise numbers are ascertainable through records maintained in the ordinary course of business by Defendant.

146.    Based on approximations drawn from average national fertility rates, between forty (40) and fifty-seven (57) flight attendants at Frontier could be expected to give birth each year during the class period. Named Plaintiffs estimate that the Pregnancy Class contains at least 100 members.

147.    Based on national statistics on breastfeeding initiation rates showing that for births in 2016, approximately 83% of women initiated breastfeeding, between thirty-three (33)

and forty-seven (47) flight attendants could be expected to have breastfed each year during the class period. Named Plaintiffs estimate that the Breastfeeding Class contains at least 100 members.

148.   **Commonality.** There are numerous questions of law or fact that are common to all members of the Classes. The policies and practices challenged herein applied uniformly to all current Frontier flight attendants, including Named Plaintiffs and all members of the Classes. Named Plaintiffs and Plaintiff Class Members were all subjected to and injured by the same policies and practices. These policies and practices include:

    a.   *For the Pregnancy Class:*

        i.   Frontier's policy, pattern, or practice of penalizing pregnancy-related absences with accrual of points under its Dependability Policy.

        ii.   Frontier's policy, pattern, or practice of forcing pregnant flight attendants onto unpaid leave when they develop a restriction that renders them unable to fly during pregnancy and refusing to engage in an interactive process with or to provide reasonable accommodations to pregnant flight attendants during the time when they are grounded.

    b.   *For the Breastfeeding Class*:

        i.   Frontier's policy, pattern, or practice of refusing to engage in an interactive process with or to provide reasonable accommodations to flight attendants who are breastfeeding, and of requiring flight attendants who are breastfeeding to be "free of all restrictions" in order to return to work.

        ii.   Frontier's policy, pattern, or practice of prohibiting flight attendants from pumping breast milk while on duty.

    iii.   Frontier's refusal to make reasonable efforts to provide reasonable breaks and a private location for pumping, other than a lavatory, near employees' work areas.

149.    There are accordingly questions of law and fact common to all members of the Classes. Common questions include, but are not limited to:

    **a.**  ***For the Pregnancy Class:***

      i.   Whether Frontier's policy, pattern, or practice of penalizing pregnancy-related absences under its Dependability Policy (a) constitutes disparate treatment because of sex/pregnancy in violation of Title VII and/or CADA; (b) has a disparate impact because of sex/pregnancy in violation of Title VII and/or CADA; and (c) constitutes interference with rights protected by the FMLA.

      ii.   Whether Frontier's policy, pattern, or practice of forcing pregnant flight attendants onto unpaid leave when they develop a restriction that renders them unable to fly during pregnancy and refusing to engage in an interactive process with or to provide reasonable accommodations to pregnant flight attendants during the time when they are grounded (a) constitutes disparate treatment because of sex/pregnancy in violation of Title VII and/or CADA; (b) has a disparate impact because of sex/pregnancy in violation of Title VII and/or CADA; and (c) violates the Colorado Law on Reasonable Accommodations for Pregnancy, Childbirth, and Related Conditions.

    **b.** *For the Breastfeeding Class:*

        i.  Whether Frontier's policy, pattern, or practice of refusing to engage in an interactive process with or provide accommodations to flight attendants who are breastfeeding (a) constitutes disparate treatment because of sex/pregnancy in violation of Title VII and/or CADA; (b) has a disparate impact because of sex/pregnancy in violation of Title VII and/or CADA; and (c) violates the Colorado Law on Reasonable Accommodations for Pregnancy, Childbirth, and Related Conditions.

        ii.  Whether Frontier's prohibition on pumping while on duty (a) constitutes disparate treatment because of sex/pregnancy in violation of Title VII and/or CADA; and (b) has a disparate impact because of sex/pregnancy in violation of Title VII and/or CADA.

        iii.  Whether Frontier's refusal to make reasonable efforts to provide reasonable break time and a private location for pumping, other than a lavatory, near flight attendants' work areas violates WANMA.

    **c.**  For both classes, the types of injunctive and/or declaratory relief that should be ordered with respect to the challenged policies and practices challenged herein.

    **d.**  For both classes, the types of damages that should be awarded to Named Plaintiffs and the members of the Classes.

150.  Defendant is expected to raise common defenses to Named Plaintiffs' claims, including that its Dependability Policy is neutral as to pregnancy and is implemented in compliance with the FMLA, that not being pregnant or breastfeeding are bona fide occupational qualifications, that it has legitimate non-discriminatory reasons for categorically refusing to

accommodate pregnancy and breastfeeding, that its refusal to accommodate pregnancy and breastfeeding is job-related and consistent with business necessity, that it does not provide accommodations to flight attendants for any reason including disability, and/or that it did provide certain accommodations to breastfeeding flight attendants.

151.    **Typicality.** Named Plaintiffs' claims are typical of the claims of members of the Classes. Each of the Named Plaintiffs has been subjected to and harmed by the policies challenged herein. The claims of Named Plaintiffs and the members of the Classes arise from the same policies and practices and rely upon the same legal theories and factual allegations—namely, that the challenged policies and practices violate Title VII, the FMLA, the Colorado Law on Reasonable Accommodation of Pregnancy and Related Conditions, CADA, and WANMA. Named Plaintiffs and all other members of each Class have suffered similar injuries and detrimental effects arising out of and caused by Defendant's policies, patterns and practices as alleged herein. Specifically:

    a.  *With respect to the Pregnancy Class:*

        i.  Each of the Named Plaintiffs is a flight attendant currently employed by Frontier who worked at Frontier during one or more of their pregnancies and at the time they gave birth to one or more of their children.

        ii.  Each of the Named Plaintiffs was subject to and was harmed by Frontier's policy, pattern, or practice of assigning "points" for pregnancy-related absences under its Dependability Policy, which caused accrual or fear of accrual of Dependability Points during pregnancy, denial of and deterrence from exercising their rights to use leave protected under the FMLA, loss of employment benefits, and risk of job loss.

iii. Each of the Named Plaintiffs was subject to and harmed by Frontier's policy, pattern, or practice of requiring pregnant flight attendants to go on unpaid leave when they develop pregnancy-related restrictions that render them unable to fly, and its refusal to engage in an interactive process or to provide pregnancy-related accommodations.

iv. As a result, each of the Named Plaintiffs suffered detrimental effects, injury, and damages, including, but not limited to, losses of income and employment benefits, emotional distress, and pain and suffering.

b. *With respect to the Breastfeeding Class:*

i. Each of the Named Plaintiffs breastfed one or more of their babies while employed at Frontier.

ii. Each of the Named Plaintiffs was subject to and harmed by Frontier's refusal to engage in an interactive process or to provide accommodations related to breastfeeding.

iii. Each of the Named Plaintiffs was subject to and harmed by Frontier's prohibition on pumping breast milk while on duty.

iv. Each of the Named Plaintiffs was subject to and harmed by Frontier's refusal to make reasonable efforts to provide break time and a private location for pumping other than a lavatory near flight attendants' work areas.

v. As a result of these policies, each of the Named Plaintiffs suffered detrimental effects, injury and damages, including, but not limited to, losses of income and employment benefits, emotional distress, and pain

and suffering, and increased risks to their own health.

152.    Named Plaintiffs' claims therefore are typical of the claims that could be brought by any member of the Classes, and the relief sought is typical of the relief that could be sought by each member of the Classes in separate actions.

153.    **Adequacy**. Named Plaintiffs will adequately represent members of the Classes, do not have any conflicts with or interests adverse to those of other Class Members, and are represented by experienced counsel who have substantial experience in civil rights, employment discrimination, and class action litigation and who will vigorously prosecute the action on behalf of the Classes. Named Plaintiffs understand their obligations as class representatives, have already undertaken steps to fulfill them, and are prepared to continue to fulfill their duties as class representatives in this action.

## Rule 23(b)(2)

154.    This action is properly maintainable as a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure by both the Pregnancy and Breastfeeding Classes with respect to their prayers for declaratory and injunctive relief.

155.    Defendant Frontier has acted and refused to act in a manner generally applicable to all members of the Classes, thereby making final declaratory and injunctive relief under Rule 23(b)(2) appropriate with respect to both Classes. The policies, patterns, and/or practices challenged above apply generally and uniformly to the Classes, thereby making final declaratory and injunctive relief appropriate as to the whole of each Class.

## Rule 23(b)(3)

156.    This action is also properly maintainable as a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure as to both Classes with respect to their damages claims.

157.    **Predominance:** The questions of law and fact common to the members of the Pregnancy and Breastfeeding Classes predominate over questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

158.    By resolving the common issues described above in a single class proceeding, each member of the proposed Pregnancy and Breastfeeding Classes will receive a determination of whether Frontier violated Title VII, the FMLA, the Colorado Law on Reasonable Accommodations for Pregnancy and Related Conditions, CADA, and WANMA in the same uniform manner.

159.    Members of the Pregnancy and Breastfeeding Classes do not have a significant interest in individually controlling the prosecution of separate actions. Although the damages that the individual Plaintiff Class Members have suffered are not *de minimis*, their damages are modest compared to the expense and burden of individual prosecution of this litigation.

160.    Prosecuting the Pregnancy and Breastfeeding Classes' claims as a class action will ensure that there are not inconsistent judgments and that a single injunction and ruling on liability will apply to all employees of Frontier nationwide, no matter where they reside.

161.    The issues raised by the Pregnancy and Breastfeeding Classes' claims can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

162.    Other than this litigation, Named Plaintiffs are aware of no litigation concerning Defendant Frontier's policies and practices relating to flight attendants who become pregnant and/or those who breastfeed.

163.    This is not only an appropriate forum for these claims because jurisdiction and

venue are proper, but it is the most appropriate forum because all of the unlawful employment actions took place in this District. Concentration of litigation in this forum is desirable, as this action challenges company-wide practices, and it will benefit the Plaintiff Class Members and Defendant to have all Class Members' claims and defenses adjudicated in a single proceeding. Pursuit of this action on behalf of a class will provide the most efficient mechanism for adjudicating the claims of Named Plaintiffs and the members of the Classes.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

**Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e
Disparate Treatment Because of Sex (Pregnancy)**

*Forced Unpaid Leave &
Refusal to Accommodate Pregnancy*

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

164.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

165.    Frontier has maintained a policy, pattern, or practice of requiring flight attendants to cease flying and forcing them to go on unpaid leave when they develop a pregnancy-related restriction that renders them unable to fly during their pregnancies and refusing to engage in an interactive process with or to provide reasonable accommodations, such as alternative job assignments, to pregnant flight attendants. Instead Frontier has ignored or categorically denied all requests for accommodation that would enable them to continue working during the period when they are grounded.

166.    Plaintiffs and members of the Pregnancy Class have been subject to Frontier's policy, pattern, or practice of requiring flight attendants to cease flying and forcing them to go on

unpaid leave when they develop a pregnancy-related restriction that renders them unable to fly during their pregnancies, and refusing to engage in an interactive process with or to provide reasonable accommodations to pregnant flight attendants that would enable them to continue working during the period when they are grounded.

167.    Frontier has provided modified duty, temporary alternative job assignments, and other forms of reasonable accommodation to flight attendants with temporary and permanent disabilities and medical conditions, flight attendants injured on the job, and flight attendants who are unable to fly for reasons other than pregnancy or related conditions, but who are otherwise similar in their ability or inability to work.

168.    Defendant's refusal to engage in an interactive process with or to provide reasonable accommodations to Plaintiffs and members of the Pregnancy Class, while doing so for other flight attendants whose conditions were unrelated to pregnancy but who were similar in their ability or inability to work, constitutes disparate treatment because of Plaintiffs' and Class Members' sex, and because of their pregnancy and related medical conditions, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

169.    Defendant has retained its discriminatory policies and practices of forcing pregnant flight attendants onto unpaid leave and of refusing to engage in an interactive process with or to provide accommodations to pregnant flight attendants, despite knowledge of its harmful and discriminatory effects.

170.    Defendant engaged in this unlawful sex discrimination with either malice or reckless indifference to the federally protected rights of Plaintiffs and Class Members.

171.    As a result of Defendant's discriminatory policy or practice, Plaintiffs and Class Members have suffered significant monetary losses, including losses of earnings and other

benefits, emotional pain and suffering, physical harm, and other pecuniary and nonpecuniary

losses.

## SECOND CAUSE OF ACTION

**Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e**
**Disparate Impact Because of Sex (Pregnancy)**

*Forced Unpaid Leave &*
*Refusal to Accommodate Pregnancy*

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

172.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each

and every allegation of this Complaint.

173.     Frontier has maintained a policy, pattern, or practice of requiring flight attendants

to cease flying and go on unpaid leave when they develop a pregnancy-related restriction that

renders them unable to fly during their pregnancies, and refusing to engage in an interactive

process with or provide reasonable accommodations to pregnant flight attendants that would

enable them to continue working during the period when they are grounded.

174.     Defendant's policy or practice of requiring flight attendants to cease flying and go

on unpaid leave when they develop a pregnancy-related restriction that renders them unable to

fly during their pregnancies, and of refusing to engage in an interactive process with or to

provide reasonable accommodations to pregnant flight attendants that would enable them to

continue working during the period when they are grounded, has a disparate impact on pregnant

flight attendants, in violation of Title VII of the Civil Rights Act of 1964, as amended by the

Pregnancy Discrimination Act.

175.     As a result of Defendant's policy or practice of requiring flight attendants to cease

flying and go on unpaid leave when they develop a pregnancy-related restriction that renders

them unable to fly during their pregnancies, and of refusing to engage in an interactive process with or provide reasonable accommodations to pregnant flight attendants that would enable them to continue working during the period when they are grounded, Plaintiffs and members of the Pregnancy Class have been and will be forced to go on unpaid leave at some point during or at the end of their pregnancy when they are no longer medically fit to fly. This results in detrimental effects including monetary losses, losses of earnings and other benefits, and emotional harms.

176.    Upon information and belief, Defendant's policy, pattern, or practice of refusing to accommodate pregnant flight attendants and forcing them onto unpaid leave has not resulted in any non-pregnant flight attendant suffering these detrimental effects.

177.    Plaintiffs have presented Frontier with numerous less discriminatory alternative employment practices that would not have the same discriminatory effects.

### THIRD CAUSE OF ACTION

**Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e**
**Disparate Treatment Because of Sex (Pregnancy/Lactation)**

*Refusal to Accommodate Breastfeeding/Lactation;*
*Ban on Pumping While on Duty*

**All Plaintiffs on Behalf of Themselves and the Breastfeeding Class**

178.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

179.    Frontier has maintained a policy, pattern, or practice of refusing to engage in an interactive process with or provide reasonable accommodations to flight attendants who are breastfeeding. Instead Frontier has insisted on flight attendants being free of all restrictions before returning to work, and has ignored or categorically denied all requests for accommodation

that would enable them to continue breastfeeding and still return to work without risking their health.

180.     Plaintiffs and members of the Breastfeeding Class have requested various forms of accommodation related to breastfeeding.

181.     Frontier has refused to engage in any interactive process with or to provide reasonable accommodations to Plaintiffs and Class Members that would have enabled them to continue breastfeeding while still returning to work.

182.     Frontier engages in an interactive process for employees with disabilities and conditions unrelated to pregnancy, childbirth, or lactation, and has provided modified duty, temporary alternative job assignments, and other forms of reasonable accommodation to flight attendants with temporary and permanent disabilities and medical conditions, to flight attendants injured on the job and to flight attendants who are unable to fly for reasons other than pregnancy or related conditions, but who are otherwise similar in their ability or inability to work.

183.     Defendant's refusal to engage in an interactive process with or to provide reasonable accommodations to Plaintiffs and members of the Breastfeeding Class, while doing so for other flight attendants whose conditions were unrelated to pregnancy but who were similar in their ability or inability to work, constitutes disparate treatment of Plaintiffs and Class Members because of their sex, and because of pregnancy-related medical conditions, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

184.     Defendant has also maintained a policy, pattern, or practice of prohibiting flight attendants who disclose that they are breastfeeding from pumping breast milk while on duty.

185.     Defendant has maintained a policy or practice of permitting flight attendants to take breaks while on duty for other purposes, including for eating and attending to other physical

needs such as using the lavatory, applying makeup, or otherwise attending to personal appearance.

186.     Defendant's policy or practice of prohibiting flight attendants who disclose that they are breastfeeding from pumping breast milk while on duty, while allowing flight attendants to take breaks for reasons unrelated to pregnancy or lactation, constitutes disparate treatment on the basis of sex (pregnancy and lactation) in violation of Title VII.

187.     Defendant has retained its discriminatory policies and practices of refusing to accommodate breastfeeding flight attendants and of prohibiting pumping breast milk while on duty, despite knowledge of their harmful and discriminatory effects.

188.     Defendant engaged in this unlawful sex discrimination with either malice or reckless indifference to the federally protected rights of Plaintiffs and Class Members.

189.     As a result of Defendant's discriminatory policies or practices, Plaintiffs and Class Members have suffered significant monetary losses, including losses of earnings and other benefits, emotional pain and suffering, physical harm, and other pecuniary and nonpecuniary losses.

## FOURTH CAUSE OF ACTION

### Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e
### Disparate Impact Because of Sex (Pregnancy/Lactation)

*Refusal to Accommodate Breastfeeding/Lactation;*
*Ban on Pumping While on Duty*

**All Plaintiffs on Behalf of Themselves and the Breastfeeding Class**

190.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

191.     Frontier has maintained a policy, pattern, or practice of refusing to engage in an

interactive process with or to provide reasonable accommodations to breastfeeding flight attendants. Instead Frontier has insisted on flight attendants being free of all restrictions before returning to work, and has ignored or categorically denied all requests for accommodation that would enable them to continue breastfeeding and still return to work without risking their health.

192.    Defendant's policies or practices of refusing to engage in an interactive process with or provide accommodations to breastfeeding flight attendants and of prohibiting pumping while on duty have a disparate impact on breastfeeding flight attendants, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

193.    As a result of Defendant's policy or practice of refusing to engage in an interactive process with or provide accommodations to flight attendants who are breastfeeding and of prohibiting pumping while on duty, Plaintiffs and members of the Breastfeeding Class have suffered detrimental effects due to the absence of necessary accommodations, including being forced to go on unpaid leave, being forced to give up breastfeeding, or, should they attempt to continue breastfeeding once they return to work, experiencing physical pain, emotional distress, and possible health risks.

194.    Upon information and belief, neither Defendant's policy, pattern, or practice of refusing to accommodate flight attendants who are breastfeeding nor its prohibition on pumping while on duty has resulted in any non-breastfeeding flight attendant suffering these detrimental effects.

195.    Plaintiffs have presented Frontier with numerous less discriminatory alternative employment practices that would not have the same discriminatory effects.

## FIFTH CAUSE OF ACTION

**Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2(a), 2000e(k)
Disparate Treatment Because of Sex (Pregnancy)**

*Dependability Policy – Penalization of Pregnancy-Related Absences*

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

196.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

197.    Defendant has maintained a Dependability Policy, under which flight attendants are assigned points for each occurrence of missed work, and face loss of benefits, discipline, or termination upon reaching a certain number of points.

198.    On its face, Defendant's policy provides that certain types of absences are exempt from accruing points, including those used for FMLA-qualifying reasons and those due to "recognized disability."

199.    In practice, Frontier has routinely assigned points under the Dependability Policy for absences related to pregnancy instead of treating those absences as exempt from accrual of points.

200.    Plaintiffs and members of the Pregnancy Class have accrued points under the Dependability Policy for absences related to pregnancy, including for pregnancy-related illnesses and prenatal appointments, even though those absences were protected under the FMLA and therefore should have been treated as approved absences exempt from receiving points.

201.    Defendant's application of its Dependability Policy to Plaintiffs and Class Members constitutes unlawful disparate treatment on the basis of sex and pregnancy in violation of Title VII of the 1964 Civil Rights Act as amended by the Pregnancy Discrimination Act. By assigning Plaintiffs and Class Members points for pregnancy-related absences, while excusing

45

absences unrelated to pregnancy, such as those approved as FMLA leave for reasons unrelated to pregnancy and those due to a "recognized disability," Frontier has treated Plaintiffs and Class Members less favorably than other employees similar in their ability or inability to work.

202.    Defendant has retained its discriminatory policies and practices of penalizing pregnancy-related absences, despite knowledge of their harmful and discriminatory effects.

203.    Defendant engaged in this unlawful sex discrimination with either malice or reckless indifference to the federally protected rights of Plaintiffs and Class Members.

204.    As a result of Defendant's discriminatory implementation of its Dependability Policy, Plaintiffs and Class Members have suffered and continue to suffer harms, including accrual of dependability points for absences during pregnancy that should have been treated as excused, being deterred from seeking necessary medical care or taking medically necessary absences during pregnancy, denial of bonuses or other employment benefits related to achieving a "perfect attendance" record, and risk of job loss.

## SIXTH CAUSE OF ACTION

**Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2(a), 2000e(k)
Disparate Impact Because of Sex (Pregnancy)**

*Dependability Policy – Penalization of Pregnancy-Related Absences*

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

205.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

206.    Defendant has maintained a policy or practice of assigning flight attendants points for each occurrence of missed work, under its "Dependability Policy" as described above.

207.    Plaintiffs and members of the Pregnancy Class have accrued points under the Dependability Policy for missing work for reasons related to pregnancy, including for

46

pregnancy-related illnesses and prenatal appointments, even though those absences were protected under the FMLA and therefore should have been treated as approved absences exempt from receiving points.

208.　Defendant's application of its Dependability Policy to pregnant flight attendants has a disparate impact on flight attendants affected by pregnancy and related medical conditions in violation of Title VII of the 1964 Civil Rights Act, as amended by the Pregnancy Discrimination Act.

209.　As a result of Defendant's discriminatory policy or practice, and because common physiological changes during pregnancy commonly impact attendance, Plaintiffs and Class Members have suffered detrimental effects, including accrual of dependability points for absences during pregnancy that should have been treated as excused, being deterred from seeking necessary medical care or taking medically necessary absences during pregnancy, denial of bonuses or other employment benefits related to achieving a "perfect attendance" record, and risk of job loss.

210.　Upon information and belief, Defendant's policy, pattern, or practice of penalizing pregnant flight attendants for absences related to pregnancy has not resulted in any non-pregnant flight attendant suffering these detrimental effects.

## SEVENTH CAUSE OF ACTION

**Family and Medical Leave Act, 5 U.S.C. § 6381 et seq.
FMLA Interference**

*Dependability Policy – Penalization of Pregnancy-Related Absences*

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

211.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

212.    Frontier is a covered employer under the FMLA because it had 50 or more employees in 20 or more workweeks during all relevant time periods.

213.    On its face, Defendant's Dependability Policy allows approved leaves for FMLA-qualifying reasons to be exempt from accruing points.

214.    In practice, Frontier has routinely assigned points for absences related to pregnancy, instead of treating those absences as exempt from receiving points due to being protected under the FMLA.

215.    Plaintiffs and members of the Pregnancy Class have accrued points under the Dependability Policy for absences related to pregnancy, including for pregnancy-related illnesses and prenatal appointments.

216.    Defendant has failed to notify pregnant flight attendants, including Plaintiffs and Class Members, that their absences due to pregnancy were protected under the FMLA, and therefore should have been treated as approved absences exempt from receiving points under the Dependability Policy, despite its knowledge that Plaintiffs' and Class Members' absences during pregnancy were likely protected under the FMLA.

217.    Defendant has ignored or denied Plaintiffs' and Class Members' requests for medically necessary absences related to pregnancy to be treated as FMLA leave and therefore

exempt from accruing points under the Dependability Policy.

218.    Defendant's application of its Dependability Policy to pregnant flight attendants has interfered with the ability of Plaintiffs and Class Members to exercise their rights under the FMLA by discouraging qualified employees including Plaintiffs and Class Members from taking medically necessary pregnancy-related absences for fear of accruing points that could place their jobs at risk.

219.    Defendant's unlawful implementation of its Dependability Policy was taken willfully and with knowledge that it violated the federally protected rights of Plaintiffs and Class Members.

220.    Defendant's unlawful implementation of its Dependability Policy has caused and continues to cause Plaintiffs and Class Members harms, including accrual of dependability points for absences that should have been treated as excused, being deterred from seeking necessary medical care or taking medically necessary absences during pregnancy, and denial of bonuses or other employment benefits related to achieving a "perfect attendance" record.

## EIGHTH CAUSE OF ACTION

### WANMA, C.R.S. § 8-13.5-101, et seq.

### *Failure to Provide Lactation Breaks and Location*

### All Plaintiffs on Behalf of Themselves and the Breastfeeding Class

221.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

222.    The Colorado general assembly made clear through promulgation of WANMA "the medical importance of breastfeeding, within the scope of complete pediatric care," and aimed "to encourage removal of boundaries placed on nursing mothers in the workplace." *See*

C.R.S. § 8-13.5-102(2).

223.     At all times relevant to this Complaint, Defendant Frontier was Plaintiffs' and Class Members' "employer" for purposes of WANMA.

224.     Defendant has failed to make reasonable efforts to provide a private room or location other than a toilet, close to Plaintiffs' and members of the Breastfeeding Class' work areas, for employees to express breast milk.

225.     Defendant has failed to make reasonable efforts to provide reasonable unpaid break time or to permit Plaintiffs and Class Members to use paid break time, meal time, or both, each day to allow the employee to express breast milk for her nursing child for up to two years after the child's birth.

226.     Defendant engaged in this unlawful practice with either malice or reckless indifference to the legally protected rights of Plaintiffs and Class Members.

227.     As a result of Defendant's discriminatory policy or practice, Plaintiffs and Class Members have suffered significant monetary losses, including losses of earnings and other benefits, emotional pain and suffering, physical harm, and other pecuniary and nonpecuniary losses.

**NINTH CAUSE OF ACTION**

**Colo. Rev. Stat. Ann. § 24-34-402.3**
**Colorado Law on Reasonable Accommodations for Pregnancy,**
**Childbirth, and Related Conditions**

***Forced Unpaid Leave &***
***Refusal to Accommodate Pregnancy***

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

228.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

229.     The State of Colorado amended CADA in 2016 to expressly provide for affirmative obligations on employers to provide accommodations related to pregnancy and breastfeeding. The new law went into effect on August 10, 2016.

230.     Colorado's law specifically requires employers to provide reasonable accommodations to employees with health conditions related to pregnancy or recovery from childbirth, absent undue hardship.

231.     Colorado's law requires employers to engage in an interactive process to identify reasonable accommodations.

232.     Colorado's law specifies that reasonable accommodations may include "the provision of more frequent or longer break periods; more frequent restroom, food, and water breaks; acquisition or modification of equipment or seating; limitations on lifting; temporary transfer to a less strenuous or hazardous position if available, with return to the current position after pregnancy; job restructuring; light duty, if available; assistance with manual labor; or modified work schedules," unless the employer would be required to hire a new employee, fire any existing ones, or create a new position in order to provide the accommodation.

233.    The statute provides a rebuttable presumption that a particular accommodation does not impose an undue hardship if the employer has provided a similar accommodation to other classes of employees in the past.

234.    The statute specifies that employers may not "require an employee to take leave if the employer can provide another reasonable accommodation for the employee's pregnancy, physical recovery from childbirth, or related condition."

235.    Following the effective date of that statute, Defendant has maintained a policy, pattern, or practice of requiring flight attendants to cease flying and forcing them to go on unpaid leave during their pregnancies and refusing to engage in an interactive process with or to provide reasonable accommodations, such as alternative job assignments, to pregnant flight attendants. Instead Frontier has ignored or categorically denied all requests for accommodation that would enable them to continue working during the period when they are grounded.

236.    Plaintiffs and members of the Pregnancy Class have been pregnant in the time period following the law's effective date, and have been subject to Frontier's policy, pattern, or practice of requiring flight attendants to cease flying and forcing them to go on unpaid leave when they develop a pregnancy-related restriction that renders them unable to fly during their pregnancies, and refusing to engage in an interactive process with or to provide reasonable accommodations to pregnant flight attendants that would enable them to continue working during the period when they are grounded.

237.    Frontier has provided modified duty, temporary alternative job assignments, and other forms of reasonable accommodation to flight attendants with temporary and permanent disabilities and medical conditions, flight attendants injured on the job, and flight attendants who are unable to fly for reasons other than pregnancy or related conditions, but who are otherwise

similar in their ability or inability to work.

238. Defendant engaged in this unlawful sex discrimination with either malice or with reckless indifference to the legally protected rights of Plaintiffs and of Class Members.

239. Defendant has retained its discriminatory policies and practices despite knowledge of their harmful and discriminatory effects.

240. As a result of Defendant's unlawful and discriminatory acts, Plaintiffs and Class Members have suffered significant monetary losses, including losses of earnings and other benefits, emotional pain and suffering, physical harm, and other pecuniary and nonpecuniary losses.

## TENTH CAUSE OF ACTION

### Colo. Rev. Stat. Ann. § 24-34-402
### Disparate Treatment Because of Sex (Pregnancy)

*Forced Unpaid Leave &*
*Refusal to Accommodate Pregnancy*

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

241. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

242. Frontier has maintained a policy, pattern, or practice of grounding flight attendants when they develop a pregnancy-related restriction that renders them unfit to fly during their pregnancies and forcing them onto unpaid leave.

243. Frontier has maintained a policy, pattern, or practice of refusing to engage in an interactive process with or to provide reasonable accommodations to pregnant flight attendants that would enable them to continue working during the period when they are grounded.

244. At all relevant times, Frontier maintained a policy governing provision of

accommodations to flight attendants with disabilities, and policies providing for pilots who had been injured on the job or grounded for reasons unrelated to pregnancy to be placed in non-flying positions.

245.     Frontier engages in an interactive process with and has provided reasonable accommodations to flight attendants with disabilities, injuries, and medical conditions unrelated to pregnancy, childbirth, or lactation, but who are otherwise similar in their ability or inability to work, including modified duty, temporary alternative job assignments in non-flying positions, and other forms of reasonable accommodation that have enabled them to continue working.

246.     Plaintiffs and members of the Pregnancy Class sought accommodations during their pregnancies, including the option of working in a temporary ground position.

247.     Frontier has refused to engage in any interactive process to identify reasonable effective accommodations for Plaintiffs and Class Members during their pregnancies. Frontier ignored and therefore effectively denied their accommodation requests.

248.     Plaintiffs and Class Members have been subjected to Frontier's policy, pattern, or practice of grounding flight attendants at a certain point during their pregnancies and forcing them onto unpaid leave and refusing to engage in an interactive process with or to provide reasonable accommodations to pregnant flight attendants during the period when they are grounded.

249.     Defendant's policy, pattern, or practice of grounding pregnant flight attendants and forcing them onto unpaid leave and refusing to engage in an interactive process with or to provide reasonable accommodations to pregnant flight attendants during the period when they are grounded, while doing so for other workers whose injuries or conditions are unrelated to pregnancy but who are similar in their ability or inability to work, constitutes disparate treatment

because of sex, and because of pregnancy and related medical conditions, in violation of CADA.

250.     Defendant engaged in this unlawful sex discrimination with either malice or reckless indifference to the legally protected rights of Plaintiffs and Class Members.

251.     Defendant has retained its discriminatory policies and practices despite knowledge of their harmful and discriminatory effects.

252.     As a result of Defendant's discriminatory policy or practice, Plaintiffs and Class Members have suffered significant monetary losses, including losses of earnings and other benefits, emotional pain and suffering, physical harm, and other pecuniary and nonpecuniary losses.

## ELEVENTH CAUSE OF ACTION

**Colo. Rev. Stat. Ann. § 24-34-402**
**Disparate Impact Because of Sex (Pregnancy)**

*Forced Unpaid Leave &*
*Refusal to Accommodate Pregnancy*

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

253.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

254.     Frontier has maintained a policy, pattern, or practice of requiring flight attendants to cease flying and go on unpaid leave when they develop a pregnancy-related restriction that renders them unable to fly during their pregnancies, and refusing to engage in an interactive process with or provide reasonable accommodations to pregnant flight attendants that would enable them to continue working during the period when they are grounded.

255.     Plaintiffs and members of the Pregnancy Class have been subject to this policy, pattern, or practice.

256.     Defendant's policy or practice of requiring flight attendants to cease flying and go on unpaid leave when they develop a pregnancy-related restriction that renders them unable to fly during their pregnancies, and of refusing to engage in an interactive process with or to provide reasonable accommodations to pregnant flight attendants that would enable them to continue working during the period when they are grounded, has a disparate impact on flight attendants who are pregnant in violation of CADA.

257.     As a result of Defendant's policy or practice of requiring flight attendants to cease flying and go on unpaid leave when they develop a pregnancy-related restriction that renders them unable to fly during their pregnancies, and of refusing to engage in an interactive process with or provide reasonable accommodations to pregnant flight attendants that would enable them to continue working during the period when they are grounded, Plaintiffs and Class Members have been and will be forced to go on unpaid leave at some point during or at the end of their pregnancy when they are no longer medically fit to fly. This results in detrimental effects including monetary losses, losses of earnings and other benefits, and emotional harms.

258.     Upon information and belief, Defendant's policy, pattern, or practice of refusing to accommodate pregnant flight attendants and forcing them onto unpaid leave has not resulted in any non-pregnant flight attendant suffering these detrimental effects.

259.     Plaintiffs have presented Frontier with numerous less discriminatory alternative employment practices that would not have the same discriminatory effects.

## TWELFTH CAUSE OF ACTION

**Colo. Rev. Stat. Ann. § 24-34-402.3**
**Colorado Law on Reasonable Accommodations for Pregnancy,**
**Childbirth, and Related Conditions**

*Refusal to Accommodate Breastfeeding/Lactation;*
*Ban on Pumping While on Duty*

**All Plaintiffs on Behalf of Themselves and the Breastfeeding Class**

260.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

261.     The State of Colorado amended CADA in 2016 to expressly provide for affirmative obligations on employers to provide accommodations for conditions related to pregnancy, physical recovery from childbirth, and related conditions. The new law went into effect on August 10, 2016.

262.     Colorado's law specifically requires employers to engage in an interactive process to identify reasonable accommodations and to provide reasonable accommodations to employees who are breastfeeding absent undue hardship.

263.     Colorado's law specifies that reasonable accommodations may include "the provision of more frequent or longer break periods; more frequent restroom, food, and water breaks; acquisition or modification of equipment or seating; limitations on lifting; temporary transfer to a less strenuous or hazardous position if available, with return to the current position after pregnancy; job restructuring; light duty, if available; assistance with manual labor; or modified work schedules," unless the employer would be required to hire a new employee, fire any existing ones, or create a new position in order to provide the accommodation.

264.     The statute specifies the employer may not "require an employee to take leave if the employer can provide another reasonable accommodation for the employee's pregnancy,

physical recovery from childbirth, or related condition."

265.     Plaintiffs and members of the Breastfeeding Class have been breastfeeding and have been denied accommodations in the period following the law's effective date.

266.     Following the effective date of that statute, Defendant has continued to maintain a policy, pattern, or practice of refusing to provide reasonable accommodations to flight attendants related to breastfeeding/lactation that would enable them to continue breastfeeding while still returning to work without risking their health. Instead Frontier has ignored or categorically denied all accommodation requests related to breastfeeding/lactation.

267.     Defendant engaged in this unlawful sex discrimination with either malice or reckless indifference to the legally protected rights of Plaintiffs and Class Members.

268.     Defendant has retained its discriminatory policies and practices despite knowledge of their harmful and discriminatory effects.

269.     As a result of Defendant's unlawful and discriminatory policy, pattern, or practice, Plaintiffs and Class Members have suffered significant monetary loss, including loss of earnings and other benefits; emotional pain and suffering; physical harm; and other pecuniary and nonpecuniary losses.

### THIRTEENTH CAUSE OF ACTION

**Colo. Rev. Stat. Ann. § 24-34-402**
**Disparate Treatment Because of Sex (Pregnancy/Lactation)**

*Refusal to Accommodate Breastfeeding/Lactation;*
*Ban on Pumping While on Duty*

**All Plaintiffs on Behalf of Themselves and the Breastfeeding Class**

270.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

271.    Frontier has maintained a policy, pattern, or practice of refusing to engage in an interactive process with or provide reasonable accommodations to flight attendants who were breastfeeding. Instead Frontier has insisted on flight attendants being free of all restrictions before returning to work, and has ignored or categorically denied all requests for accommodation that would enable them to continue breastfeeding and still return to work without risking their health.

272.    Frontier has refused to engage in any interactive process with or to provide reasonable accommodations to Plaintiffs and members of the Breastfeeding Class that would have enabled them to continue breastfeeding while still returning to work.

273.    Frontier engages in an interactive process for employees with disabilities and conditions unrelated to pregnancy, childbirth, or lactation, and has provided modified duty, temporary alternative job assignments, and other forms of reasonable accommodation to flight attendants with temporary and permanent disabilities and medical conditions, to flight attendants injured on the job and to flight attendants who are unable to fly for reasons other than pregnancy or related conditions, but who are otherwise similar in their ability or inability to work.

274.    Defendant's refusal to engage in an interactive process with or to provide reasonable accommodations to Plaintiffs and Class Members, while doing so for other flight attendants whose conditions were unrelated to pregnancy but who were similar in their ability or inability to work, constitutes disparate treatment of Plaintiffs and of Class Members because of their sex, and because of pregnancy-related medical conditions, in violation of CADA.

275.    Defendant has also maintained a policy, pattern, or practice of prohibiting flight attendants who disclose that they are breastfeeding from pumping breast milk while on duty.

276.    Defendant has maintained a policy or practice of permitting flight attendants to

take breaks while on duty for other purposes, including for eating and attending to other physical needs such as using the lavatory, applying makeup, or otherwise attending to personal appearance.

277.     Defendant's policy or practice of prohibiting flight attendants who disclose that they are breastfeeding from pumping breast milk while on duty, while allowing flight attendants to take breaks for reasons unrelated to pregnancy or lactation, constitutes disparate treatment on the basis of sex (pregnancy and lactation) in violation of CADA

278.     Defendant has retained its discriminatory policies and practices of refusing to accommodate breastfeeding flight attendants and of prohibiting pumping breast milk while on duty, despite knowledge of their harmful and discriminatory effects.

279.     Defendant engaged in this unlawful sex discrimination with either malice or reckless indifference to the legally protected rights of Plaintiffs and of Class Members.

280.     As a result of Defendant's discriminatory policies or practices, Plaintiffs and Class Members have suffered significant monetary losses, including losses of earnings and other benefits, emotional pain and suffering, physical harm, and other pecuniary and nonpecuniary losses.

## FOURTEENTH CAUSE OF ACTION

**Colo. Rev. Stat. Ann. § 24-34-402**
**Disparate Impact Because of Sex (Pregnancy/Lactation)**

*Refusal to Accommodate Breastfeeding/Lactation;*
*Ban on Pumping While on Duty*

**All Plaintiffs on Behalf of Themselves and the Breastfeeding Class**

281.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

282.    Frontier has maintained a policy, pattern, or practice of refusing to engage in an interactive process with or to provide reasonable accommodations to breastfeeding flight attendants. Instead Frontier has insisted on flight attendants being free of all restrictions before returning to work, and has ignored or categorically denied all requests for accommodation that would enable them to continue breastfeeding and still return to work without risking their health.

283.    Defendant's policies or practices of refusing to engage in an interactive process with or provide accommodations to breastfeeding flight attendants and of prohibiting pumping while on duty have a disparate impact on breastfeeding flight attendants, in violation of CADA.

284.    As a result of Defendant's policy or practice of refusing to engage in an interactive process with or provide accommodations to flight attendants who are breastfeeding and of prohibiting pumping while on duty, Plaintiffs and members of the Breastfeeding Class have suffered detrimental effects due to the absence of necessary accommodations, including being forced to go on unpaid leave, being forced to give up breastfeeding, or, should they attempt to continue breastfeeding once they return to work, experiencing physical pain, emotional distress, and possible health risks.

285.    Upon information and belief, neither Defendant's policy, pattern, or practice of refusing to accommodate flight attendants who are breastfeeding nor its prohibition on pumping while on duty has resulted in any non-breastfeeding flight attendant suffering these detrimental effects.

286.    Plaintiffs have presented Frontier with numerous less discriminatory alternative employment practices that would not have the same discriminatory effects.

61

## FIFTEENTH CAUSE OF ACTION

### CADA, Colo. Rev. Stat. Ann. § 24-34-402
### Disparate Treatment Because of Sex (Pregnancy)

*Dependability Policy – Penalization of Pregnancy-Related Absences*

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

287.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

288.    Defendant has maintained a Dependability Policy, under which flight attendants are assigned points for each occurrence of missed work, and face loss of benefits, discipline, or termination upon reaching a certain number of points.

289.    On its face, Defendant's policy provides that certain types of absences are exempt from accruing points, including those used for FMLA-qualifying reasons and those due to "recognized disability."

290.    In practice, Frontier has routinely assigned points under the Dependability Policy for absences related to pregnancy instead of treating those absences as exempt from accrual of points.

291.    Plaintiffs and members of the Pregnancy Class have accrued points under the Dependability Policy for absences related to pregnancy, including for pregnancy-related illnesses and prenatal appointments, even though those absences were protected under the FMLA and therefore eligible to be treated as approved absences exempt from receiving points.

292.    Defendant's application of its Dependability Policy to Plaintiffs and Class Members constitutes unlawful disparate treatment on the basis of sex and pregnancy in violation of CADA. By assigning Plaintiffs and Class Members points for pregnancy-related absences, while excusing absences unrelated to pregnancy, such as those approved as FMLA leave for

reasons unrelated to pregnancy and those due to a "recognized disability," Frontier has treated Plaintiffs and Class Members less favorably than other employees similar in their ability or inability to work.

293.    Defendant has retained its discriminatory policies and practices of penalizing pregnancy-related absences, despite knowledge of their harmful and discriminatory effects.

294.    Defendant engaged in this unlawful sex discrimination with either malice or reckless indifference to the legally protected rights of Plaintiffs and of Class Members.

295.    As a result of Defendant's discriminatory implementation of its Dependability Policy, Plaintiffs and Class Members have suffered and continue to suffer harms, including accrual of dependability points for absences during pregnancy that should have been treated as excused, being deterred from seeking necessary medical care or taking medically necessary absences during pregnancy, denial of bonuses or other employment benefits related to achieving a "perfect attendance" record, and risk of job loss.

## SIXTEENTH CAUSE OF ACTION

### CADA, Colo. Rev. Stat. Ann. § 24-34-402,
### Disparate Impact Because of Sex (Pregnancy)

*Dependability Policy – Penalization of Pregnancy-Related Absences*

**All Plaintiffs on Behalf of Themselves and the Pregnancy Class**

296.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation of this Complaint.

297.    Defendant has maintained a policy or practice of assigning flight attendants points for each occurrence of missed work, under its "Dependability Policy" as described above.

298.    Plaintiffs and members of the Pregnancy Class have accrued points under the Dependability Policy for missing work for reasons related to pregnancy, including for

pregnancy-related illnesses and prenatal appointments, even though those absences were protected under the FMLA and therefore should have been treated as approved absences exempt from receiving points.

299.    Defendant's application of its Dependability Policy to pregnant flight attendants has a disparate impact on flight attendants affected by pregnancy and related medical conditions in violation of CADA.

300.    As a result of Defendant's discriminatory policy or practice, and because common physiological changes during pregnancy commonly impact attendance, Plaintiffs and Class Members have suffered detrimental effects, including accrual of dependability points for absences during pregnancy that should have been treated as excused, being deterred from seeking necessary medical care or taking medically necessary absences during pregnancy, denial of bonuses or other employment benefits related to achieving a "perfect attendance" record, and risk of job loss.

301.    Upon information and belief, Defendant's policy, pattern, or practice of penalizing pregnant flight attendants for absences related to pregnancy has not resulted in any non-pregnant flight attendant suffering these detrimental effects.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant, and grant them all relief as allowed by law and equity, including, but not limited to, the following:

A.    A declaration that Defendant's employment policies, practices, and/or procedures challenged herein are illegal and in violation of the rights of Plaintiffs and Plaintiff Class Members;

B.     A permanent injunction against Defendant and its partners, officers, owners, agents, successors, employees, and/or representatives, and any and all persons acting in concert with them:

    i.    Enjoining the continued operation of the policies and practices challenged herein, including the policy and practice of refusing to engage in an interactive process with or to provide accommodations to pregnant and breastfeeding flight attendants, the policy and practice of prohibiting breast pumping while on duty, and the policy and practice of penalizing pregnancy-related absences under the Dependability Policy;

    ii.    Ordering Defendant to adopt and implement policies that will provide for reasonable and effective accommodations for pregnant and breastfeeding flight attendants;

    iii.    Ordering Defendant to provide notification to eligible employees of these policies related to accommodations for pregnant and breastfeeding flight attendants;

    iv.    Ordering Defendant to implement training to managers and human resources personnel regarding these new pregnancy and breastfeeding accommodations policies;

C.  An Order certifying Plaintiff Classes under Rule 23(a), (b)(3), and (b)(2), or in the alternative under Rule 23(a), (b)(2), and (c)(4) of the Federal Rules of Civil Procedure, appoint Plaintiffs' counsel as Class Counsel, appoint the Named Plaintiffs as Representatives for the Plaintiff Classes;

D.  A monetary award of back pay and other economic damages Plaintiffs and Plaintiff Class Members have suffered due to the discriminatory practices challenged herein, as well as

any compensatory damages, restitution, penalties, liquidated damages, exemplary

damages, punitive damages, and pre-judgment and post-judgment interest as provided by

law, that may be owed;

E.  An Order providing that this Court shall retain jurisdiction of this action until such time

as the Court is satisfied that Defendant has remedied the practices complained of herein

and are determined to be in full compliance with the law;

F.  An award of litigation costs and expenses, including, but not limited to, reasonable

attorneys' fees and costs, to Plaintiffs; and

G.  Any additional relief this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs request a jury trial on all matters so triable alleged herein.


Dated this 10th day of December, 2019.



*s/Sara R. Neel*
_____
Sara R. Neel
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO
303 East 17thAvenue, Suite 350
Denver, CO 80203
Phone: 720-402-3107
Fax: 303-777-1773
Email: sneel@aclu-co.org
Email: msilverstein@aclu-co.org

Galen Sherwin
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-519-7819
Email: gsherwin@aclu.org


Vincent Levy
Jayme Jonat
Lani Perlman
HOLWELL SHUSTER & GOLDBERG LLP
IN COOPERATION WITH THE AMERICAN CIVIL LIBERTIES UNION
425 Lexington Avenue, 14th Floor
New York, NY 10019
Phone: 646-837-5151
Fax: 646-837-5150
Email: vlevy@hsgllp.com
Email: jjonat@hsgllp.com
Email: lperlman@hsgllp.com


Juno Turner
David H. Seligman
TOWARDS JUSTICE
1410 High Street, Suite 300
Denver, CO 80219
Tel: 720.239.2060
Email: juno@towardsjustice.org
Email: david@towardsjustice.org


*Attorneys for Plaintiffs*