**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.  1:19-cv-03469-RM-MEH

MELISSA HODGKINS, et al.

　　　　　Plaintiffs,

v.

FRONTIER AIRLINES, INC.

　　　　　Defendant.

---

### DEFENDANT FRONTIER AIRLINES, INC.'S MOTION TO DISMISS

---

Under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Frontier Airlines, Inc. ("Frontier"), moves to dismiss all claims asserted in Plaintiffs' Complaint [ECF No. 1]. Counsel for the parties have conferred extensively in the course of settlement negotiations in this case, including via WebEx and Zoom remote meetings, in compliance with **Civ. Practice Standard III.N.2.a**.  Undersigned counsel understands that Plaintiffs **oppose** the relief sought.

Plaintiffs in this Title VII action are four flight attendants who assert that Frontier discriminated against them and failed to accommodate their medical needs related to pregnancy and lactation.  Among other things, they claim that Frontier should have provided them with paid medical leave—even though no applicable law requires it.  They further assert that the job-protected, unpaid leave provided by Frontier (amounting to multiple *years*, not just months, weeks, or days) was insufficient—even though the amount of leave granted was well in excess of what

any law requires.[1]   Further, in bringing this action as a putative class action under Rule 23, Plaintiffs are attempting to assert broad-sweeping claims on behalf of **every** flight attendant who has **ever** been pregnant or lactating while employed by Frontier, regardless of whether such woman even asked for an accommodation of any kind.

In making these overbroad assertions, it is clear that the primary thrust of Plaintiffs' Complaint is a request to have this Court judicially legislate paid leave, which is solely the province of the U.S. Congress, the Colorado General Assembly, or Colorado voters (who themselves spoke on November 3, 2020 in approving paid family leave via Proposition 118).  *See Rawson v. Sears, Roebuck & Co.*, 822 F.2d 908, 919 (10th Cir. 1987); *Krol v. CF & I Steel*, 2013 COA 32 n.6 (the court "cannot disregard those [statutory] boundaries without legislating from the bench, and that is not our role").

Plaintiffs lack standing to proceed because they do not remain pregnant or breastfeeding, and are not subject to the policies at issue for purposes of prospective relief.  They also cannot demonstrate that they have suffered an injury redressable by the statutes at issue.  The Court therefore lacks jurisdiction.  The Court also lacks jurisdiction because Plaintiffs' state claims are preempted by the Federal Aviation Act (the "FAAct"), 49 U.S.C. § 40103, *et seq*., and the Airline Deregulation Act ("ADA").  Plaintiffs' claims under the Colorado Anti-Discrimination Act ("CADA"), § 24-34-402 and the Pregnant Workers Fairness Act, § 24-34-402.3 ("PFWA"), are also barred because they were not exhausted with the Colorado Civil Rights Division ("CCRD").

Under Rule 12(b)(6), Plaintiffs have not stated claims for relief.  They have not sufficiently

---

[1] For instance, the Family and Medical Leave Act ("FMLA") guarantees up to twelve weeks of unpaid leave.  29 U.S.C. §§ 2612(a)(1), 2614(a).  Under the Americans with Disabilities Act, "six months of leave is generally the tipping point in terms of whether a leave of absence is reasonable."  *Forge v. Sisters of Charity of Leavenworth*, 18-2204-JWL, 2019 WL 4241130, at *8 (D. Kan. Sept. 6, 2019).

alleged comparators, their claims are time-barred, and their class allegations are overbroad.[2]

## I.      THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS.

To proceed with their claims, whether individually or on behalf of a class, **each Plaintiff must prove jurisdiction over each claim**.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross."); *Grider v. City & Cty. of Denver*, 958 F. Supp. 2d 1262, 1266–67 (D. Colo. 2013).  Because none of the Plaintiffs can establish standing, the FAAct and ADA preempt their state law claims, and they have not exhausted their CADA claims with the CCRD,[3] they cannot establish jurisdiction.

### A.      Plaintiffs Lack a Personal Injury Redressable by the Statutes Asserted.

Standing "is perhaps the most important of the[] doctrines" limiting the federal judicial power.  *Energy & Env't Legal Inst. v. Epel*, No. 11-cv-00859-WJM-BNB, 2014 WL 1715209, at *3 (D. Colo. May 1, 2014).  To establish standing, each Plaintiff must prove for each of her claims that: (1) she suffered an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical,'"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d

---

[2] Frontier disputes many of the allegations Plaintiffs make in their Complaint.  Nevertheless, given the procedural posture of this Motion, Frontier will accept the truth of those allegations solely for the purposes of this Motion.
[3] Notwithstanding the Tenth Circuit's decision in *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018), and the U.S. Supreme Court's decision in *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019), CADA's exhaustion requirement remains a jurisdictional prerequisite to suit under Colorado state law.  *See Lasser v. Charter Commc'ns, Inc.*, No. 19-cv-02045-RM-MEH, 2020 WL 2309506, at *5 (D. Colo. Feb. 10, 2020) (Hegarty, Mag. J.).

537, 543 (10th Cir. 2016) ("[A] federal court can't 'assume' a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim"); *Carrillo v. Hickenlooper*, No. 12-cv-02034-RM-MEH, 2014 WL 1977984, at *10 (D. Colo. May 14, 2014) (Moore, J.); *Bierer v. Metro. State Coll. of Denver Bd. of Trs.*, No. 09-cv-01034-WYD-KMT, 2010 WL 3893995, at *3 (D. Colo. Sept. 30, 2010).

Standing is claim- and party-specific, such that the ability to demonstrate standing for one plaintiff or one claim does **not** establish standing for **all** plaintiffs for **all** claims. *See Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *Grider v. City & Cty. of Denver*, 958 F. Supp. 2d 1262, 1266–67 (D. Colo. 2013). The Court "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso*, 495 F.2d at 909.

Plaintiffs' claims devolve to two categories of relief: (1) prospective relief in changing the Dependability Policy which has no impact on Plaintiffs given that they are not currently pregnant or breastfeeding; and (2) retrospective relief arising from the alleged assessment of attendance points and a request for paid leave under statutes that require no such remedy. Notably, however, Plaintiffs **all** remain employed in good standing, **none** of them is currently pregnant or breastfeeding, and **none** of them suffered an actionable loss through any adverse employment action or failure to accommodate. *See* Compl. As a result, they cannot demonstrate a legally cognizable injury in fact redressable by the statutes under which they proceed.

### 1.     Plaintiffs lack standing to seek any prospective relief.

The primary impetus of Plaintiffs' Complaint is prospective relief directed to a change to Frontier's "Dependability Policy" as it impacts those who are pregnant or breastfeeding. Compl. ¶¶ 6-7, 38-44, 142, 148-149, 154-155, 196-220, 287-301; *id.* "Prayer for Relief" ¶¶ A, B. **Yet none of the Plaintiffs is currently pregnant or breastfeeding, and none of the Plaintiffs asserts**

**a concrete, imminent intent to become pregnant (or breastfeed).**

Because Plaintiffs are not currently subject to any of the allegedly discriminatory aspects of the Dependability Policy, they are not suffering an actual or imminent injury. *Burnett v. Okla. Dep't of Corr.*, 737 F. App'x 368, 374–75 (10th Cir. 2018) (unpublished). Absent an actual or non-speculative, imminent injury, Article III of the U.S. Constitution does not permit these Plaintiffs to seek prospective relief. *City of L.A. v. Lyons*, 461 U.S. 95, 111–12 (1983); *Lujan,* 504 U.S. at 562 n.2. An unsubstantiated "fear" of future enforcement of a policy simply cannot suffice. *Grider*, 958 F. Supp. 2d at 1266–67. Stated differently, even if this Court struck down the Dependability Policy, it would not in any way help these Plaintiffs. *Pinson v. Berkebile*, 486 F. App'x 745, 747 (10th Cir. 2012) (unpublished). As a result, Plaintiffs lack standing to seek prospective relief for **any** of their claims.

In fact, courts addressing similar scenarios have not hesitated to dismiss for lack of standing. *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981); *Port Wash. Teachers' Ass'n v. Bd. of Educ.*, 478 F.3d 494, 500 (2d Cir. 2007) (holding that union representing employees lacked standing to challenge policy memorandum requiring employees to notify pregnant students' parents of pregnancies on pain of discipline or termination absent "'an actual and well-founded fear that [it] will be enforced against' [them]."); *Jacobs v. Martin Sweets Co.*, 550 F.2d 364, 371–72 (6th Cir. 1977). Because Plaintiffs cannot show any actual or imminent plans to become pregnant or breastfeed, they lack standing to seek any prospective relief, or to challenge the Dependability Policy for which they allege their Fifth, Sixth, Seventh, Fifteenth, and Sixteenth Cause of Action. *Bierer*, 2010 WL 3893995, at *4; *Price v. Pub. Serv. Co. of Colo.*, 1 F. Supp. 2d 1216, 1222–23 (D. Colo. 1998) ("In order to satisfy the redressability requirement . . . . a plaintiff must show that there is at least a 'substantial likelihood 'that the relief requested will

redress the injury claimed.'").  All such claims should be dismissed.

### 2. Plaintiffs lack standing to seek past damages.

#### a. Plaintiffs lack standing to assert their timely[4] pregnancy claims.

Plaintiffs' claims for past conduct similarly fail to allege injuries redressable by the statutes at issue.  With respect to the pregnancy claims, Plaintiffs' claims appear to arise from allegations that: (1) they were assessed points under the Dependability Policy or (2) Frontier failed to accommodate them when placing them on unpaid leave instead of reassigning them to different roles.  In fact, **Plaintiff Schwartzkopf fails to allege any injury or failure-to-accommodate related to any pregnancy whatsoever**.  Compl. ¶¶ 104-121.  Thus, any pregnancy-related claim by Plaintiff Schwartzkopf fails.

Plaintiffs Rewitzer, Hodgkins, and Crowe allege only the assessment of non-disciplinary points under the Dependability Policy, which did not impact their employment or pay.  *Id.* ¶¶ 85-86, 95, 126, 129.  Plaintiffs cannot establish standing based on actions that resulted in no legally cognizable injury.  To have standing to proceed under Title VII and CADA,[5] for example, Plaintiffs must be "aggrieved" by a violation of those statutes.  42 U.S.C. § 2000e-5(f)(1).  Plaintiffs cannot be aggrieved without any adverse action.  *U.S. ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, No. 13-1453-EFM-KGG, 2015 WL 6801829, at *6–7 (D. Kan. Nov. 5, 2015); *accord Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 177–78 (2011) (the "term 'aggrieved' in Title VII . . . exclude[s] plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII").

---

[4] As argued below, the only **timely** pregnancy-related claim of any Plaintiff appears to be Plaintiff Crowe's claims related to her third pregnancy in June 2018.  Compl. ¶¶ 122, 126, 128.

[5] Under CADA, including the PFWA, "claims for sex and pregnancy discrimination under state and federal law are subject to the same analysis." *Rios v. Nexion Health at Cherry Creek*, No. 17-cv-03062-MSK-NYW, 2019 WL 3973942, at *4 (D. Colo. Aug. 21, 2019) (granting summary judgment on CADA, PFWA, and Title VII claims).

Under Title VII and CADA, a "written warning or reprimand generally does not rise to the level of adverse action," especially when "the disciplinary notices were issued automatically when an employee's allocation of attendance points had depleted below a certain amount." *Wimbish v. Nextel W. Corp.*, 174 F. Supp. 3d 1275, 1281–82 (D. Colo. 2016); *Gibbs v. Kelly Servs.*, 3:14-cv-650-DPJ-FKB, 2016 WL 868873, at *3 (S.D. Miss. Mar. 4, 2016) (holding that assessment of attendance points in an ADA case could not constitute adverse action).[6]  The points did not cause any increased "risk that an employee would be terminated; they merely served as a warning that full depletion of an employee's allotment of points would have that result." *Wimbish*, 174 F. Supp. 3d at 1281–82.  Plaintiffs also do not allege that the points resulted in any lost compensation or other actual monetary losses to have standing under the FMLA. *See Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001); *see also Stuart v. Regis Corp.*, No. 1:05-cv-00016-DAK, 2006 WL 1889970, at *5 (D. Utah July 10, 2006) ("[The plaintiff] claims that she felt forced to return to work, however, assuming this to be true, [she] lacks standing to bring an FMLA claim unless she suffered injury as a result of the alleged violation.").  As a result, Plaintiffs have not asserted a legally cognizable injury for any pregnancy-related claims.

The same is true if any of the pregnancy-related claims are construed as a failure to accommodate.  **Plaintiffs specifically allege that they were each provided accommodations through additional time off.**  Compl. ¶¶ 77, 87, 88, 95-97, 105, 126-128.  A Pregnancy Discrimination Act ("PDA") plaintiff lacks standing when "she did not make any actual claims for pregnancy-related [accommodations] that were denied by the Company." *Jacobs*, 550 F.2d 364,

---

[6] *See also Adams v. ExpressJet Airlines, Inc.*, No. 3:05–cv–128–S, 2006 WL 3791308, at *7 (W.D. Ky. Dec. 31, 2006) (assessment of attendance points was not a materially adverse action); *Cole v. Chi. Tribune Co.*, No. 96 C 3320, 2000 WL 656644, *11 (N.D. Ill. Mar.20, 2000) (warning for attendance problems did not constitute adverse action).

371–72. "Title VII requires reasonable accommodation"; it "does not require employers to accommodate . . . an employee in exactly the way the employee would like to be accommodated." *Pinsker v. Joint Dist. No. 28J of Adams & Arapahoe Ctys.*, 735 F.2d 388, 390–91 (10th Cir. 1984) (holding, for religious accommodation claim under Title VII, that a "policy, although it may require [employees] to take occasional unpaid leave, is not an unreasonable accommodation"); *accord E.E.O.C. v. Delta Airlines, Inc.*, No. 97 CV 5646 (SJ), 2002 WL 1447582, at *7 (E.D.N.Y. June 26, 2002); *see also Guy v. MTA New York City Transit*, No. 10 CV 1998 KAM LB, 2012 WL 4472112, at *8 (E.D.N.Y. Aug. 6, 2012), *report and recommendation adopted,* No. 10-CV-01998 KAM LB, 2012 WL 4472098 (E.D.N.Y. Sept. 26, 2012).

Stated differently, the prohibition of Title VII and CADA against "unlawful employment practices" means that only plaintiffs discriminated against "**because of their** race, color, religion, sex, or national origin" can be aggrieved. *Feaster v*, 2015 WL 6801829, at *6 (emphasis in original) (citing cases); *see also Jones v. City of Overland Park*, No. 92-2162-KHV, 1994 WL 583153, at *3 (D. Kan. Aug. 15, 1994). To suffer an unlawful employment practice under the PDA's gloss on Title VII, Plaintiffs must demonstrate that Frontier **did not accommodate** them, even when it **accommodated others "similar in their ability or inability to work**." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1354 (2015) (emphasis added). Thus, absent a refusal to accommodate a pregnant employee while accommodating others similar in their ability or inability to work, Plaintiffs' claims do not fall within the ambit of Title VII and thus cannot state a legally cognizable injury under Title VII.

Regardless, when stripped of the conclusory assertions and inflammatory rhetoric, Plaintiffs' pregnancy-related claims seek legally unavailable redress: **paid leave**. **A demand for paid leave without any allegations that others "similar in their ability or inability to work"**

received paid leave is **not** legally cognizable under **any** of the statutes at issue. *See* 1978 U.S.C.C.A.N. 4749, 4753 (stating, in House Report addressing PDA, that it will "not require an employer who does not provide disability benefits or paid sick leave to other employees to provide them for pregnant workers"); *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1382 (11th Cir. 1994) ("The PDA did not require employers to provide any specific benefits for pregnant workers or others; it merely required employers to give pregnant women *at least* the benefits already provided other workers."); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 722 (7th Cir. 1998) ("[T]he PDA does not impose an affirmative duty on employers to offer maternity leave or to take other measures to assist pregnant employees . . . ."); 29 U.S.C. § 2612(c) ("[L]eave granted under subsection (a) [of the FMLA] may consist of unpaid leave."); U.S. Dep't of Labor, Op. Letter, FMLA-85, 1996 WL 1044782, at *2 (Nov. 18, 1996) ("The FMLA does not require any employer to furnish its employees paid leave benefits . . . ."); Colo. Rev. Stat. § 24-34-402.3(6)(b) ("This section neither increases nor decreases an employee's rights, under any other law, to paid or unpaid leave in connection with the employee's pregnancy.").  As a result, Plaintiffs cannot be "aggrieved" under the applicable statutes for the failure to provide paid leave.  Because they have not alleged any other adverse action or loss of compensation, they lack standing to proceed with any pregnancy-related claims directed to any past harm. *Price*, 1 F. Supp. 2d at 1222–23 (plaintiff lacked standing for Title VII claim absent legally cognizable harm redressable under Title VII).[7]

### 3.     Plaintiffs lack standing to assert their timely lactation claims.

Plaintiffs' lactation-related claims fare even worse, as they do not even allege the

---

[7] Notably, any request for prospective relief for paid leave is also moot: Colorado voters approved Proposition 118, which provides for paid leave in exactly the circumstances Plaintiffs allege. *See Green v. Mansour*, 474 U.S. 64, 66-68, 74 (1985); *Jicarilla Apache Nation v. Rio Arriba Cty.*, 440 F.3d 1202, 1208 (10th Cir. 2006).

assessment of any attendance points or any other actions taken by Frontier.  **In fact, Plaintiffs Schwartzkopf and Hodgkins each specifically allege that they weaned their children before returning to work, and thus <u>did not seek, nor were they denied</u>, any lactation-related accommodation**.  Compl. ¶¶ 94, 98, 100, 118.  Similarly, when Plaintiff Rewitzer requested a list of approved lactation rooms, it was provided to her, and when she requested a ground assignment that was not available, she was provided job-protected leave.  *Id.* ¶¶ 79-82, 84.  Plaintiff Crowe was also provided leave, and pumped in the lavatory without requesting any accommodation, raising any issue with Frontier, or suffering any consequence.  *Id.* ¶¶ 124, 128, 130.  Thus, Plaintiffs cannot demonstrate the denial of any requested accommodation or show that any similarly situated employee was treated more favorably to be "aggrieved" by any "unfair employment practice."  *Young*, 575 U.S. at 206; *E.E.O.C. v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 948 (10th Cir. 1992).  Plaintiffs' inability to show the denial of any requested accommodation given to any other employee means they cannot demonstrate a legally cognizable injury redressable by the statutes invoked.[8]

Plaintiffs cannot demonstrate standing to assert **any** of their claims, whether for prospective or retrospective relief, and their Complaint should be dismissed in full on this ground alone.

### B.  Plaintiffs' State Law Claims Are Preempted by Federal Airline Regulations.

Plaintiffs' state law allegations related to a "Refusal to Accommodate Breastfeeding and Ban on Pumping While on Duty" are also preempted by the FAAct and the ADA, because they relate to activities in the heavily regulated field of airline transportation.  Compl. ¶¶ 53-75, 221-

---

[8] In fact, it is not even clear that lactation falls within the ambit of the PDA in this Circuit, as neither the Tenth Circuit nor the Supreme Court have addressed it.  *Martin v. Canon Bus. Sols., Inc.*, No. 11-cv-02565-WJM-KMT, 2013 WL 4838913, at *8 (D. Colo. Sept. 10, 2013).

227, 260-286; *id.* "Prayer for Relief" ¶¶ B.i.-ii.   As a result, the Court lacks jurisdiction over Plaintiffs' state law claims directed to lactation accommodations while on duty.  *Fell v. Cont'l Airlines, Inc.*, 990 F. Supp. 1265, 1267 (D. Colo. 1998) (granting airline's Rule 12(b)(1) motion); *see also Pliuskaitis v. USA Swimming*, 720 F. App'x 481, 483-484 (10th Cir. 2018).

### 1.    Plaintiffs' state law allegations are preempted by the FAAact.

The FAAct governs all on-aircraft activity.   "Based on the FAA's purpose to centralize aviation safety regulation and the comprehensive regulatory scheme promulgated pursuant to the FAA," the Tenth Circuit has held that "that federal regulation **occupies the field of aviation safety** to the exclusion of state regulations."  *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326 (10th Cir. 2010) (emphasis added).  The language of the FAAct explicitly directs the Administrator of the FAA to promulgate regulations for the "safe flight of civil aircraft in air commerce," and directs the Administrator to regulate any "other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security."  *US Airways*, 627 F.3d at 1326-27.

Plaintiffs are asking the Court to apply Colorado **state** law to rule that Frontier should have, and must, permit flight attendants to take regular on-duty, in-flight breaks to pump.  That is the scenario that FAAct preemption was designed to avoid.[9]  *Stonecypher v. Iasco Flight Trg., Inc.*, No. 2:17-cv-02409-MCE-EFB, 2018 WL 4409438, at *4 (E.D. Cal. Sept. 17, 2018) ("[W]henever the Court has to look at whether a safety threat existed, preemption applies").[10]  Indeed, the FAAct regulations themselves address the issues with such accommodations.  14 C.F.R. § 121.542(b) ("No flight crewmember may engage in, nor may any pilot in command permit, any activity during

---

[9] Tellingly, airlines such as Frontier are **exempt** from the provisions of the FLSA requiring break time and lactation facilities for nursing mothers (and the FLSA's break-time requirements more generally).  *See* 29 U.S.C. § 213(b)(3).

[10] WANMA itself also specifically states that "special circumstances of public safety" is a consideration in the statute's undue hardship analysis.  Colo. Rev. Stat. § 8-13.5-103(3).

a critical phase of flight which could distract any flight crewmember from the performance of his or her duties or which could interfere in any way with the proper conduct of those duties."). Plaintiffs' Complaint itself directly invokes the "safety"-related concerns with on-duty pumping. Compl. ¶¶ 83, 99, 185.

Because of the "pervasiveness of federal safety regulations" for flight crewmembers and "the congressional goal of a uniform system of aviation safety," Plaintiffs' claims related to on-aircraft breaks and lactation locations therefore are preempted by the FAAact. *Ventress v. Japan Airlines*, 747 F.3d 716, 719-723 (9th Cir. 2014) (holding that pilot's retaliation and constructive discharge claims brought under California statute were preempted because the FAAct regulates the medical fitness of flight crew). Plaintiffs' state-law claims should be dismissed.

### 2. Plaintiffs' state-law allegations are preempted by the ADA.

Plaintiffs' state-law claims are also preempted by the ADA, which clearly states that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1); *Altria Grp., Inc. v. Good*, 555 U.S. 70, 85 (2008) (noting the "unusual breadth" of ADA preemption). The Supreme Court has "recognized that the key phrase [in § 41713(b)(1),] 'related to[,]' expresses a 'broad pre-emptive purpose.'" *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1057 (10th Cir. 2019). Accordingly, the Tenth Circuit has "held that a claim 'relates to rates, routes, or services,' within the meaning of the ADA, if the claim 'has a connection with, or reference to, airline rates, routes, or services.'" *Id.*

A "service" has been defined broadly as an "anticipated provision of labor from one party to another," including "matters 'appurtenant and necessarily included with the contract of carriage between the passenger and the airline,' such as ticketing, boarding, providing food and drink and

handling baggage." *Covino v. Spirit Airlines, Inc*., 406 F. Supp. 3d 147, 150-151 (D. Mass. 2019) (citing *Tobin v. Federal Exp. Corp*., 775 F.3d 448, 453-56 (1st Cir. 2014)).  Of course, extended occupancy of a lavatory by a flight attendant displaces the service for passengers who themselves may need to express breast milk, have a gastrointestinal concern, suffer from motion sickness, or who may suffer from any number of medical issues that would require access to a lavatory without extended delay.  The Eleventh Circuit has very recently addressed these same issues and held that allegations that an airline "did not properly accommodate [a passenger's] disability are 'incidents of . . . transportation,' or aspects that 'relate[ ] to the . . . services of an air carrier'" preempted by the ADA.  *Mennella v. Am. Airlines, Inc.*, No. 19-11410, 2020 WL 4593800, at *5 (11th Cir. Aug. 11, 2020).  Indeed, courts have also held that similar Department of Transportation regulations with respect to accommodations "are part of a broad, complex regulatory scheme regarding disability non-discrimination in air travel" such that "Congress intended to displace state law in this area." *Foley v. JetBlue Airways, Corp.*, C 10-3882 JCS, 2011 WL 3359730, at *13 (N.D. Cal. Aug. 3, 2011).  Plaintiffs' state-law claims are preempted for this additional reason.

### C.    Plaintiffs Failed to Exhaust Their CADA Claims.

Proper exhaustion of claims under CADA is a jurisdictional prerequisite to suit, including those under Colorado Revised Statutes section 24-34-402 and section 24-34-402.3 (the PFWA). Colo. Rev. Stat. § 24–34–306(14); *Lasser*, 2020 WL 2309506, at *5; *Zapata v. Colo. Christian Univ.*, No. 18-cv-02529-CMA-NYW, 2019 WL 1544179, at *7 (D. Colo. Mar. 15, 2019), *report and recommendation adopted,* No. 18-cv-02529-CMA-NYW, 2019 WL 1533239 (D. Colo. Apr. 9, 2019).  Yet although Plaintiffs allege exhaustion of their Title VII claims, Plaintiffs **nowhere** allege exhaustion of their CADA claims with the CCRD.  Compl. ¶¶ 134-140.

The Court lacks jurisdiction over Plaintiffs' Ninth, Tenth, Eleventh, Twelfth, Thirteenth,

Fourteenth, and Fifteenth Causes of Action for this additional reason.  *Id.* ¶¶ 228-301.  "While Plaintiff[s] received a right to sue from the Equal Employment Opportunity Commission ('EEOC'), [they] did not receive one from the Colorado Civil Rights Division ('CCRD'), as required by statute," such that they "failed to exhaust administrative remedies, and [they] cannot maintain [their] discrimination claim[s] against [Frontier]."  *Jeffers v. Denver Pub. Sch.*, No. 16-cv-02243-CMA-MJW, 2017 WL 2001632, at *8 (D. Colo. May 11, 2017); *Jackson v. City & Cty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *2 n.1 (D. Colo. Sept. 24, 2012); *see also Rodriguez v. Wet Ink, LLC*, 603 F.3d 810, 814 (10th Cir. 2010).  Thus, any claim under section 24-34-402 or 24-34-402.3 should be dismissed with prejudice,[11] including Plaintiffs' Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Causes of Action.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF.

To survive a Rule 12(b)(6) attack, Plaintiffs' Complaint must plead facially plausible claims for relief.  *Mueller v. Alma Lasers, Inc.*, No. 16-cv-01885-RM-SKC, 2018 WL 4300520, at *2 (D. Colo. Sept. 10, 2018) (Moore, J.).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," nor will a complaint "suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] ha[s] not nudged [her] claims across the line from conceivable to plausible."  *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008)).  Among other things, Rule 12(b)(6)'s plausibility standard serves "to weed out

---

[11] Any such claims would now be time-barred.  The last date that any Plaintiffs reference is February 9, 2019.  Compl. ¶ 128.  Under section 24-34-403, however, any claim for discrimination must "be filed with the commission . . . within six months after the alleged discriminatory or unfair employment practice occurred, and if not so filed, **it shall be barred**."  *Id.*; *Davis v. BAE Sys. Tech. Sols. & Servs., Inc.*, No. 17-cv-00322-LTB-STV, 2017 WL 4548282, at *2 (D. Colo. Oct. 12, 2017), *aff'd*, 764 F. App'x 741 (10th Cir. 2019).  All of Plaintiffs' CADA claims are now time-barred.

claims that do not have a reasonable prospect of success. . . ." *Id.*

### A.    Plaintiffs' Disparate Treatment Claims Fail.

To "state a claim for disparate treatment on the basis of [sex] under Title VII, [a plaintiff] must allege (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) 'disparate treatment among similarly situated employees.'" *Carney v. City & Cty. of Denver,* 534 F.3d 1269, 1273 (10th Cir. 2008); *McDonald v. Glanz*, No. 12-cv-374-GKF-PJC, 2013 WL 3279805, at *3–4 (N.D. Okla. June 27, 2013) (dismissing Title VII claim for failure to allege comparators). "Claims brought under the PDA are analyzed in the same way as other Title VII claims of disparate treatment." *Andrews v. Eaton Metal Prods., LLC*, No. 20-cv-00176-PAB-NYW, 2020 WL 5821611, at *5 (D. Colo. Sept. 8, 2020), *report and recommendation adopted,* No. 20-cv-00176-PAB-NYW, 2020 WL 5815059 (D. Colo. Sept. 30, 2020).

The law is clear that a "plaintiff alleging that the denial of an accommodation constituted disparate treatment under the PDA's second clause may make out a prima facie case by showing, as in *McDonnell Douglas*, that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, **and that the employer did accommodate others 'similar in their ability or inability to work**.'" *Young*, 575 U.S. at 206 (emphasis added). Plaintiffs must sufficiently allege in their Complaint that others "similar in their ability or inability to work" were treated differently. Indeed, the applicable regulations make clear that the relevant question is whether pregnancy accommodations are treated the same as leave for "other disabilities." 29 C.F.R. § 1604.10(b); 42 U.S.C. § 2000e(k). The EEOC's guidance further clarifies that "[a]n employer is required to treat an employee temporarily unable to perform the functions of her job because of her pregnancy-related condition **in the same manner as it treats other temporarily disabled employees**." 29 C.F.R. § Pt. 1604, App. (emphasis added). Plaintiffs

allege no such differential treatment of any flight attendant.

Bare allegations that an employee was in a protected class, and subsequently suffered some adverse employment action, "do not sufficiently allege discrimination," especially when there are "**no allegations of similarly situated employees who were treated differently**." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (emphasis added) (affirming **Rule 12(b)(6) dismissal** of Title VII discrimination claim); *Kachadoorian v. United Airlines, Inc.*, No. 18-cv-01205-RBJ, 2019 WL 1953399, at *3–4 (D. Colo. May 2, 2019) (dismissing discrimination claim **under Rule 12(b)(6)** based on similar failures to allege differential treatment of similarly situated employees); *Widjaja v. Nicholson*, No. 08-cv-00204-MSK, 2009 WL 321875, at *4 (D. Colo. Feb. 9, 2009). Plaintiffs' claims should be dismissed for this additional reason.

### B. Plaintiffs' Disparate Impact Claims Fail.

Plaintiffs' disparate impact claims contained in their Fourth, Sixth, Eleventh, and Fourteenth Causes of Action should also be dismissed. Compl. ¶¶ 190-195, 205-210, 253-259, 281-286. "Disparate impact claims . . . challenge 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another.'" *Ellis v. United Airlines, Inc*., 73 F.3d 999, 1006 (10th Cir. 1996). "To establish a *prima facie* case of disparate impact discrimination, Plaintiff must prove a 'specific identifiable employment practice or policy caused a significant disparate impact on a protected group.'" *Chavez v. Coors Brewing Co.*, 176 F.3d 488, 1999 WL 162606, at *3 (10th Cir. 1999). Yet Plaintiffs do not identify any **facially neutral** policies or practices; rather, they allege that Frontier's policies and practices **intentionally** discriminate against pregnant and lactating flight attendants. If the policies and practices are facially discriminatory, then they are redundant of the disparate treatment claims alleging intentional discrimination and should be dismissed. *Wade v. Morton Bldgs., Inc.*, 09-

1225, 2010 WL 378508, at *7 (C.D. Ill. Jan. 27, 2010).

Plaintiffs' failure to allege any statistically significant impact is also fatal to any disparate impact claim. *Drake v. City of Ft. Collins*, 927 F.2d 1156, 1161 (10th Cir. 1991). Indeed, "[f]or all its heft, the . . . complaint alludes to disparate impact in wholly conclusory terms," when the Court should "expect to see some factual content in the complaint tending to show . . . a relevant and statistically significant disparity . . . ." *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014). Plaintiffs' disparate impact claims should be dismissed for this reason.

### C.    Plaintiffs' WANMA Claim Fails.

Plaintiffs' WANMA theories are far from clear, as they do not allege a failure or refusal to provide rooms for lactation. As a result, by their own allegations, Frontier made "reasonable efforts to provide a room or other location in close proximity to the work area, other than a toilet stall, where an employee can express breast milk in privacy." Colo. Rev. Stat. § 8-13.5-104(1)-(2). A denial of "immediate access to a lactation room" simply cannot establish liability as a matter of law. *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 768-69 (8th Cir. 2014).

Moreover, any quarrel with the facilities at Denver International Airport ("DIA")[12] or other facility outside Frontier's control is a question of public accommodations for **DIA** under Colorado Revised Statutes section 24-34-602. Plaintiffs do not allege that Frontier had any right to control any premises at DIA that it could have designated for lactation. Plaintiffs' WANMA claims fail for this additional reason.

---

[12] Any claim for the facilities at any other airport is beyond the scope of WANMA, as it is not extraterritorial in scope. "[L]egislative authority of every state must spend its force within the territorial limits of the state, and that a law does not have any effect of its own force beyond the limits of the sovereignty from which its authority is derived." *Donahue v. Warner Bros. Pictures, Inc*., 194 F.2d 6, 23-24 (10th Cir. 1952). Therefore, "[l]egislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Id.* WANMA does not "expressly provide for extraterritorial application," and "[i]n the absence of any extraterritorial phraseology in [the] Act, it cannot be construed to have an extraterritorial effect." *Peerless Ins. Co. v. Clark*, 29 Colo. App. 436, 440 (1971).

**D.**     **Many of Plaintiffs' Claims Are Time-Barred in Whole or in Part.**

Rule 12(b)(6) also governs dismissal of claims barred by the applicable statute of limitations "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *accord Glaser v. City & Cty. of Denver*, 557 F. App'x 689, 698-99 (10th Cir. 2014); *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 412-13 (10th Cir. 2013).   Except for the WANMA claim, **all** of Plaintiffs' claims are time-barred for at least some Plaintiffs.

Plaintiffs filed this action on December 10, 2019.  At that time, their FMLA claims were time-barred under the applicable two-year statute of limitations.  29 U.S.C. § 2617(c)(1); *Bass v. Potter*, 522 F.3d 1098, 1102 (10th Cir. 2008).[13]   Plaintiffs can only pursue claims for FMLA interference on or after December 10, 2017, and, with the single exception of Plaintiff Crowe's request for leave in 2018, the FMLA claims of **all** Plaintiffs are time-barred.  Compl. ¶ 128.[14]

The same is true of Plaintiffs' Title VII and CADA claims (to the extent that the CADA claims were properly exhausted).  All discrete actions supporting any Title VII claim that occurred more than 300 days before the applicable Plaintiff filed her charge is time-barred, as is any discrete action supporting any CADA claim that occurred more than 6 months before the applicable Plaintiff filed her charge.  *Deneffe v. SkyWest, Inc.*, No. 14-cv-00348-MEH, 2015 WL 232128, at *4 (D. Colo. Jan. 16, 2015) (Hegarty, Mag. J.) (holding that for the same events, a plaintiff's Title VII claim brought within 300 days was timely, but plaintiff's CADA claim was not).   The following Title VII and CADA claims are time-barred:

---

[13] "For § 2617(c)(2)'s three-year statute of limitations to apply, a plaintiff must demonstrate that his employer 'knew or showed reckless disregard' for whether its conduct was prohibited by the FMLA." *Id.* at 1104.

[14] The same is true of any WANMA claims not covered by the tolling agreement, which are also governed by a two-year statute of limitations. Colo. Rev. Stat. § 8-13.5-101, *et seq.* (WANMA); *id.* § 13-80-102(1)(i) (establishing two-year statute of limitations for "[a]ll other actions of every kind for which no other period of limitation is provided").

| Plaintiff | Date of Charge | Title VII Claims Barred |
|---|---|---|
| Rewitzer | May 16, 2017 (Compl. ¶ 134). | Pregnancy-related claims, which ended no later than May 17, 2016 (Compl. ¶¶ 76, 78).<br><br>Claims before July 20, 2016 (Compl. ¶¶ 85-88). |
| Hodgkins | Oct. 6, 2017 (Compl. ¶ 135). | Claims before Dec. 10, 2016 (Compl. ¶¶ 92-94). |
| Schwartzkopf | Oct. 6, 2017 (Compl. ¶ 135). | Claims before Dec. 10, 2016 (Compl. ¶ 105). |
| Crowe | Oct. 6, 2017 (Compl. ¶ 136). | Claims related to accommodations for pregnancy and lactation for second child (Compl. ¶¶ 122, 124, 126, 127).<br><br>Claims before Aug. 19, 2017 (Compl. ¶¶ 122, 124, 126, 127). |

| Plaintiff | Date of Charge | CADA Claims Barred |
|---|---|---|
| Rewitzer | May 16, 2017 (Compl. ¶ 134). | Pregnancy-related claims (Compl. ¶¶ 76-82, 85-88).<br><br>Lactation claims before Nov. 16, 2016[15] (Compl. ¶¶ 76-82, 85-88). |
| Hodgkins | Oct. 6, 2017 (Compl. ¶ 135). | Pregnancy-related claims (Compl. ¶¶ 92-95).<br><br>Lactation claims before Apr. 6, 2017 (Compl. ¶¶ 92-95). |
| Schwartzkopf | Oct. 6, 2017 (Compl. ¶ 135). | Pregnancy-related claims (Compl. ¶¶ 105-106).<br><br>Lactation claims before Apr. 6, 2017 (Compl. ¶¶ 105-106). |

---

[15] Colorado's Pregnant Workers Fairness Act ("PWFA") did not take effect until August 10, 2016. *See* Colo. Rev. Stat. § 24-34-402.3. Any alleged discriminatory actions occurring before **August 10, 2016** are therefore time-barred, including Plaintiff Rewitzer's claims that she requested any accommodation on August 9, 2016, and Plaintiff Crowe's allegations of any denial before August 10, 2016. *See* Compl. ¶¶ 122, 126-127.

| Crowe | Oct. 6, 2017 (Compl. ¶ 136). | Pregnancy-related claims before Feb. 19, 2017 (Compl. ¶¶ 122, 126-127).<br><br>Lactation claims before Feb. 19, 2017 (Compl. ¶¶ 122, 126-127). |

The only **timely** claims are as follows:

| Plaintiff | Title VII Timely Allegations |
|---|---|
| Rewitzer | Lactation: Requests denied on or after July 20, 2016. |
| Hodgkins | Pregnancy: Requests denied on or after Apr. 6, 2017.<br><br>Lactation: Requests denied on or after Dec. 10, 2016. |
| Schwartzkopf | Pregnancy: Requests denied between Dec. 10, 2016 and Jan. 30, 2017.<br><br>Lactation: Requests denied on or after Dec. 10, 2016. |
| Crowe | Pregnancy: Requests denied for third pregnancy in 2018.<br><br>Lactation: Requests denied on or after Aug. 19, 2017. |

| Plaintiff | CADA (including the PFWA)) Timely Allegations |
|---|---|
| Rewitzer | Lactation: Requests denied on or after Nov. 16, 2016. |
| Hodgkins | Lactation: Requests denied on or after Apr. 6, 2017. |
| Schwartkopf | Lactation: Requests denied on or after Apr. 6, 2017. |
| Crowe | Pregnancy: Requests denied for third pregnancy in 2018<br><br>Lactation: Requests denied on or after Feb. 19, 2017 |

### E.    Plaintiffs' class claims should be stricken or dismissed.

Plaintiffs' proposed classes are also facially overbroad and should be stricken or dismissed under Federal Rule of Civil Procedure 23(d)(1)(D).  *Ramsay v. Frontier, Inc.*, Civ. A. No. 19-cv-

03544-CMA-NRN, 2020 WL 4557545 at *24-28 (D. Colo. July 30, 2020) (striking plaintiff's class action allegations because of overbreadth and lack of standing). The Court properly strikes an improperly identified or overbroad proposed class. *Edwards v. Zenimax Media, Inc*., No. 12–cv–00411–WYD–KLM, 2012 WL 4378219, at *5-7 (D. Colo. Sept. 25, 2012).

Plaintiffs propose to certify classes of: (a) "[a]ll current and former Frontier flight attendants who became pregnant at any point during the class period" and (b) "[a]ll current and former Frontier flight attendants who breastfed, directly or by feeding their child their own expressed breast milk, while employed by Frontier, including those who breastfed while on any form of leave following the birth of a child, at any time during the class period."  Compl. ¶ 144. Notably, Plaintiffs never define the "class period."  *Id.* ¶¶ 144, 146, 147.

These proposed classes are overbroad.  When "it is facially apparent from the pleadings that there is no ascertainable class, . . . dismissal is warranted."  *Buck v. Allstate Corp.*, No. CIV-08-1295-W, 2009 WL 10703061, at *2 (W.D. Okla. Mar. 3, 2009); *Edwards*, 2012 WL 4378219, at *5–6.  Plaintiffs' proposed classes would sweep within their ambit those: (1) who did not receive any attendance points; (2) who did not request any time off; (3) who requested and were granted time off without incident; (4) who accepted alternative roles; (5) who voluntarily resigned; (6) who weaned their babies before returning to work; (7) who did not seek any accommodation; (8) who expressed breastmilk without incident; (9) who chose to remain on leave; (10) who breastfed for only a short period due to supply; (11) who were medically unable to breastfeed; and (12) who did not breastfeed due to personal preference.  None of these individuals would be proper class members.  *Edwards*, 2012 WL 4378219, at *5-6 ("[T]he requirements of Rule 23 are [not] satisfied because the class is overbroad").

Plaintiffs' class allegations should be dismissed with prejudice.  *See* F.R.C.P. 23(d)(1)(D);

*Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1154–55 (D. Colo. 2019) (adopting Judge

Hegarty's striking of class allegations when not limited to those who allegedly suffered an injury).

    Dated this 19th day of November, 2020.

        Respectfully submitted,

        *s/Stephen E. Baumann II*

        Stephen E. Baumann II
        1900 Sixteenth Street, Suite 800
        Denver, CO  80202
        Telephone: 303.629.6200
        Facsimile:  303.629.0200
        Email:  sbaumann@littler.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of November, 2020, I electronically filed the foregoing

**MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to the following:

Galen L. Sherwin, Esq.
ACLU Women's Rights Project
125 Broad Street, 18th Floor
New York, NY  10004
gsherwin@aclu.org

*Attorneys for Plaintiffs*

Jayme Jonat, Esq.
Karen Sebaski, Esq.
Vincent G. Levy, Esq.
Holwell, Shuster & Goldberg, LLP
425 Lexington Avenue, 14th Floor
New York, NY  10017
jjonat@hsgllp.com
ksebaski@hsgllp.com
Vlevy@hsgllp.com

*Attorneys for Plaintiffs*

Mark Silverstein, Esq.
Sara R. Neel, Esq.
American Civil Liberties Union-Denver
303 East 17th Street, Suite 350
Denver, CO  80203
msilverstein@aclu-co.org
sneel@aclu-co.org

*Attorneys for Plaintiffs*

*s/Arlene Aguilar*
Arlene Aguilar