IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MELISSA HODGKINS, et al.

      Plaintiffs,                           Case No. 1:19-cv-03469-RM-MEH

v.

FRONTIER AIRLINES, INC.,

      Defendant.

---

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

## I.    Introduction and Summary of Argument

More than 40 years ago, Congress enacted the Pregnancy Discrimination Act, with the goal of ensuring that no woman would be forced to choose between her pregnancy and her paycheck. Yet Named Plaintiffs, four long-time flight attendants at Frontier Airlines, were faced with policies during and after their pregnancies that literally grounded them from flying. Plaintiffs were disciplined for absences related to pregnancy and were eventually forced onto unpaid leave weeks or months before their due dates, with no alternatives. With no paid parental leave[1] and only the short unpaid leave required by federal law under the Family and Medical Leave Act ("FMLA")—if any remained to them—Plaintiffs were all still breastfeeding their newborns when it came time for them to return to work. Yet Frontier refused to make it possible

---

[1] Contrary to Defendant's suggestion (Motion to Dismiss by Defendant Frontier Airlines, Inc. dated November 19, 2020 (DE 49) ("Mot") at 1), Plaintiffs do not challenge the lack of paid parental leave as itself violating the law, but rather, reference the lack of paid leave as the reason they were still nursing when they returned to work. Compl. ¶ 2. Paid leave was just one of several accommodations—or less discriminatory alternatives—Plaintiffs proposed to prevent them and others from being forced off the job during pregnancy and while they were nursing.

for them to pump breast milk on the job.[2] Plaintiffs paid a steep price as a result of these policies

and practices, including being deprived of critical income when they needed it the most; forced

to give up breastfeeding and the many associated benefits for their health and their babies'

health; and forced to work under conditions that caused them physical pain and distress.

        None of Defendant's myriad arguments for dismissal has merit. Plaintiffs have satisfied

the requirements of standing as they have been harmed—and continue to be subject to—each of

the policies challenged here, and because they fall within the well-recognized doctrine for

situations that are "capable of repetition, yet evading review." Plaintiffs' claims are timely

because they each remain subject to the discriminatory policies in question and seek forward-

looking relief, and because at least one Plaintiff suffered harms during the relevant statutory time

period as a result of each of the challenged policies. And Plaintiffs have met exhaustion

requirements, filing timely charges with the Equal Employment Opportunity Commission

("EEOC") that were simultaneously dual-filed with the Colorado Civil Rights Division

("CCRD"). Plaintiffs' 65-page, 301-paragraph complaint far exceeds the minimal requirements

of Rule 12 and includes specific allegations regarding Frontier's penalization of pregnancy-

related absences through its "Dependability Policy," repeated refusals to respond to

accommodation requests, and failure to make reasonable efforts to provide breaks and a location

to pump other than a restroom. Finally, Frontier's arguments regarding both preemption and

Plaintiffs' class allegations are premature, and in any event fail on the merits. Defendant's

---

[2] As detailed in the Complaint (¶¶ 28-32), those who are breastfeeding and are separated from their babies must remove or "express" breast milk from the breast on roughly the same schedule as the baby's feeding schedule—approximately every 2-3 hours. This is usually accomplished by using a breast pump, which is a manual or electric device for drawing milk from the breasts by suction—a process referred to as "pumping." The process typically takes 15-20 minutes. Failure to remove milk from the breasts with sufficient frequency causes pain, swelling, discomfort, and leaking breast milk, and can lead to medical complications, including blocked ducts or mastitis, an infection of the breast tissue, as well as diminished milk supply, and ultimately cessation of lactation altogether.

motion should be denied in its entirety.

## II.    Plaintiffs Have Standing to Pursue All Claims

### A.  Each Plaintiff Has Alleged Harm Sufficient to Establish Standing.

Frontier's contention that Plaintiffs lack standing because they have not suffered "actual or imminent" injuries (Mot. at 5-6, 10) is factually baseless and ignores the detailed allegations of specific harms they suffered as a result of the challenged policies. To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs readily satisfy this standard.

As a threshold matter, Frontier improperly conflates the standing requirement with the pleading standard for Title VII claims. The requirements of standing, which are jurisdictional, are distinct from the requirements to state a valid claim. *See, e.g.*, *Bond v. United States*, 564 U.S. 211, 219 (2011) ("whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute"); *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092 (10th Cir. 2006) (finding that defendants confused standing with the merits).[3]

Under the correct standard, Plaintiffs have adequately alleged that they were harmed as a result Frontier's policies in numerous ways. During their pregnancies, they were forced onto unpaid leave without the option to seek alternative assignments. *See* Compl. ¶ 2, ¶ 96- 97 (denial of Hodgkins' request for a temporary ground assignment during pregnancy). Each Plaintiff alleges that she breastfed during her employment and that Frontier's failure to provide

---

[3] For example, Frontier argues that Plaintiffs have not sufficiently alleged "any adverse action" (Mot. at 6) and have failed to "demonstrate that Frontier did not accommodate them, even when it accommodated others 'similar in their ability or ability to work.'" Mot. at 8. But those contentions, even if true, relate to whether Plaintiffs have sufficiently alleged their *prima facie* case and not the question of standing. *See Andrews v. Eaton Metal Prod., LLC*, No. 20-CV-00176-PAB-NYW, 2020 WL 5821611, at *10 (D. Colo. Sept. 8, 2020). Moreover, as discussed *infra*, Defendant is incorrect that such allegations are lacking.

accommodations impacted her ability to continue breastfeeding. *Id.* ¶¶ 3, 79-83 (Rewitzer's repeated requests for breastfeeding accommodations denied, resulting in being forced onto unpaid leave); *Id.* ¶ 100 (Hodgkins gave up breastfeeding altogether due to the lack of accommodations); *Id.* ¶¶ 111, 113, 117-118 (Schwartzkopf feared losing her job too much to even request accommodations, suffering anxiety, physical pain, and engorgement); *Id.* ¶ 124 (Crowe suffered pain and engorgement because she was unable to fully empty her breasts on flights). What Defendant characterizes as Plaintiffs being "provide[d] accommodations through additional time off" (Mot. at 7), Plaintiffs call being forced off the job without a paycheck. If, as courts have long recognized, such allegations satisfy the stricter standard of showing adverse action under Title VII, they are plainly sufficient to confer standing. *See*, *e.g.*, *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1344 (2015); *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190, 1192 (10th Cir. 2000) (finding a *prima facie* case of pregnancy discrimination when plaintiffs were denied modified assignments and placed on unpaid leave).

None of the cases Frontier cites in support of its argument that Plaintiffs lack standing to challenge the Dependability Policy (*see* Mot. at 7) is on point, as none involved dismissal for lack of standing. Rather, these cases reflect awards of *summary judgment on the merits* based on the plaintiffs' failures to demonstrate a material factual dispute. *See, e.g.*, *Wimbish v. Nextel W. Corp.*, 174 F. Supp. 3d 1275, 1281-82 (D. Colo. 2016) (ruling on the merits of whether the employer's issuance of attendance points constituted an adverse action sufficient to defeat a summary judgment motion); *Gibbs v. Kelly Servs.*, No. 3:14CV650 DPJ-FKB, 2016 WL 868873, at *1, *3 (S.D. Miss. Mar. 4, 2016) (same). Moreover, unlike in those cases, Plaintiffs have alleged that the points system caused them specific and concrete harms, including deterring them from taking time off to obtain necessary medical care, working under conditions that risked their

pregnancies, subjecting them to disciplinary action, and being rendered ineligible for bonus opportunities for perfect attendance.[4] In addition, the Complaint alleges that the Dependability Policy made it nearly impossible for a pregnant or breastfeeding flight attendant to receive bonus pay for perfect attendance due to common pregnancy and post-birth-related health issues. Compl. ¶ 44. As the Tenth Circuit has recognized, such harms are sufficient to constitute cognizable injuries. *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998).

Because Plaintiffs have alleged concrete harms due to the violation of a "legally protected interest" that are redressable through pursuit of legal and equitable relief, their standing is adequately established. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

## B. The Harms Plaintiffs Suffered Are "Capable of Repetition, Yet Evading Review."

Frontier's suggestion that Plaintiffs must remain continuously pregnant or breastfeeding to maintain standing is baseless and would eviscerate the protections afforded by the Pregnancy Discrimination Act and a host of state laws. Plaintiffs have been harmed by the challenged policies in the past, and they remain employed by Frontier and subject to the challenged policies in future pregnancies. Accordingly, they have standing to seek forward-looking injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Indeed, Plaintiffs specifically allege that, pregnant or not, the challenged policies have a continued impact on their family planning. *See* Compl. ¶¶ 90 (Rewitzer), 103 (Hodgkins), 121 (Schwartzkopf), 133 (Crowe).[5]

---

[4] As Defendant concedes, Crowe, Rewitzer and Hodgkins alleged they were assessed points due to pregnancy-related absences. Mot. at 6. Crowe's points led to disciplinary action by Frontier. Compl. ¶ 129. Rewitzer's three pregnancy-related points pushed her close to the termination threshold and required her to work on trips against her doctor's recommendation, putting her already high-risk pregnancy at even greater risk. Compl. ¶ 85-88. Hodgkins' accrual of 1.5 points from pregnancy-related fatigue deterred her from calling in sick during other instances. Compl. ¶ 95, 102. Schwartzkopf likewise was deterred from calling in sick during pregnancy for fear of accruing points. Compl. ¶ 120.

[5] Even if Frontier were to have since altered its position on any of the challenged policies and practices, Plaintiffs would still maintain damages claims for harms they suffered during the time the policies were in effect, and further, could still obtain declaratory and injunctive relief to ensure they are not reinstated. *See*

Further, Plaintiffs' claims are not mooted by the short duration of pregnancy, as "[p]regnancy provides a classic justification for a conclusion of nonmootness" under the well-recognized exception for situations "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973). Lactation presents a similar circumstance. Here, the action is unlikely to be resolved in the average pregnancy length (about 40 weeks, *see* Compl. ¶ 21) or the typical breastfeeding period of under a year, and there is a "reasonable expectation" that Plaintiffs will suffer the same harms should they again become pregnant. *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008). Plaintiffs Hodgkins and Crowe, who have each given birth and breastfed again since the EEOC charges were first filed, are a case in point.

## III.    Plaintiffs State Claims Under Title VII, CADA, PWFA, WANMA, and the FMLA

Plaintiffs have adequately stated their claims. At the 12(b)(6) stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Moreover, because plaintiffs alleging sex discrimination may show discrimination using several different theories and methods of proof, there is no requirement to affirmatively plead specific elements of a *prima facie* case in order to advance beyond the pleading stage. *See id*; *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Plaintiffs meet this standard for each of their claims.

### A.    Plaintiffs' Challenge to the Dependability Policy is Valid.

Plaintiffs have made specific allegations that, once proven, will show that Frontier's Dependability Policy unlawfully interfered with Plaintiffs' protected rights under the FMLA. The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of

---

*Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016) ("[V]oluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." (citations omitted)).

or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615. To make out a claim of FMLA interference, a plaintiff must show "(1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with h[er] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of h[er] FMLA rights." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007); *see also* 29 C.F.R. § 825.220(b). Moreover, once an employer is on notice of an FMLA qualifying condition such as pregnancy, it is obligated to notify the employee that the time off may qualify for FMLA. *See Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001); *Been v. N.M. Dep't of Info. Tech.*, 815 F. Supp. 2d 1222, 1241 (D.N.M. 2011); *see also* 29 C.F.R. § 825.303(b).

Plaintiffs have alleged that the Dependability Policy, which assigns points for each occurrence of tardiness or absence—despite Frontier's knowledge of their pregnancies—has deterred them and other qualified employees, including class members, from missing work for medically necessary, pregnancy-related reasons for fear of accruing points that could place their jobs at risk. Compl. ¶¶ 85-88, 95, 102, 120, 126, 129, 132, 204, 209, 220, 300. Such allegations are sufficient to maintain their FMLA interference claims. *See Smith v. Diffee Ford–Lincoln– Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002); *Fisher v. Pohlman, Inc.*, No. 4:06CV01761 AGF, 2007 WL 188411, at *3 (E.D. Mo. Jan. 23, 2007) (concluding that a policy similar to the Dependability Policy "could be construed to deter an employee from exercising her rights under the FMLA"); *Martin v. Canon Bus. Solutions, Inc.*, No. 11-cv-02565-WJM-KMT, 2013 WL 4838913, at *4 (D. Colo. Sept. 10, 2013).

Plaintiffs' allegations are also sufficient to sustain a claim that Frontier's application of the Dependability Policy violated Title VII and CADA, under either a disparate treatment or disparate impact theory. *See* 29 C.F.R. § 1604.10; 3 Colo. Code Reg. 708-1:80.6(A).

Specifically, Plaintiffs accrue points for pregnancy-related absences, despite Frontier's stated policy of not assigning points for "excused" absences, including "recognized disability" and absences for other FMLA protected reasons. Compl. ¶¶ 198-201, 289-92. Such pregnancy-based exclusions constitute a clear-cut case of disparate treatment. *See Newport News Shipping and Drydock Co. v. EEOC*, 462 U.S. 669, 682-85 (1983); *Scherr v. Woodland Sch. Cmty. Consol. Dist.*, 867 F.2d 974, 981-82 (7th Cir. 1988). Plaintiffs further allege that the harms they suffered as a result of the Dependability Policy were disproportionate to those suffered by non-pregnant flight attendants, because of the need to skip work due to common pregnancy-related medical and regular prenatal care. Compl. ¶¶ 44, 208-10, 300-01. Such allegations are again sufficient to make out a valid disparate impact claim. *See Martin*, 2013 WL 4838913, at *8 (evidence that sales employee was stripped of her accounts while her male co-workers were permitted to retain theirs was sufficient to demonstrate disparate impact based on pregnancy and FMLA interference); *EEOC v. Warshawsky & Co.*, 768 F. Supp. 647, 654-55 (N.D. Ill. 1991) (granting summary judgment for employee on disparate impact claims upon showing that policy prohibiting use of sick leave in first year of employment had disparate impact on women); *Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 819 (D.C. Cir. 1981) (denying summary judgment for employer in disparate impact challenge by pregnant employee to policy limiting absences to ten days).

### B.    Plaintiffs State Valid Title VII and CADA Claims for Failure to Accommodate Pregnancy and Breastfeeding.

Plaintiffs have also adequately alleged disparate treatment under either the direct or indirect method of proof. *See Young*, 135 S. Ct. at 1345. As to direct evidence, Frontier's maternity policy grounding flight attendants during pregnancy without alternatives facially applies to pregnancy and pregnancy alone. Similarly, Frontier requires flight attendants to be

cleared of all restrictions following childbirth before they are permitted to return to work, and categorically refuses to accommodate breastfeeding. Compl. ¶¶ 5, 83, 179, 191, 271, 282. Both policies expressly apply to (or exclude) pregnancy or breastfeeding, and thus facially treats employees differently "because of sex." At the motion to dismiss stage, these allegations are sufficient. *See Int'l Union, United Auto, Aerospace, & Agric. Implement Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 198-99 (1991).

Plaintiffs also allege indirect evidence of discriminatory motive. Under the familiar *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence of discrimination must demonstrate that (1) they belong to a protected class; (2) they suffered adverse employment actions; and (3) the challenged actions took place under circumstances giving rise to an inference of discrimination.[6] *Tabura v. Kellogg USA*, 880 F.3d at 544, 549 n.3 (10th Cir. 2013). The Supreme Court in *Young v. United Parcel Service* explained that a plaintiff challenging failure to accommodate pregnancy makes out a *prima facie* case by showing "that (1) she belongs to the protected class, (2) that she sought accommodation, (3) that the employer did not accommodate her, and (4) that the employer did accommodate others 'similar in their ability or inability to work.'" *See Young*, 135 S. Ct. at 1354.

Frontier limits its argument to the fourth element—the purported failure to identify comparators.[7] Mot. at 15-16. But Plaintiffs' allegations of disparate treatment are supported by

---

[6] In fact, Plaintiffs are not required to plead the elements of the *prima facie* case at all. *See Swierkiewicz*, 534 U.S. at 510; *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000). But the fact that a plaintiff *has* pled facts supporting the *prima facie* case may inform the Court's analysis of whether a complaint states a plausible claim. *Khalik*, 671 F.3d at 1190-92.

[7] Defendant does not dispute Plaintiffs' membership in a protected group for purposes of their Title VII and CADA claims related to failure to accommodate breastfeeding, nor could it seriously do so. As numerous courts have recognized, lactation is covered under Title VII's prohibitions on sex discrimination because it is sex-linked and is a pregnancy-related condition. *See Hicks v. Tuscaloosa*, 870 F.3d 1253, 1259 n.6 (11th Cir. 2017); *EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428 (5th Cir.

detailed factual allegations that Frontier has denied their requests for ground assignments, while providing such positions to flight attendants with medical conditions or disabilities who are "similar in their ability or inability to work" due to their inability to fly, Compl. ¶¶ 6, 167, 182, 237; that it requires flight attendants returning to work after maternity leave to be free of *all restrictions*, while it imposes no such rule on other medical conditions or disabilities, *id.* ¶¶ 5, 83, 179, 191, 271, 282; and that Frontier categorically denies flight attendants permission to use existing breaks for pumping, while permitting flight attendants to take breaks for other purposes—including "eating and attending to other physical needs such as using the lavatory, applying makeup, or otherwise attending to personal appearance"—without seeking advance permission or monitoring, *id.* ¶¶ 72-73; 276. Such allegations alone are sufficient to satisfy *Young*'s fourth prong. *See Young*, 135 S. Ct. at 1344 (instructing courts to "to consider the extent to which an employer's policy treats pregnant workers less favorably than it treats non-pregnant workers similar in their ability or inability to work"); *Durham v. Rural Metro Corp.*, 955 F.3d 1279, 1286 (11th Cir. 2020) (employer policies of accommodating those injured on the job and of considering accommodations for those with ADA-qualifying conditions constituted sufficient comparator evidence to satisfy *prima facie* case under *Young*).

On top of that, Plaintiffs allege that Frontier placed *specific flight attendants* with similar limitations on their ability to work—*i.e.*, the inability to fly—in temporary ground positions (including by permitting them to work at Goodwill) after suffering on-the-job injuries, including from falling off of the employee bus, tripping on ice, having hot coffee splattered in the face, and tripping in the airplane aisle, as well as those suffering from off-the-job health conditions such as

---

2013); *Allen-Brown v. Dist. of Columbia*, 174 F. Supp. 3d 463, 478 (D.D.C. 2016); *Martin*, 2013 WL 4838913, at *8 n.4; EEOC, *Enforcement Guidance: Pregnancy Discrimination and Related Issues* (June 25, 2015) at *13 & n.106, *available at* https://www.eeoc.gov/laws/ guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues.

a pulmonary embolism. Comp. ¶¶ 50-52.[8] These factual allegations are more than sufficient to "nudge[] their claims across the line from conceivable to plausible." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008).

### C.     Plaintiffs State Valid Disparate Impact Claims.

Frontier challenges Plaintiffs' disparate impact claims on the grounds that the challenged policies are not facially neutral, and that Plaintiffs have purportedly failed to allege a statistically significant disparity. Mot at 16-17. Both arguments lack merit.

First, Plaintiffs have identified specific policies that have disparate effects on pregnant and breastfeeding employees: (1) the application of points to pregnancy-related absences under the strict Dependability Policy; (2) the policy that forces them onto unpaid leave at the end of their pregnancies, without any alternatives that would permit them to continue working; and (3) the refusal to accommodate requests for necessary job modifications related to breastfeeding when they return to work. And because the same facts may give rise to both disparate treatment and disparate impact claims, Plaintiffs are entitled to plead their claims under both theories and attempt to prove, via either route, that the challenged policies are discriminatory. *See Lewis v. City of Chicago*, 560 U.S. 205, 215 (2010); *Adams v. City of Indianapolis*, 742 F.3d 720, 731 (7th Cir. 2014) ("Disparate-impact claims may be based on any employment policy, not just a facially neutral policy.").

Second, with respect to the statistical showing of disparate impact, Plaintiffs allege that

---

[8] The Complaint here is thus in an entirely different category than those cases Defendant cites, which contained no such allegations. *See Khalik*, 671 F.3d at 1194 (affirming dismissal of Title VII claim where the plaintiff's allegations were "entirely conclusory" and she had included "no allegations of similarly situated employees who were treated differently" and "no facts relating to the alleged discrimination"); *Kachadoorian v. United Airlines, Inc.*, No. 18-cv-01205-RBJ, 2019 WL 1953399, at *3-4 (D. Colo. May 2, 2019) (dismissing discrimination claim where complaint lacked "any facts related to his own discrimination" and "any factual allegations that other employees were treated differently").

*100%* of pregnant flight attendants and *virtually all* flight attendants who are breastfeeding when they return to work will be unable to perform full duty work and will need accommodations, while *zero* flight attendants who are not capable of pregnant or breastfeeding are subject to or harmed by Frontier's categorical refusal to provide pregnancy-related accommodations. *See* Compl. ¶¶ 175-76, 193-94, 257-58, 284-85. Allegations regarding such plainly disproportionate effects are sufficient at the pleading stage, particularly in pregnancy discrimination cases where the policies in question are alleged to affect all or nearly all—and only—pregnant employees. *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038 (10th Cir. 2020); *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996); *Barrett v. Forest Labs,* 39 F. Supp. 3d 407, 451 (S.D.N.Y. 2014); *Germain v. Cty. of Suffolk*, No. 07-cv-2523, 2009 WL 1514513, at *4-5 (E.D.N.Y. May 29, 2009).

### D.     Plaintiffs State Valid Claims under Colorado's PWFA.

Colorado's PWFA, enacted in 2016, places an affirmative obligation on employers to "engage in a timely, good-faith, and interactive process to determine effective, reasonable accommodations" for pregnancy and related conditions (such as more frequent restroom breaks or modified work schedules), and to provide such accommodations unless it would pose an undue hardship on the employer's business. Colo. Rev. Stat. Ann. § 24-34-402.3(1)(a), (2). The PWFA directly prohibits employers from requiring employees to take leave in connection with pregnancy and related conditions "if the employer can provide another reasonable accommodation." *Id.*

As detailed above, Plaintiffs allege that Frontier refused to engage in an interactive process in response to their requests for pregnancy and breastfeeding accommodations, instead categorically denying each of their requests and forcing them onto unpaid leave without

considering alternatives. *See supra* at 3-4. Further, allegations that Frontier has provided accommodations such as ground positions for others (*see supra* at 10) create a presumption under PWFA that such accommodations are feasible. Colo. Rev. Stat. Ann. § 24-34-402.3.

      **E.**    **Plaintiffs State a Valid Claim under WANMA.**

Colorado's WANMA affirmatively requires employers to make reasonable efforts to provide break time and access to a private room or location other than a toilet, close to Plaintiffs' work areas, for employees to express breast milk, for up to two years after the child's birth. Colo. Rev. Stat. § 8-13.5-104. Plaintiffs adequately allege that Frontier has violated these requirements; and Frontier's flat-out denial of all requests for breaks and a location to pump hardly constitute "reasonable efforts."

Plaintiffs do not claim that Frontier was required to provide "immediate access" to a lactation room (Mot. at 17), but rather allege that they lacked *any* access to a lactation room at most airports to which Frontier flies.[9] In Schwartzkopf's case, Frontier never provided a list of approved locations to pump, either at Denver International Airport ("DIA") (its principle hub) or at outstations. Compl. ¶ 110. Even where Frontier did provide a list, Frontier denied requests from Plaintiffs for breaks and schedule modifications so they would have sufficient time to use the facilities identified. *Id.* ¶¶ 80-83. Moreover, Defendant is not absolved of its WANMA obligations because facilities at DIA and elsewhere are "outside Frontier's control." Mot. at 17. This is an affirmative defense related to undue hardship that Defendant is free to raise at the appropriate time but would be inappropriate to consider on a motion to dismiss.

---

[9] *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763 (8th Cir. 2014), relied on by Defendant, is not on point. There, the Eight Circuit upheld a finding that in the context of a Title VII sex discrimination claim, a three day wait for badge access to a lactation room because of an employee's failure to complete the required paperwork did not constitute constructive discharge. Plaintiffs here are not asserting constructive discharge claims, but rather, violation of the statute's operative provisions.

Similarly, the Court need not ignore allegations regarding locations outside of Colorado because WANMA has no extraterritorial application. Mot. at n.12. Contrary to Defendant's argument, Colorado has rejected a presumption against extraterritoriality, instead determining the geographic scope of state statutes using ordinary rules of statutory interpretation. *See Tulips Invs., LLC v. State ex rel. Suthers*, 340 P.3d 1126, 1135 (Colo. 2015). And even if there were a presumption against extraterritoriality, it "can be overcome if a party presents 'authority manifesting a contrary intent' from the Colorado legislature.'" *Airquip, Inc. v. HomeAdvisor, Inc.*, No. 16-CV-01849-PAB-KLM, 2017 WL 4222618, at *6 (D. Colo. Sept. 21, 2017) (quoting *Frontier Airlines, Inc. v. Dep't of Revenue*, 571 P.2d 1088, 1089 (Colo. 1977)). Here, there is ample evidence to support WANMA's extraterritorial application. The statute expressly situates its purpose of eliminating obstacles to breastfeeding within the national context, and its language is accordingly broadly drafted to extend these benefits to all workers. Colo. Rev. Stat. § 8-13.5-102 (2) (stating the goal "to become involved in the national movement to recognize the medical importance of breastfeeding . . . and [to] encourage removal of boundaries placed on nursing mothers in the workplace"); *see also* 16A Colo. Prac., Emp. L. & Prac. Handbook § 5:6 (2019-2020 ed.). Despite the presence of a wide variety of Colorado employers conducting business interstate—including many airlines—no industry is categorically exempt. Rather, exemption is determined case-by-case under the "undue hardship" analysis. *See Goldthorpe v. Cathay Pac. Airways Ltd.*, 279 F. Supp. 3d 1001, 1003 (N.D. Cal. 2018). It is that analysis, rather than a categorical rule against extraterritorial application, that should govern here.

## IV.    Plaintiffs' Claims are Timely

Defendant concedes that many of Plaintiffs' claims are timely (Mot. at 20), including all of Plaintiffs' claims under WANMA. See Mot. 18. As to the timeliness arguments Frontier does

raise, it either misconstrues the facts or miscomprehends the law.

First, although there is no dispute over the applicable statutes of limitations under Title VII (300 days), CADA (180 days), and WANMA, Defendant incorrectly sets the cutoff dates for Plaintiffs' Title VII and CADA claims based on when each Named Plaintiff filed her individual EEOC charge. This ignores the "single filing" or "piggy-backing" rule, under which one plaintiff's timely EEOC charge tolls the statute of limitations for all co-plaintiffs and putative class members with claims arising out of similar discriminatory treatment. *See Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1199 (10th Cir. 2004). Accordingly, all Named Plaintiffs' and class members' claims were tolled as of May 16, 2017—the date Rewitzer filed her charge on behalf of herself and all others similarly situated.

Second, Defendant fails to recognize that the Named Plaintiffs' Title VII and corollary state law claims are timely because they remain employed at Frontier and seek forward-looking relief against the operation of discriminatory policies that continue to affect them and will likely be applied to them in the future. *See* Compl. ¶¶ 90, 103, 121, 133; *Lewis*, 560 U.S. at 215 (2010); *Roe v. Cheyenne Mountain Conference Resort, Inc*., 124 F.3d 1221, 1230 (10th Cir. 1997). Indeed, courts routinely find that employees may challenge policies that discriminate based on pregnancy even if they are not actually pregnant at the time the discrimination occurred because of their capacity to become pregnant again. *See Int'l Union,* 499 U.S. at 199; *Jolley v. Phillips Educ. Grp. of Cent. Fla., Inc.*, No. 95-147-CIV-ORL-22, 1996 WL 529202, at *3-4 (M.D. Fla. July 3, 1996); *Pacourek v. Inland Steel Co.*, 858 F. Supp. 1393, 1401-02 (N.D. Ill. 1994).

Moreover, at least one Named Plaintiff was pregnant or breastfeeding (or both) and has

alleged actionable conduct supporting her claims during the relevant time frame.[10] *See Hamer v. City of Trinidad*, 924 F.3d 1093, 1098, 1107 (10th Cir. 2019) (plaintiffs alleging a discriminatory act with repeated but discrete discriminatory effects, both inside and outside of the limitations period, may seek damages for those acts taking place within the limitations period). The complaint is replete with such allegations. *See* Compl. ¶¶ 85-88, 95, 126, 129 (Claims 5, 6, 7, 15, 16) (alleging accrual of and refusal to recategorize "occurrence" points arising in March and April 2018 (Crowe), August 2017 (Hodgkins), and January through March or April 2016 (Rewitzer)); *id.* ¶¶ 96-97, 105 (Claims 1, 2, 9, 10, 11) (alleging forced unpaid leave and refusal to accommodate pregnancy arising in October 2017 (Hodgkins) and December 2016 (Schwartzkopf)); *id.* ¶¶ 79-84, 100, 107-19, 123-130 (Claims 1, 2, 9, 10, 11) (alleging refusal to accommodate breastfeeding and ban on use of breaks for pumping arising in August 2018 through February 2019 (Crowe), April 2017 (Schwartzkopf), August 2016 through June 2017 (Rewitzer), and November 2017 through early 2018 (Hodgkins)).

Finally, Frontier contends that the applicable statute of limitations for Plaintiffs' FMLA claims is two years, rather than three, because it claims it did not "'kn[o]w or show[] reckless disregard' for whether its conduct was prohibited by the FMLA." Mot. at 18 & n.13. But Plaintiffs' allegations support a finding that Defendant's application of the Dependability Policy during pregnancy was both knowing and willful. Frontier does not dispute that it has assigned points to Plaintiffs during their pregnancies, despite its knowledge of their pregnancies. Mot. at 7. This contravenes Frontier's own, express written policy of not attributing points to an

---

[10] Plaintiffs recognize they may ultimately be precluded from seeking *damages* in connection with any portion of the challenged conduct taking place outside the relevant limitations period. *See Hamer*, 924 F.3d at 1107. But Title VII allows consideration of acts outside the statutory window "as background evidence in support of a timely claim." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

employee using leave for an FMLA qualifying condition. Compl. ¶ 41. And it is disingenuous for Frontier to claim that it is not aware of its legal obligations, particularly when it has already been taken to court more than once for FMLA violations. *See, e.g.*, *Packard v. Cont'l Airlines, Inc.*, 24 F. App'x 960, 962 (10th Cir. 2001); *Velyov v. Frontier Airlines Inc.*, No. 14-CV-71-PP, 2015 WL 3397700, at *6 (E.D. Wis. May 26, 2015). Because Plaintiffs sufficiently allege willfulness, the operative statute of limitations for Plaintiffs' FMLA claims is three years. Compl. ¶ 219.

## V.     Plaintiffs Have Satisfied Exhaustion Requirements Under CADA and the PWFA

Defendant's argument that Plaintiffs failed to exhaust their administrative remedies under CADA and PWFA is wrong as a matter of law. Defendant ignores that, as authorized by federal regulations, *see* 29 C.F.R. § 1601.13(c), the CCRD and the EEOC operate under a work-sharing agreement by which all charges filed with EEOC are *automatically jointly filed with the CCRD*. The work-sharing agreement expressly states that each agency "designate[s] the other as its agent for the purpose of receiving and drafting [employment discrimination] charges . . . ." *Rodriguez v. Wet Ink, LLC*, 603 F.3d 810, 812–13 (10th Cir. 2010). Accordingly, in timely filing their EEOC charges that include claims under CADA and PWFA, Plaintiffs have satisfied their exhaustion requirement, and the suggestion that those claims should be dismissed with prejudice is baseless. Nor does the absence of allegations regarding receipt of a NORTS from CCRD deprive the court of jurisdiction over their parallel state law claims. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018). Regardless, because Plaintiffs have recently sought and received a NORTS from the CCRD for each Named Plaintiff, dismissal of their claims based on such bureaucratic technicality would be an exercise in futility.[11] *See* Jonat Decl. Ex. A.

---

[11] At a minimum, should the Court determine that the lack of a NORTS from CCRD at the time of filing deprives it of jurisdiction over Plaintiffs' CADA and PWFA claims, it should dismiss those claims *without* prejudice rather than with prejudice as Defendant has suggested, and permit leave to file an

VI.     **Plaintiffs' CADA, PWFA, and WANMA Claims Are Not Preempted**

A.     **Frontier's Preemption Arguments Are Affirmative
Defenses Not Properly Resolved on a Motion to Dismiss.**

Frontier's arguments that Plaintiffs' state law claims are preempted by the FAAct and the ADA are premature and cannot be resolved at the pleading stage, under either Rule 12(b)(1) or 12(b)(6).

Courts recognize that preemption "does not normally concern the subject-matter jurisdiction of a court to hear a claim, which is what is relevant to the resolution of a Rule 12(b)(1) motion." *Trollinger v. Tysons Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004). Where a defendant "asserts that [] state claims have been substantively displaced by federal law," preemption is properly "invoked in both state and federal court [only] as an affirmative defense to the allegations in a plaintiff's complaint." *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012) (citations omitted); *see also In re Santa Fe Natural Tobacco Co. Mktg. & Sales Practices and Prods. Liab. Litig.*, 288 F. Supp. 3d 1087, 1156 (D. N.M. 2017) ("Preemption arguments are analyzed under rules 12(b)(6), 12(c) or 56"). Here, Frontier argues that Plaintiffs' state law claims related to the refusal to accommodate breastfeeding are preempted by the FAAct and the ADA because they "relate to activities in the heavily regulated field of airline transportation." Mot. at 10. These ordinary (and misplaced) preemption arguments do not implicate the Court's subject matter jurisdiction. *See Devon Energy*, 693 F.3d at 1203 n.4.[12]

---

amended complaint. *See Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (dismissal with prejudice is appropriate where permitting amendment and refiling would be futile).

[12] The cases cited by Frontier do not support dismissal under Rule 12(b)(1). In *Pliuskaitis v. USA Swimming*, the Tenth Circuit explained that "[p]reemption may deprive a forum of jurisdiction *or it may just create an affirmative defense.*" 720 Fed. Appx. 481, 484 (10th Cir. 2018) (emphasis added). And in *Fell v. Cont'l Airlines, Inc.*, the specific federal statute at issue, the Railway Labor Act (RLA), required air carriers "to establish boards of adjustment" to resolve "minor disputes" between carriers and their

Frontier's preemption argument does not fare any better under Rule 12(b)(6) because under Tenth Circuit law, dismissal based on an affirmative defense is proper "only when the complaint itself admits all elements of" that defense, which is not the case here. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). In the discrimination context, courts recognize that preemption arguments implicating a nondiscriminatory justification for a defendant's conduct are premature on a motion to dismiss. *See, e.g.*, *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1466-67 (11th Cir. 1998) (preemption improperly based on non-discriminatory justification); *Bader v. United Airlines, Inc.*, 113 F. Supp. 3d 981, 989 (N.D. Ill. 2015) ("It would be inappropriate to hold that plaintiffs' claims are preempted based solely on United's proffered justification.").

The same is true here. Aviation safety is in no way intrinsic to Plaintiffs' CADA, PWFA or WANMA claims, but rather goes to Frontier's proffered justification for its denial of requests for one particular form of accommodation—permission to use breaks to pump during flight. *See* Compl. ¶¶ 83, 99. Because Frontier's "preemption argument arises from its contention, in *response* to plaintiffs' allegations," it would be improper to resolve the issue of preemption under the FAAct on the pleadings. *Bader*, 113 F. Supp. 3d at 989.[13] Moreover, Frontier does not argue—nor could it—that any of the other possible accommodations requested by Plaintiffs reasonably implicate airline safety. *See, e.g.*, Compl. ¶¶ 3, 82, 128 (ground positions); ¶¶ 3, 82

---

employees, which had had "exclusive jurisdiction" to hear and decide "minor disputes" like the one at issue in *Fell*. 990 F. Supp. 1265, 1267-68 (D. Colo. 1998). Neither the FAA nor the ADA include a comparable scheme.

[13] Plaintiffs have never sought as an accommodation permission to pump during critical phases of flight—*i.e.*, during take-off, landing, and when the plane is below 10,000 feet. Thus, Frontier's statement that "the FAAct regulations themselves address the issues with such accommodations," citing to 14 C.F.R. § 121.542(b), is a red herring. *See* 14 C.F.R. § 121.542(b) ("No flight crewmember may engage in, nor may any pilot in command permit, any activity during a critical phase of flight which could distract any flight crewmember from the performance of his or her duties or which could interfere in any way with the proper conduct of those duties.").

(preference for shorter flights and trips with more time on the ground between flights); ¶¶ 82, 110 (lactation facilities at outstations).

The same is true of preemption by the ADA, which prohibits states from enacting or enforcing laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Here too, preemption is not automatic and depends on the facts and the nature of the claims. *Abdu-Brisson v. Delta Air Lines, Inc.*, 128 F.3d 77, 85-86 (2d Cir. 1997) (ADA preemption is applied "on a case-by-case basis"). State law claims only may be preempted by the ADA when they have a "significant effect" or a "significant impact" on rates, routes, or services. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388-90 (1992). Frontier's motion does not even articulate this standard, let alone establish any such significant impact as a matter of law.

Here, the only rationale for ADA preemption articulated by Frontier is that "extended occupancy of a lavatory by a flight attendant" *might* displace passengers *if* such use of the restroom was for an "extended" period. But Plaintiffs are seeking a private location to pump *other than* a restroom. The fact that Crowe and Schwartzkopf, as a result of Frontier's refusal to provide accommodations, previously had no choice but to pump in unsanitary airplane lavatories does not preempt their claims. And as with the FAA, the other potential accommodations Plaintiffs seek, such as ground positions, do not even plausibly impact "prices, routes, or services." Regardless, Frontier's scenario is highly speculative and involves heavily disputed questions of fact that should not be considered until Plaintiffs have an opportunity to present evidence in response. *See Parise*, 141 F.3d at 1466; *Bader*, 113 F. Supp. 3d at 989.[14]

---

[14] Contrary to Frontier's contention, the Eleventh Circuit did not "very recently address[] these same issues" in *Mennella v. Am. Airlines, Inc.*, No. 19-11410, 2020 WL 4593800 (11th Cir. Aug. 11, 2020). Mot. at 13. *Mennella* found a passenger's negligence claims based on "untimely wheelchair assistance," refusal of on-board food and beverage service, accusations that he was intoxicated, and "how the flight attendants and pilots responded to an emergency situation while in the air" were preempted. *Id.* at *5. Such facts are inapposite and in no way implicated by Plaintiffs' employment discrimination claims here.

**B.    Plaintiffs' State Antidiscrimination Claims Are Not Preempted by the FAAct or ADA.**

In addition to being premature, Frontier's preemption arguments fail on the merits. Frontier cannot establish that Plaintiffs' state law claims would have a "significant impact" on rates, routes, or services so as to warrant preemption under the ADA. In fact, most state-law-based employment discrimination claims have been found not to conflict with the ADA, because "whether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency." *Abdu-Brisson*, 128 F.3d at 84; *see also Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 496 (6th Cir. 1999); *Parise*, 141 F.3d at 1465-68; *Aloha Islandair v. Tseu*, 128 F.3d 1301, 1303 (9th Cir. 1997). As in those cases, although "[i]t is true that an airline's employment decisions may have an incidental effect on its 'services' . . . [p]ermitting full operation of . . . [anti-]discrimination law[s] will not affect competition between airlines—the primary concern underlying the ADA." *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1259 (11th Cir. 2003) (citations omitted). The case cited by Frontier, *Foley v. JetBlue Airways, Corp.*, No. C 10-3882 JCS, 2011 WL 3359730 (N.D. Cal. Aug. 3, 2011), is not to the contrary. Rather, the *Foley* court held that "services" of an airline do *not* include items that "are not themselves 'prices, schedules, origins [or] destinations of the point-to-point transportation of passengers, cargo, or mail'" because any impact would be "too tenuous, remote, or peripheral" to find preemption. *Id.* at *7 (citations omitted). The court thus found that the ADA did not preempt application of state discrimination laws to "JetBlue's website and kiosks," explaining that "pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions" also are not "services" for purposes of the ADA.

The same is true of the FAAct. Contrary to Frontier's suggestion, the FAAct does not automatically preempt the entire field of aviation safety. *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 705 (3d Cir. 2016). Rather, courts assess "whether the particular area of aviation commerce and safety implicated by the lawsuit is governed by pervasive federal regulations." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013) (quotations omitted). Thus, as equal application of existing rules poses no particular safety issue, state antidiscrimination laws routinely apply to airlines. *See Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 950 (N.D. Cal. 2011); *Chowdhury v. Nw. Airlines Corp.*, 238 F. Supp. 2d 1153, 1156 (N.D. Cal. 2002) ("[A]s California's laws mimic the federal civil rights laws and the federal civil rights laws do not conflict with the federal aviation statutes, it follows that California's civil rights laws also do not conflict with federal aviation laws").[15]

## VII.  Frontier's Opposition to Rule 23 Class Certification Is Premature and Provides No Valid Basis for Striking Plaintiff's Class Allegations

### A.  Frontier's Attack on Class Certification is Premature.

The Court should reject Frontier's half-hearted attack on Plaintiffs' class allegations. A "motion to strike is a drastic remedy" that is "disfavored by the courts." *Francis v. Mead Johnson & Co.*, No. 10-cv-00701, 2010 WL 3733023, at *1 (D. Colo. Sept. 10, 2010). This is because it "requires a reviewing court to 'preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are

---

[15] As a result, where state law claims have been preempted by the FAAct, it was because safety was integral to the claims themselves—not because a defendant cited aviation safety to justify its actions. *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326, 1329 (10th Cir. 2010) (FAAct preempted New Mexico from regulating, under state liquor law, alcoholic beverage service based "on the pervasive federal regulations concerning flight attendant and crew member training and the [attendant] aviation safety concerns"); *Ventress v. Japan Airlines,* 747 F.3d 716, 719-23 (9th Cir. 2014) (preemption applied where safety was central to retaliation and constructive termination claims); *Stonecypher v. IASCO Flight Training Inc.*, No. 2:17-cv-02409-MCE-EFB, 2018 WL 4409438, at *4 (E.D. Cal. Sept. 16, 2018) (same).

permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Id.* (quoting *Bryant v. Food Lion, Inc.,* 774 F. Supp. 1484, 1495 (D.S.C. 1991)).[16] Consistent with this, federal courts across the country have denied motions to strike class allegations at the pleading stage. *See, e.g.*, *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432, 2013 WL 5448078, at *4 (D. Colo. Sept. 27, 2013) (holding motion to strike "class allegations at [pleading] stage. . . not warranted" and that "Plaintiffs should be allowed to conduct discovery before the merits of class certification are reached"); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (rather than striking class allegations, the "advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence [obtained through discovery] as to whether a class action was maintainable"). This Court should recognize, as these cases and others do, the importance of considering the evidentiary record in determining whether Rule 23 requirements have been met. *See In Re Wal–Mart Stores, Inc. Wage and Hour Litig.,* 505 F.Supp.2d 609, 616 (N.D. Cal. 2007); *see also Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 519 (N.D. Iowa 2003) (collecting cases); *Khorrami v. Lexmark Int'l, Inc.*, No. 07-1671 DDP, 2007 WL 8031909, at *2 (C.D. Cal. Sept. 13, 2007) (same).

## B.  Plaintiffs Allege an Ascertainable Class.

To strike class allegations at the pleading stage, a "[d]efendant must demonstrate from the face of plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Francis*, 2010 WL 3733023

---

[16] In fact, plaintiffs in proposed class actions need not even seek certification of the precise class definition set forth in the complaint. *See Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("Litigants and judges regularly modify class definitions . . ."). Even after certification the definition may be "altered or amended." Fed. R. Civ. P. 23(c)(1)(C).

at *1 (internal quotation marks and citation omitted) (emphasis in original). The court must

accept all class allegations, as with all factual allegations, as true. *DG ex rel. Stricklin v.*

*Devaughn*, 594 F.3d 1188, 1196 (10th Cir. 2010); *see also Francis*, 2010 WL 3733023 at *1.

Frontier's claim that Plaintiffs' class allegations fails to plead an ascertainable class

because the class is too broad is meritless. A class is adequately defined "if its members can be

ascertained by reference to objective criteria," *Anderson v. Merit Energy Co.*, No. 07-cv-00916,

2008 WL 2484187, at *2 (D. Colo. Jun. 19, 2008) (citation omitted), and if it is "administratively

feasible for the court to determine whether a particular individual is a member." *Colorado Cross-*

*Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354, 357 (D. Colo. 1999). Here, Plaintiffs'

proposed class is readily ascertainable by reference to objective, as opposed to subjective,

criteria, which in turn can be determined by reference to personnel records or, where necessary,

by averrals from class members with supporting documentation. *See Rhodes v. Nat'l Collection*

*Sys., Inc.*, No. 15-CV-02049-REB-STV, 2016 WL 7377125, at *2 (D. Colo. Dec. 16, 2016) (at

class certification stage, rejecting defendant's argument "that every potential member of the class

be identified at the outset" and permitting potential class members to "submit a verified claim

averring to his or her membership in the class" to be cross-referenced with the defendant's

records).[17] The Court should allow discovery to proceed so that Plaintiffs may obtain the

information necessary to identify class members. *Wornicki v. Brokerpriceopinion.com, Inc.*, No.

---

[17] Defendant's reliance on *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1154-55 (D. Colo. 2019) is misplaced. First, the plaintiffs in *Gilbert* "d[id] not challenge the merits of Magistrate Judge Hegarty's assessment" that their class definition was overbroad. *Id.* at 1155. Rather, the plaintiffs requested they be permitted to reform the class definition by shortening the class period. *Id.* More importantly, the Gilbert court was concerned with inclusion of class members who "could not have suffered an injury[.]" *See Gilbert v. United States Olympic Comm.*, No. 18-CV-00981-CMA-MEH, 2019 WL 1058194, at *33 (D. Colo. Mar. 6, 2019), *report and recommendation adopted in part, rejected in part*, 423 F. Supp. 3d 1112 (D. Colo. 2019). *Gilbert* recognized that "the fact that a class may inevitably include members who did not incur an injury is a different question." *Id.*

13-CV-03258-PAB-KMT, 2015 WL 1403814, at *5 (D. Colo. Mar. 23, 2015) (rejecting motion to strike class allegations and noting that "in most circumstances, it is appropriate for courts to allow discovery before determining whether class certification is appropriate").[18]

## **CONCLUSION**

For the foregoing reasons Defendant's motion to dismiss should be denied in full.

Respectfully submitted this 23rd day of December 2020

By: /s/ Jayme Jonat
Jayme Jonat
Vincent Levy
Karen Sebaski
HOLWELL SHUSTER & GOLDBERG LLP
IN COOPERATION WITH THE
AMERICAN CIVIL LIBERTIES UNION
425 Lexington Avenue, 14th Floor
New York, NY 10017
Phone: 646-837-5151
Fax: 646-837-5150
Email: jjonat@hsgllp.com
Email: vlevy@hsgllp.com
Email: ksebaski@hsgllp.com

Galen Sherwin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-519-7819
Email: gsherwin@aclu.org

Sara R. Neel
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17thAvenue, Suite 350
Denver, CO 80203
Phone: 720-402-3107
Fax: 303-777-1773
Email: sneel@aclu-co.org
Email: msilverstein@aclu-co.org

Juno Turner
TOWARDS JUSTICE
1410 High Street, Suite 300
Denver, CO 80219
Phone: 720-239-2060
Email: juno@towardsjustice.org

*Attorneys for Plaintiffs*

---

[18] Frontier's purported ascertainability concerns are particularly misplaced here, where the class is unlikely to exceed more than 100 individuals. Ascertainability concerns most commonly arise in cases involving hundreds of thousands, or even millions, of potential class members.