1

<pre>
 1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
 2
    Case No. 19-cv-3469-RM-MEH
 3  _____

 4  MELISSA HODGKINS, et al.,

 5       Plaintiffs,

 6  vs.

 7  FRONTIER AIRLINES, INC.,

 8       Defendant.
    _____
 9

10          Proceedings before MICHAEL E. HEGARTY, United

11  States Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 10:07 a.m., November 5,

13  2020, in the United States Courthouse, Denver, Colorado.

14  _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                    APPEARANCES

19          JAYME JONAT, SARA NEEL, GALEN SHERWIN and JUNO

20  TURNER, Attorneys at Law, appearing for the

21  Plaintiff.

22          DANIELLE KITSON and STEPHEN BAUMANN, Attorneys at

23  Law, appearing for the Defendant.

24  _____

25                 SCHEDULING CONFERENCE
</pre>

2

```
1                 P R O C E E D I N G S
2              (Whereupon, the within electronically recorded
3    proceedings are herein transcribed, pursuant to order of
4    counsel.)
5              THE COURT:  Good morning.  Case Number 13 --
6    19-cv-3469, Melissa Hodgkins, et al. vs. Frontier Airlines,
7    Inc.  Familiar case, I guess.
8              Let's go ahead and have our appearances.
9              MS. JONAT:  Your Honor, you have Jamye Jonat here
10   from Holwell Shuster & Goldberg for the plaintiff and with me
11   are my co-counsel Sara Neel from the ACLU of Colorado, Galen
12   Sherwin from the ACLU and Juno Turner from Towards Justice.
13             THE COURT:  All right, thank you.  Good morning.
14             MS. JONAT:  Good morning.
15             MS. KITSON:  Good morning, Your Honor.  This is
16   Danielle Kitson and with me is Steve Baumann on behalf of the
17   defendant, Frontier Airlines.
18             THE COURT:  Thank you.  Where are you guys on the
19   other matter, by the way?
20             MS. JONAT:  In terms of discovery, Your Honor?
21             THE COURT:  No, settling the pilot -- settling the
22   flight attendants.  So --
23             MS. KITSON:  Your Honor, this is Danielle Kitson.
24             THE COURT:  Yeah, isn't this the case -- what --
25   it's the flight attendants one that we were going to settle,
```

3

1   isn't it?

2            MS. KITSON:  Yes, Your Honor.  That's what we're

3   still looking at.

4            THE COURT:  I thought we -- I thought you were

5   virtually there.

6            MS. KITSON:  We've fallen back a little bit, Your

7   Honor, from the last time that we've had discussions with

8   you.

9            THE COURT:  Really?  Have you been trading drafts?

10           MS. KITSON:  Yes, drafts, terms and conditions, and

11  I think we may have encountered a few hiccups that had not

12  been there before.

13           THE COURT:  Matters we hadn't discussed?

14           MS. KITSON:  Yes, including the monetary piece, and

15  we've been going back and forth on that piece of it and what

16  would it look like if we were to settle on a class basis

17  versus a nonclass basis.

18           THE COURT:  Okay.  What's -- what are the

19  jurisdictional impediments that Frontier plans to raise?

20           MS. KITSON:  Your Honor, there are a number of

21  preemption arguments that we plan to raise on a motion to

22  dismiss, including preemption under the Federal Aviation Act

23  and preemption under the Airline Deregulation Act.

24           THE COURT:  Okay.  Well, without a stay we do have

25  to move forward.  You understand that, right?

4

1          MS. KITSON:  We do, Your Honor.  It's our intention

2     to file that motion to stay on or before November 19 and

3     sooner if Your Honor needs us to do so.

4          THE COURT:  Why -- what's magic about that date?

5          MS. KITSON:  We had just put that date forward,

6     Your Honor, in the scheduling order, because we did not have

7     a responsive pleading date still in place, given the

8     settlement discussions, and so the parties had talked about a

9     date of November 19 for Frontier to file that dispositive

10    motion, and so we picked that date as well as the date on

11    which we would then also file an accompanying motion to stay.

12         THE COURT:  Are there really material factual

13    issues in this case?

14         MS. KITSON:  I mean, from our perspective, Your

15    Honor, no in the sense that, you know, what happened with

16    respect to each individual woman from a facts perspective, I

17    do not think it's going to be in dispute.  That said, there

18    are some issues.

19         One example, Your Honor, is the issue of the

20    dependability points, the attendance points that were

21    assigned.  You know, it's Frontier's position that all of

22    those points were recoded once it became clear that absences

23    were pregnancy or lactation related, and I believe that the

24    plaintiffs are claiming otherwise, that somehow those points

25    are continuing to be assessed as attendance infractions, if

1   you will.

2          So that is one fact issue.  I do think, you know,

3   part of our dispositive motion is going to be that, you know,

4   at least one of these women does not have any claim, because

5   when you look at her allegations in terms of what happened to

6   her, there's nothing actionable there.  Her claims consist

7   mainly of, you know, allegations that she assumed that she

8   wouldn't be given accommodations and so she did not act, that

9   type of thing.

10          So there's just a variety of -- you know, to us

11  though that is a -- this is an absence-of-fact-issue-type

12  argument.  The only actual fact issues I can think of,

13  sitting here, would be those dependability points -- issues,

14  but on our dispositive motion, we'll be raising issues of

15  timeliness in terms of claims that are time barred and also

16  issues, as I said -- these 12(b)(6) issues of certain women

17  not stating a claim based on the face of the complaint.

18          THE COURT:  Okay.  Who's speaking for the

19  plaintiffs today?

20          MS. JONAT:  Jamie Jonat, Your Honor.

21          THE COURT:  Ms. Jonat, what do you think the fact

22  issues are that need discovery?

23          MS. JONAT:  I think for -- for starters, I think

24  that there's going to be some questions about how each of the

25  individual plaintiffs were affected by the policy.  You know,

6

1    I think that Ms. Kitson is right that a number of facts are

2    not in dispute.

3              However, how each woman was affected personally, as

4    it affected her ability to breastfeed, for example, in those

5    circumstances, that there will be certain questions of fact.

6              THE COURT:  Well, but you don't need any discovery,

7    because you have those people in your camp and you have full

8    access to whatever their story is, correct?

9              MS. JONAT:  But we'll necessarily need to get

10   certain information from the defendant, whether it's through

11   deposition testimony of those that were involved, things that

12   they weren't aware of that was happening behind the scenes.

13   And it's also going to be necessary for us to get certain

14   information with respect to their -- behind their policies

15   and procedures and, specifically, you know, the number of

16   flight attendants that are affected by this and certain

17   financial data, all of that are things that we're going to

18   need to get through discovery.

19             THE COURT:  I can see you needing the number of

20   people potentially affected.  I didn't understand the other

21   parts, though.

22             MS. JONAT:  Well, for example, for purposes of

23   damages, you know, we're going to need certain wage and

24   benefit information, not all of which is within the

25   possession of our clients, and so that's information that

7

1   we're going to need to get from Frontier.

2           THE COURT:  Well, your clients have possession of

3   what they made, right?

4           MS. JONAT:  They do, Your Honor, but there's

5   certain information with respect to, you know, their

6   benefits, their health benefits, things of that nature that

7   is actually in possession of Frontier as opposed to our

8   clients and that we're going to need to get from them.

9           THE COURT:  Well, give me -- what material fact

10  concerns their health benefits?

11          MS. JONAT:  So, for example, on certain women when

12  they were placed on unpaid leave, there's a question as to

13  whether they were still receiving certain benefits, like

14  long-term disability and short-term disability.  And the

15  other information that we're certainly going to need from

16  Frontier, which is critical to our case, is information with

17  respect to comparators.  You know, a critical part of our

18  claims is whether there were other employees at Frontier that

19  were receiving accommodation for either disability or any

20  sort of medical incapacities, and so in that case, you know,

21  that information is solely within the possession of Frontier

22  and it's critical to our claims.

23          THE COURT:  So were any of your clients denied

24  short-term or long-term disability?

25          MS. JONAT:  It's -- some of our clients, frankly,

8

1   aren't entirely sure about whether their benefits were or

2   were not terminated when they were out on certain temporary

3   leave.

4           THE COURT:  No, no.  Were they ever denied

5   short-term or long-term disability benefits?  That's my

6   question.

7           MS. JONAT:  Sitting here today, no, I don't know if

8   they were.

9           THE COURT:  Okay.  So if a benefit wasn't

10  available, but it wasn't ever used or needed, then it's no

11  damages, right?

12          MS. JONAT:  That's fair, Your Honor, yes.

13          THE COURT:  Okay.  Well, so I'm not the type that's

14  going to send you off into sort of autopilot, if you pardon

15  the expression, on discovery.  I think it -- I'm not sure I

16  -- you know, I would support a full stay, but I also would

17  want discovery to make sense, that it relates to material,

18  factual issues.

19          So, you know, having been involved with this case

20  for awhile --

21          MS. KITSON:  Your Honor --

22          THE COURT:  -- it just didn't seem like to me that

23  there was that -- other than maybe identity of the class and

24  -- it just didn't seem like to me that there were many

25  unknowns on either side.  Does that make sense?

1          MS. SHERWIN:  Your Honor, if I could chime in.

2    This is Galen Sherwin for the plaintiffs.

3          THE COURT:  Go ahead.

4          MS. SHERWIN:  Just to bring home what Ms. Jonat

5    mentioned, that critical evidence in this case will relate

6    what types of accommodations have been provided to other

7    employees who were similar in their ability or inability to

8    work, that's really the crux of a pregnancy accommodation

9    case and that is information that is outside of our client's

10   knowledge.  You know, a person who seeks accommodation from

11   their employer does not know what other accommodations have

12   been given to others and for what reason.

13         So that is information that's entirely within the

14   defendant's possession and knowledge.  In addition, as you

15   probably recall from conversations previously with us, there

16   is a dispute, as Ms. Kitson referenced, as to the awarding of

17   points under the dependability policy for those who are

18   pregnant and how that actually works in practice and what

19   Frontier's response was when those who had been awarded

20   points under the policy sought to have them removed because

21   they were pregnancy related.  So that is a factual dispute

22   that is already evident.

23         And in addition, there will be, of course,

24   discovery related to comp issues under Rule 23, such as

25   commonality, but, you know, we would like the opportunity to

1     take class discovery on and.  And then in addition that our

2     disparate impact claims in the case that will require some

3     degree of analysis of the overall impact of the operation of

4     these policies on those affected by pregnancy as compared to

5     others.

6             THE COURT:  Okay.  So explain this refusal to

7     confer.  What do you mean by that?  They didn't even want to

8     -- they didn't engage in a conversation?

9             MS. SHERWIN:  With respect to discovery, Your

10    Honor?

11            THE COURT:  Yes.  Several times, the plaintiffs say

12    --

13            MS. SHERWIN:  Yes.

14            THE COURT:  -- that Frontier refused to confer.

15    What does that mean?

16            MS. SHERWIN:  So my understanding, and Ms. Kitson

17    can tell me if this is wrong, is that they're taking the

18    position that because they intend to file a motion to stay,

19    that all discovery in the case is de facto stayed, and

20    therefore, when we discuss with them about, you know,

21    exchanging initial disclosures and, you know, the like, they

22    said that they were not going to be proceeding with discovery

23    at this time.

24            THE COURT:  Well, Ms. Kitson, you know that's not

25    your call, obviously.  We're here for a scheduling

1    conference.  We have local rules that require you to confer

2    and put together a scheduling order.

3            Did you refuse to do that?

4            MS. KITSON:  Absolutely not, Your Honor.  We

5    conferred extensively.  We had two lovely WebEx calls in this

6    age of Zoom.  We worked together on a draft.  We ended up not

7    being able to reach an agreement on a number of things and so

8    we split those out into our two separate sections, as you've

9    seen, and our position certainly is not that we can in any

10   way circumvent the local rules.

11           We, as Your Honor put it, were trying to come up

12   with a discovery process that would make sense in light of

13   the fact that we will be moving to stay under -- and moving

14   for a protective order under Rule 26(c) and also the fact

15   that we are seeking to bifurcate discovery in the case.

16           So very typical process, Your Honor, of conferring

17   over the scheduling order and appearing in front of you today

18   to make the arguments that we're making.

19           THE COURT:  Okay.  So I'm not really a fan of

20   somebody putting something in a public filing to me that's

21   not true.  So I got to -- I'm going to, right now, explore

22   why the plaintiff said Frontier refused to confer regarding

23   initial discovery deadlines, because I see in this order

24   opposing deadlines on nearly every section.

25           So what did you mean by that?

1            MS. JONAT:  Your Honor, what we meant by that was,

2    you know, the actual dates for exchanging initial

3    disclosures, and our understanding is that, you know, despite

4    the dates in here, defendant is taking the position that

5    discovery should be stayed, pending resolution of their

6    motion to dismiss and motion to stay, which -- because

7    they're planning to file shortly.

8            THE COURT:  Well, that's not inconsistent.  It's

9    not inconsistent to say, We don't think there should be any

10   discovery and, oh, by the way, here's our deadlines.  That's

11   fine.  Do you understand that?

12           MS. JONAT:  Yes.  No, I understand, Your Honor.

13           THE COURT:  So I'm looking at, for example,

14   statement as to when 26(a)(1) disclosures were made or will

15   be made.  Do the plaintiffs give a date?

16           MS. JONAT:  Yes, Your Honor.  We have offered, on

17   several occasions, to exchange initial -- initial disclosures

18   and, you know, we have not heard anything back from Frontier

19   as to, you know, their intention or not to serve their

20   26(a)(1) disclosures.

21           THE COURT:  Well, why didn't you put a date?  The

22   order calls for a date.  You didn't put a date in your

23   section, did you?

24           MS. JONAT:  I'm looking right now.  No, we did not,

25   Your Honor.

13

1          THE COURT:  Okay.  I think you overstated your

2     position with regard to what Frontier did or didn't do, okay?

3          MS. JONAT:  Okay.  Understood, Your Honor.

4          THE COURT:  All right.  Turning to paragraph, I

5     guess, 8(c).  I mean, I guess Frontier wants to split class

6     and merits discovery.  I just don't think there's going to be

7     that much class discovery.

8          Do you think there's going to be that much class

9     discovery, Ms. Kitson?

10          MS. KITSON:  The main issue, Your Honor, is

11     numerosity.  I think in this situation, that's going to

12     really be a front and center issue and that -- if we -- the

13     way that I look at this is it's a staged analysis.

14          Number one, we're going to be moving to dismiss the

15     claims or narrow them based on the time frame that will be

16     applicable, which the parties are going to dispute in terms

17     of, you know, which claims were live when and what class

18     members are going to be able to piggyback, so to speak.

19          If you look at that and if you look at what the

20     motion to dismiss is going to say -- the motion to dismiss

21     will say, it's a very limited time frame and we're looking

22     at, you know, possibly ten people who would be part of this

23     class.  If we don't limit it at all, which is what the

24     plaintiffs are proposing -- they're proposing that the class

25     be anyone who was pregnant and anyone who was breastfeeding

1    for any length of time, regardless of whether they ever

2    requested any kind of accommodation -- that's going to be

3    much broader.  Now you're talking about potentially, you

4    know, 150 -- upwards of 150 people.

5            And so to us that's what -- we'd like to nail that

6    down first in terms of through the motion to dismiss and the

7    dispositive motion, what's the time frame going to be, and

8    then with respect to the appropriate time frame, doing class

9    certification discovery on the people who would be in that

10   relevant window and then moving for class certification and

11   determining, you know, whether there's commonality,

12   (inaudible) and numerosity.

13           We don't believe that there's going to be -- we

14   don't think that numerosity is going to be met here, and so

15   that's one of the things we'd like to do front and center.

16   If merits discovery proceeds, then plaintiffs are going to be

17   looking to get the specifics on -- you know, on a substantial

18   number of women and what happened with each and every one of

19   them with respect to each pregnancy, each period of

20   lactation, et cetera, et cetera.

21           So the scope of discovery looks very different

22   depending on whether a class is certified or not, if that

23   makes sense.

24           THE COURT:  Yeah, it makes sense, I guess.

25           MS. TURNER:  Your Honor -- and this is Juno Turner.

15

1    Could I just respond briefly to Ms. Kitson?

2              THE COURT:  Go ahead.

3              MS. TURNER:  And you know, I think -- I mean, the

4    issue is, I think, as Your Honor correctly pointed out,

5    there's not likely to be a ton of class-specific discovery

6    here.  It's certainly been my experience, and I've been

7    litigating these cases under the recent line of Supreme Court

8    cases that, you know, merits discovery and class discovery

9    really tend to merge at this point, and a lot of information

10   that we're going to need to seek on merits is also going to

11   be class discovery.

12             And my position -- or my experience has certainly

13   been that, you know, trying to bifurcate, particularly in a

14   Title VII case, we often just end up in a situation where

15   we're having a lot of squabbles about whether, you know,

16   discovery that we on the plaintiffs' side are seeking is

17   properly considered merits discovery or class discovery and,

18   you know, that just ends up requiring Court intervention more

19   than necessary.

20             You know, I think that there is, you know, a lot of

21   discovery that we can take relating to classified issues and

22   that we're going to need to support any class cert motion,

23   including as to numerosity, the number of class members, you

24   know, potentially  data about those class members'

25   experiences, but I don't expect it to be, you know,

1  particularly burdensome or particularly beyond the scope of

2  discovery that we would need for the merits anyway.

3       So, you know, that's why we sort of oppose that

4  this type of bifurcation.  I think that we should just move

5  forward with a period of fact discovery followed by a period

6  of expert discovery and then motions.

7       THE COURT:  So when you guys put down your

8  discovery limits on the plaintiffs' proposal, you meant both

9  combined, fact and merit -- I mean, the merits and class?

10      MS. TURNER:  Yeah.  I mean, we just, you know, put

11 in a proposal for fact discovery that would encompass, you

12 know, the merits of the claims and, you know, anything that

13 we would need to support a class cert motion --

14      THE COURT:  Okay.

15      MS. TURNER:  -- and then a period of expert

16 discovery.

17      THE COURT:  Ms. Kitson, are you going to try and

18 attach matters outside of the pleadings on the motion to

19 dismiss or rely solely on the pleadings?

20      MS. KITSON:  Solely on the pleadings, Your Honor.

21      THE COURT:  Okay.  Well, I mean, the problem is it

22 could be a year before you have a decision on the motion to

23 dismiss.  You understand that, right?

24      MS. KITSON:  Yes, Your Honor.  Although I would

25 hope that it would be referred to you, but we don't know.

1          THE COURT:  But if it's referred to me, then it's

2     going to be a year and a half --

3          MS. KITSON:  Ah.

4          THE COURT:  -- because I'll get a decision out

5     pretty quick, but it -- but whatever time it sits with me is

6     going to be added to the time that it sits with the district

7     judge.  Make sense?

8          I mean, inevitably, referring it adds time, because

9     everybody gets a full round of briefing again and basically

10    it's approached as a brand new motion.  Yeah, with a

11    recommendation, but you know depending on the law clerk it

12    goes to, it could be -- you know, a very long process.  So

13    just warning you about that, with a case that's already a

14    year old, it's just a potential problem.

15         That -- I mean, I applaud you for trying to resolve

16    the case.  Obviously, I was in first class on those

17    proceedings and I think you ought to move forward with them.

18    I would say that the probability of a stay is smaller because

19    of that process.  I don't want to penalize anybody for that,

20    but it is a year-old case and I can't -- I don't think it's a

21    good idea to have a two-year old case that's just getting

22    into discovery, which would be the possibility, if any part

23    of the motion to dismiss was denied.

24         So do you see the problem, Ms. Kitson?  I mean, in

25    a perfect world, yeah, that might happen, but I predict that

18

1    it probably won't here.  Does that make sense?

2            MS. KITSON:  I do see the problem, Your Honor.  Of

3    course, we are still going to move and address the String

4    Cheese factors, of course, but I do see what you're saying.

5            THE COURT:  All right.  So you all have had the

6    case for a long time.  I mean, how much time would you need,

7    that's -- hypothetically, if discovery goes forward, to do

8    your Rule 26(a)(1) disclosures?  I mean you've worked up the

9    case significantly.  So can you do that in two weeks?

10           MS. JONAT:  That's certainly okay for the

11   plaintiffs, Your Honor.

12           THE COURT:  Okay.

13           MS. KITSON:  That would be fine for us as well,

14   Your Honor, on the defense side.

15           THE COURT:  Thank you.  If -- Ms. Kitson, if it was

16   combined merits and class discovery, plaintiffs are only

17   seeking 25 requests for production, 25 requests for

18   admissions.  I mean, I hope you would want -- you would think

19   that's a gift.

20           MS. KITSON:  Your Honor, our primary concern is

21   just having the class certification deadline as soon as

22   possible, because I think Your Honor's point about -- there's

23   two concerns:  Number one, the class certification motion

24   deadline and, number two, the scope of discovery that they

25   may be seeking with respect to the class in terms of, you

19

1   know, this broader scope of all pregnant women at any time

2   ever working for Frontier.

3          So those are my two primary concerns, and I think

4   that, you know, if -- and depending on how broadly they frame

5   these 25 requests, we could run into that problem, if that

6   makes sense.

7          THE COURT:  Right.  So in a sense --

8          MS. KITSON:  And I'll just note, Your Honor --

9   sorry, go ahead.

10         THE COURT:  No.  I mean, in the sense you're saying

11  that you would need a lot more discovery if it's that big of

12  a class?

13         MS. KITSON:  Right, unfortunately.

14         MS. TURNER:  Your Honor, this is Ms. Turner.  You

15  know, the -- I would just note that the fact discovery that

16  we've proposed is quite quick, in my opinion, for a class

17  case.  You know, we are proposing a fact discovery cutoff in

18  June, and so to the extent that this is a concern about, you

19  know, class cert getting teed off quickly, I mean, obviously

20  we have experts after that, but, you know, still for a class

21  case, I do -- we do feel as though this is certainly a, you

22  know, rapid discovery period and one that responds to the

23  concerns that Ms. Kitson has raised about getting the class

24  cert teed up sooner rather than later.

25         THE COURT:  Well, so --

1          MS. KITSON:  But you know --

2          THE COURT:  What is the scope of the class that you

3    were looking at?

4          MS. KITSON:  Well, I think -- I mean, it depends,

5    to some extent, you know, if Frontier files a motion to

6    dismiss and seeks to strike something -- you know, some

7    portions of the case, I mean, I think, you know, it -- we

8    haven't seen the papers.  If it was possible that, you know,

9    we may conclude that they're correct, but, you know,

10   obviously we're seeking discovery on a relevant -- you know,

11   a larger class than Ms. Kitson would like to see.  But again,

12   I don't think that it's going to significantly expand the

13   scope of discovery, except potentially, you know, as to

14   damages for the individual class members and the data that we

15   would need produced for that.

16         THE COURT:  I think you're wise beyond your years,

17   Ms. Turner.

18         MS. TURNER:  I guess that's a compliment.

19         THE COURT:  No, you don't have to guess.  Okay.  So

20   I suppose I'll -- so Ms. Kitson, if merits and class are

21   combined, do you want 50 requests for production and 50

22   requests for admissions?

23         MS. KITSON:  That could work, Your Honor.  I do

24   want to propose one thought that I did have in looking at the

25   case law.  You, Your Honor, had a case back in 2016 that you

1    bifurcated.  In phase one discovery, you had allowed

2    discovery about the plaintiffs' individual claims and then

3    Rule 23(a) class cert discovery.

4            You left off the table what you called phase two

5    discovery, which was experts and facts discovery about the

6    claims of the absent class members.

7            I like that approach.  I think that does make sense

8    here, if that's something that Your Honor would consider.

9            THE COURT:  What's the case -- what was the case

10   number?

11           MS. KITSON:  Obviously subject to our -- what's

12   that?

13           THE COURT:  What's the case number?

14           MS. KITSON:  It's Rivera vs. Exeter Financial

15   Corporation and that's 2016 US District Lexis 11505.

16           THE COURT:  Right, but can you give me the case

17   number, the civil case number for the District of Colorado?

18           MS. KITSON:  Oh, yeah, I'm sorry.  It's

19   15-cv-01057.

20           MS. JONAT:  And, Judge, if I could just chime in?

21   I mean, I -- you know, I haven't looked at this case, but

22   it's certainly -- respectfully, I -- that's somewhat

23   concerning to me because, you know, we're in a position of

24   needing to show, under Supreme Court precedent, common issues

25   that can be resolved as to the class, you know, up or down in

1    one stroke, and not being able to get discovery about how the

2    policies at issue in this case affect individual class

3    members, it -- you know, it has -- it potentially makes that

4    a very difficult showing for us to make.

5            THE COURT:  Well, so -- but I mean, the policies

6    are what they are or what they were or if they changed what

7    they were over time.  Application of them to your clients is

8    within your control by just talking to your clients and

9    getting their information, isn't it?

10           MS. JONAT:  As to our clients, we can find out some

11   of that information, not as to the absent class members.

12   And, you know, particularly when we have disparate impact

13   claims, as we do here, we need to be able, you know, to show

14   our experts' data as to the class as a whole and have them

15   analyze whether or not these policies disparately impacted

16   the -- you know, the proposed class, and so that is -- you

17   know, I don't think that we can avoid all discovery as to

18   absent class members, because that's going to prevent us from

19   making the showing that we need under Rule 23.

20           THE COURT:  Okay.  This is going to be far more

21   involved than I am prepared to do right now, because I've

22   also got a stack of things that came after you starting at

23   10:15.  So we're going to continue this.

24           Do you have your calendars?

25           MS. JONAT:  Yes.

1          MS. KITSON:  Yes, Your Honor.

2          THE COURT:  So could you get back together -- well,

3    you don't even need your calendars.  Could you get back

4    together, say, around 11:30 Denver time?

5          MS. KITSON:  That works for the defense, Your

6    Honor.

7          MS. JONAT:  That works for plaintiff, Your Honor.

8          THE COURT:  All right.  Why don't you -- it is such

9    a bummer doing this stuff by telephone.  I can't even

10   describe to you how hard it is.

11         Since it's a Thursday, do we have the opportunity

12   for video?  Will you check?

13         MR. THOMPSON:  Let me check.

14         THE COURT:  We only have four video links in the

15   whole courthouse.  If we can get that, we'll e-mail you out

16   that link, okay?

17         MS. JONAT:  Yes, Your Honor.

18         MS. KITSON:  That's fine.

19         THE COURT:  But I'd rather do it by video.  So look

20   at your e-mails and let's plan on being back together around

21   11:30.  Okay?

22         MS. KITSON:  Yes.  Thanks, Your Honor.

23         THE COURT:  All right, thank you.  Take care.

24         MS. KITSON:  Thanks, Your Honor.

25         MS. JONAT:  Thank you, Your Honor.

1          (Recess was taken.)

2          THE COURT:  Case Number 19-cv-03469, Hodgkins vs.

3    Frontier back on the record.

4          So go over that specific order of discovery, Ms.

5    Kitson, that you suggested that I did in another case.

6          MS. KITSON:  Yes, Your Honor.  It would be a phase

7    one discovery period permitting discovery about the four

8    individual (inaudible - audio cut out) claims and any class

9    certification discovery.  That would be phase one.

10          THE COURT:  Wait, so you said the core individual

11   defendants as already named?

12          MS. KITSON:  The four individual defendants, yes --

13   or sorry, individual plaintiffs.

14          THE COURT:  Plaintiffs.  Is that ten right now?

15   How many -- or four?  How many --

16          MS. KITSON:  It's four, Your Honor.

17          THE COURT:  Okay.  What was the next step?

18          MS. KITSON:  And then phase two discovery would be

19   deferred and that would be expert and fact discovery about

20   the claims of the absent class members.

21          THE COURT:  So -- and with, I guess, what we're

22   going to call merits discovery, I don't know exactly what

23   that means in this context, but policies and procedures of

24   Frontier, how it applied any disability policy to any other

25   types of employees, dependability points, where does that fit

1    in?

2            MS. KITSON:  Your Honor, I think that that would be

3    in play for the four individual plaintiffs.  So which

4    policies applied to them, how those policies were applied to

5    them.  I think it's a big compromise position because they

6    would be allowed to proceed with merits discovery as to their

7    individual claims and that strikes the balance of what Your

8    Honor was discussing before, which is the fact that the case

9    has been pending and, you know, the four of them would like

10   to proceed with discovery on their individual claims.

11           THE COURT:  So really, the only thing that you

12   would -- that would be saved for later would be absent class

13   members and experts?

14           MS. KITSON:  Correct, Your Honor.

15           THE COURT:  All right, who's going to speak for the

16   plaintiffs?

17           MS. TURNER:  I can address this, Your Honor.  This

18   is Ms. Turner.

19           THE COURT:  Go ahead.

20           MS. TURNER:  I mean, I think that, you know, the

21   concern that we have, Your Honor, is that if we're not able

22   to get discovery on, you know, whether or not these policies

23   applied to absent class members, it's going to be very

24   challenging for us to meet the commonality requirement of

25   Rule 23, as well as demonstrate that common questions

26

1    predominate over individual ones.

2          To the extent that Frontier is concerned about the

3    individual damages calculations, I think, you know, we would

4    be okay with not receiving individual data about particular

5    class members until some later stage, but we do need to be

6    able to show that there is some common method by which

7    damages can be calculated, and so, you know, having discovery

8    only relate to the policies that were applied to the named

9    plaintiffs and not to the individual class members or the

10   absent class members is going to hamstring us on the Rule 23

11   requirements.

12         THE COURT:  Ms. Kitson, are you going to rely on

13   the lack of commonality in your motion to dismiss?

14         MS. KITSON:  Definitely, but -- yes, definitely

15   and, you know, because we will be addressing each individual

16   woman's circumstances and whether they state a claim; but

17   Your Honor, as to Ms. Turner's point, what we are proposing

18   is that Rule 23 discovery would be allowed to proceed.

19         So if anything that they would be asking related to

20   Rule 23's requirements theoretically would be part of a

21   discovery that they would propound.

22         THE COURT:  Okay.  Yeah --

23         MS. TURNER:  This is not -- it's not clear to me

24   what would be left then for the merits phase.  I mean, my

25   concern is that we're going to end up having a lot of

27

1   disputes about whether something is properly, you know --

2            THE COURT:  No, no, and Ms. --

3            MS. TURNER:  -- part of the class cert --

4            THE COURT:  Yeah, hold on.  You might not have been

5   here.  We're not segregating merits from class.  We're

6   segregating experts and the scope of the class, the absent

7   class members, from the merits and the discovery going to the

8   four core individual plaintiffs.

9            So you can get discovery on the dependability

10  policy and how it was applied, you can get discovery on

11  Frontier's accommodation of other persons.  So the -- it just

12  -- it would save, to me, significant time and effort in the

13  -- the absent class members and, of course, experts is always

14  one of the most expensive parts of a case, but in the

15  meantime, defendants get to test whether -- whether and what

16  the scope of the class would be.

17           So -- or even if there should be a case at all, I

18  guess, because I think Ms. Kitson implied, if not outright

19  stated, that the motion to dismiss will be for all claims,

20  all plaintiffs, right?  Is that what you said, Ms. Kitson?

21           MS. KITSON:  Correct, Your Honor.

22           THE COURT:  Okay.  So what do you think, Ms.

23  Turner?

24           MS. TURNER:  Well, I guess I'm -- and so I'm -- and

25  I apologize if I was late.  I thought we were starting at

28

1    11:30.

2            I am still unclear, then, about in terms of the

3    absent class members, what discovery are we holding off on as

4    to them?

5            THE COURT:  Ms. Kitson?

6            MS. KITSON:  Merits discovery as to their

7    individual claims, what they would be claiming in terms of

8    damages.  That would be one component of it.  You know, fact

9    issues about, you know, who they spoke with, what was

10   promised to them individually.  Anything having to do with

11   their individual facts and circumstances baring on their

12   claims as opposed to the Rule 30 -- Rule 23 questions.

13           MS. JONAT:  Right.  Well, I don't think that we had

14   any -- sorry, did it -- then if my audio just cut out.  I

15   don't think that we have any issue bifurcating, you know, as

16   to the individual damages of the class members, and I think

17   that if we're able to seek discovery as to the policies that

18   were applied to absent class members, you know, that

19   obviously addresses a lot of our concerns.

20           You know, I'm just concerned, I think, frankly,

21   that oftentimes in opposition to a class cert motion, a

22   defendant will argue about the individual facts and

23   circumstances of the various members of the class and, of

24   course, if we haven't been able to take discovery as to that,

25   we're not going to be in a position to respond to those types

1    of arguments.

2              THE COURT:  Well, but Ms. Kitson represented she's

3    going to rely solely on the four corners of the pleading.

4              MS. TURNER:  In her motion to dismiss, not in her

5    opposition to our class cert motion.

6              THE COURT:  Right.  Well, but then it's -- you

7    always have the option of pointing out specific discovery

8    that you've not had access to, which prevents you from

9    effectively responding to a motion for class certification,

10   just like you would in a 56(d) motion for summary judgment

11   where we take a timeout and give you the discovery that you

12   need in order to file a response.

13             I'm not going to force you -- to the extent I have

14   the authority, I'm not going to force you to respond to a

15   motion -- to an opposition to class certification if you

16   don't have the discovery you need.

17             Does that make sense?

18             MS. TURNER:  Yeah, I think that makes sense to me,

19   Your Honor.  I mean, obviously it will delay the proceedings

20   somewhat.  You know, and again I know, in my experience, it's

21   always helpful to sort of have all of that discovery all on

22   the table when we're briefing class cert so that the Court

23   can decide whether or not individual issues predominate, but

24   if the Court's preference is for us to take a timeout at --

25   you know, halfway through the class cert briefing, I guess

1    that's something that -- I haven't done it that way before,

2    but it -- I'm -- again, I mean, our preference, Your Honor,

3    is to have the -- is to just have one period of discovery

4    focused on class certification and merits and, again, we're

5    fine with leaving the individual class issues and damages

6    issues to a later time, but other than that, I think, you

7    know, our hope would be that -- well, we could just do all of

8    the discovery together --

9             THE COURT:  And also --

10             MS. TURNER:  -- other than experts.

11             THE COURT:  Also leaving -- okay, leaving experts

12    as well.

13             MS. TURNER:  I mean, I think that experts don't

14    need to be done.  Our proposal was that we have fact

15    discovery followed by a period of expert discovery, followed

16    by class cert motions, and then after any resolution of class

17    cert motions to the extent, you know, any party wishes to

18    move for summary judgment, that would happen then as well.

19             THE COURT:  Okay.  What -- when are we proposing to

20    move for certification?

21             MS. TURNER:  I think, Your Honor, it was either 30

22    or 60 days after the close of expert discovery and let me

23    pull it up.

24             MS. JONAT:  So we had proposed on October 13, 2021

25    for our opening briefs and class cert.

1           MS. TURNER:  Which is -- I think that is -- which

2    is -- that's about a month after the -- our proposed expert

3    discovery cutoff.

4           MS. KITSON:  Okay.  And we had proposed July 9,

5    2021, Your Honor.

6           THE COURT:  And, I guess, what's the plaintiffs'

7    problem with an earlier date?

8           MS. JONAT:  I just think, Your Honor, I mean, the

9    earlier date would require us to compress all of the merits

10   and class discovery that -- sorry, all of the merits and

11   expert discovery into a much shorter time frame.  I mean,

12   we've proposed basically, you know, a seven-month -- yeah, a

13   seven-month fact discovery period followed by two months of

14   expert discovery.  And, you know, for a class Title VII case,

15   that seems to us like a very reasonable timeframe and making

16   it shorter than that just -- it just seems unlikely, even if

17   we, you know, were to serve our initial requests tomorrow, we

18   wouldn't have responses to those until December and, you

19   know, you need to produce data, you need to have experts look

20   at your data, all of that.

21          Just -- it just seems like too compressed a time

22   frame.

23          THE COURT:  Now, what do you think the difference

24   is between yours and Ms. Kitson's proposal then?

25          MS. JONAT:  Well, Ms. Kitson -- I mean, Ms. Kitson

1   has made several proposals, right?  I mean, for one, she's

2   proposed that everything be stayed.

3           THE COURT:  No, no, no.  That's not the proposal

4   we're talking about though.

5           MS. JONAT:  Okay.

6           THE COURT:  The staged discovery.

7           MS. JONAT:  So I think that the difference is that

8   there is -- there appears to me to be some discovery other

9   than that as to the individual damages of particular class

10  members that Ms. Kitson believes should be -- that we should

11  refrain from doing until a later time and, frankly, it's not

12  totally clear to me what that discovery would be.

13          I guess, you know, the individual circumstances of

14  particular class members and what the requests were that they

15  made and how they were treated I guess is what she's

16  referring to.  And it just seems to me that if we're going to

17  have an argument about those types of individual

18  circumstances, we want to have that argument at the class

19  certification stage and we may as well have the complete

20  universe of it before us before we move for class cert.

21          You know, frankly, Your Honor, it's possible that

22  if it turns out that, you know, everything is so

23  individualized that, you know, we don't think we can proceed

24  at -- on a class basis, we might -- shouldn't we have that

25  discovery now as opposed to waiting, you know, eight months

1    and a class cert motion?

2          THE COURT:  Well, I don't think that you need six

3    or eight months of discovery to make that determination.  I

4    think you guys could figure that out just by doing some

5    investigation on your own and coming together and seeing it

6    -- you know, does it really make sense to have this class.

7    But Ms. Kitson, under your proposal, how long would you

8    propose this phase one to last?

9          MS. KITSON:  My proposal would be eight months,

10   Your Honor.  Basically that July 2021 time period.

11         THE COURT:  Do you think eight months is necessary?

12         MS. KITSON:  I don't.  I would rather move that up,

13   but I -- as a compromise, I'd be willing to agree to that.

14         THE COURT:  Well, so do you think you could -- do

15   you think you could accomplish it in five or six months?

16         MS. KITSON:  I think we could, because, I mean, if

17   we're talking about four individual single plaintiffs'

18   claims, that's about how long you would normally have for

19   discovery, and then the Rule 23 class certification

20   discovery, I don't think, would add that much to it if that

21   makes sense, since it's limited to kind of those Rule 23

22   issues.

23         MS. JONAT:  I guess I'm -- I continue to be unclear

24   on what limiting to the Rule 23 issues means, because the

25   Rule 23 issues overlaps significantly with the merits, and

1    so -- you know, again, I'm -- my only concern is that, you

2    know, there are often many disputes between the parties as to

3    the scope of discovery, as to whether discovery, you know, is

4    appropriate.  If we're going to have an incredibly

5    cooperative period of discovery, then a shorter time period

6    is doable, but I've never had an incredibly cooperative

7    period of discovery.

8              THE COURT:  Okay.  Well, I order you in this case

9    to have an incredibly cooperative period of discovery.  How

10   about that?

11             MS. JONAT:  It has never been my fault that we have

12   not been cooperative, Your Honor.

13             THE COURT:  Okay.  Let's shoot -- let's see if you

14   can construct a schedule along the lines that Ms. Kitson

15   proposes to end April 30.

16             I will check in with you in the middle of that and

17   potentially receive further argument about why or why not

18   it's working or not working.

19             MS. JONAT:  And that -- would that include expert

20   discovery, Your Honor?

21             THE COURT:  No, not yet.  Not yet for experts.  I

22   mean, you don't even --

23             MS. JONAT:  Okay.

24             THE COURT:  -- propose experts until --

25             MS. JONAT:  I proposed two months of expert

1    discovery after the close of fact discovery, Your Honor.

2          THE COURT:  Right, but you don't even propose

3    designating an expert until July.  I'm talking about a

4    discovery period here ending April 30 with me checking in

5    with you in February.

6          So I don't think I'm doing anything inconsistent

7    with how fast you want the case to move along.

8          MS. JONAT:  Okay.  Well, we'll definitely look

9    forward to having a very cooperative discovery process then.

10         THE COURT:  Count on it, right?  How about Thursday

11   the 25th of February?

12         MS. KITSON:  That works for defendant, Your Honor.

13         THE COURT:  Okay.

14         MS. JONAT:  Actually, Your Honor, that week is bad

15   for me.  I -- well, wait, let me check.

16         No, I'm sorry.  Thursday the 25th should work, Your

17   Honor.

18         THE COURT:  Okay.  Let's do that at 1:00 and give

19   me a good two hours setting for that.  Well, you never know.

20         MS. JONAT:  But we're not going to have any

21   disputes, Your Honor.

22         THE COURT:  Well, then we could -- do you guys know

23   any, like, electronic games we could play by video where we

24   could just have some fun for once?

25         MS. KITSON:  We could convert it into a settlement

36

1    conference, a continued settlement conference.

2              THE COURT:  That needs to be going on any time.  I

3    mean, I'm available for that all the time.

4              MS. JONAT:  Your Honor, I mean, speaking of that,

5    you know, not to get into, you know, the details of the

6    discussions, but we were slightly surprised by Ms. Kitson's

7    characterization of the state of the negotiations.

8              THE COURT:  Hold on.

9              MS. JONAT:  You know, our --

10             THE COURT:  Do you want to go off the record first?

11             MS. JONAT:  That's fine.

12             THE COURT:  All right.  So can you give me an order

13   by Monday, please?  A scheduling order reflecting what --

14             MS. JONAT:  Yes, Your Honor.

15             THE COURT:  -- we're doing?  Okay, good.

16             (Whereupon the above proceedings concluded at 12:08

17   p.m.)

18

19

20

21

22

23

24

25

37

1                TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    April 23, 2021

8    Signature of Transcriber              Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25