## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| Melissa Hodgkins, et al., | Case No. 1:19-cv-03469-RM-MEH |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MOTION TO COMPEL COMPARATOR DATA** |
| Frontier Airlines, Inc. | |
| Defendant. | |

Plaintiffs respectfully move this Court pursuant to Fed. R. Civ. P. 33, 34, and 37 for an order compelling Defendant Frontier Airlines, Inc. ("Frontier") to produce comparator data relevant to their civil rights claims.

### INTRODUCTION

Plaintiffs, four long-time flight attendants at Frontier, allege on behalf of themselves and a putative class of other flight attendants similarly situated that they were disciplined for pregnancy-related absences, forced onto unpaid leave during their pregnancies, prohibited from using breaks to pump breast milk during flight once they returned to work, and denied accommodations that would have enabled them to continue working while pregnant or breastfeeding, causing them physical, economic, and emotional harm. *See* Complaint, ECF No. 1 ("Compl.") ¶¶ 2–3. Plaintiffs assert that Frontier's policies and practices related to pregnancy and breastfeeding are discriminatory both intentionally and in effect,[1] and violate the Family and

---

[1] Plaintiffs state claims regarding the disparate treatment of Frontier's pregnant and breastfeeding flight attendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* ("Title VII") and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. Ann. § 24-34-402. Compl. ¶¶ 164–71 (Claim 1); 178–89 (Claim 3); 196–204 (Claim 5); 241–52 (Claim 10); 270–80 (Claim 13); 287–95 (Claim 15). Plaintiffs also state claims regarding the disparate impact of Frontier's policies regarding pregnancy and breastfeeding under Title VII and CADA. Compl. ¶¶ 172–77 (Claim 2); 190–95 (Claim 4); 205–10 (Claim 6); 253–59 (Claim 11); 281–86 (Claim 14); 296–301 (Claim 16).

Medical Leave Act ("FMLA") and provisions of Colorado law affirmatively requiring employers to make reasonable accommodations for their pregnant and breastfeeding employees.[2]

The Tenth Circuit has instructed that "discovery in discrimination cases should not be narrowly circumscribed." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Broad discovery is particularly appropriate in proposed class actions like this one to fairly give Plaintiffs the opportunity to meet the requirements of Fed. R. Civ. P. 23. *See, e.g.*, *Kennicott v. Sandia Corp.*, No. CV 17-188, 2018 WL 2206880, at *2 (D.N.M. May 14, 2018) ("The scope of discovery in a Title VII employment discrimination class action case is even broader, in part because the requirements of Rule 23 constitute a high standard for the plaintiffs to overcome to have their class certified."). Yet Frontier seeks to limit discovery to only a narrow and insufficient slice of the data requested by Plaintiffs: other flight attendants who sought accommodations (for example, leaves of absence) for reasons related to their own physical or medical limitations, and refuses to provide data related to promotions altogether. Frontier's blinkered view of its discovery obligations necessitates this motion.

The information sought is plainly relevant to each of the claims and defenses in play. For purposes of their disparate treatment claims, as well as their claims that do not hinge upon requests for accommodations, Plaintiffs seek and are entitled to data from Frontier regarding how its treatment of pregnant and breastfeeding flight attendants compares to its treatment of all others similar in their ability or inability to work, regardless of the reason. With respect to Plaintiffs' disparate impact claims, Plaintiffs seek and are entitled to data from Frontier regarding

---

[2] *See* FMLA, 5 U.S.C. §§ 6381 *et seq.*; Colorado Workplace Accommodations for Nursing Mothers Act ("WANMA"), Colo. Rev. Stat. § 8-13.5-104; Pregnant Workers Fairness Act ("PWFA"), Colo. Rev. Stat. Ann. § 24-34-402.3. Compl. ¶¶ 211–40 (Claims 7–9); 260–69 (Claim 12).

the adverse effects (including data regarding promotions) of its discriminatory policies and practices on pregnant and breastfeeding flight attendants as compared to all flight attendants outside of that protected group—not merely those who have sought accommodations. The Court should grant Plaintiffs' motion.

## BACKGROUND

Plaintiffs filed this action on December 10, 2019. ECF No. 1. The Court denied Defendant's motion to dismiss on July 14, 2021. ECF No. 87. On December 16, 2020, Plaintiffs served their initial sets of interrogatories and document requests on Frontier, Exs. A and B, and served additional interrogatories and document requests on August 2, 2021, Exs. C and D.[3] Among other items, Plaintiffs requested that Frontier provide information for all its flight attendants regarding pay, separation/termination, promotions, discipline, and accommodations.[4] Frontier objected to Plaintiffs' interrogatories and requests, in part because of their alleged overbreadth and on grounds of relevance and burden. *See, e.g.*, Ex. E, Defendant's Responses and Objections to Plaintiffs' First Set of Interrogatories, at 25–26.

Despite multiple meet-and-confers and two discovery conferences, on May 3 and June 21, 2021, the parties have been unable to resolve their differences regarding the scope of comparator data. Specifically, Plaintiffs understand Frontier's position to be that, regardless of burden, it will not agree to produce *any* of the documents and data sought beyond the limited comparator universe it unilaterally defined as relevant to Plaintiffs' claims. Frontier further objects to Plaintiffs' requests related to promotion, asserting that such information is not relevant

---

[3] All exhibits are attached to the Declaration of Karen Sebaski, filed herewith.
[4] At issue are Plaintiffs' Interrogatories Nos. 6, 8, 14, 15, 18, 20, 22, and 23, as well as Plaintiffs' Document Requests Nos. 5, 8, 14, 15, 22, and 24.

because this is not a "failure to promote" case. Accordingly, at a September 16, 2021 discovery conference, the parties sought the opportunity to brief the contested issues, and the Court granted Plaintiffs leave to file the instant motion, which Frontier opposes. ECF No. 95; Declaration of Karen Sebaski ¶ 10.

## ARGUMENT

### I.   Employment Discrimination Plaintiffs Are Entitled to Broad Discovery

Under the broad relevancy standard of Rule 26(b), a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). The Tenth Circuit has emphasized that this language "should not be narrowly circumscribed" in a discrimination case. *Gomez*, 50 F.3d at 1520.[5] Courts compel defendants to produce broad comparator information in discovery, in part because neither plaintiffs nor the court are familiar with the defendant's records and thus the universe of potential comparators. *See, e.g.*, *Davis v. Infinity Ins. Co.*, No. 2:15-CV- 01111, 2019 WL 12424674, at *4 (N.D. Ala. Apr. 30, 2019) (granting motion to compel personnel files as "relevant to [plaintiff's] disparate impact claim to the extent it would potentially support the statistical disparity [she] is required to show"); *Deluca v. Sirius Xm Radio*, Inc., No. 12-CV-8239, 2016 WL 3034332, at *2 (S.D.N.Y. May 27, 2016) (granting plaintiff's motion to compel information on "potential comparators"); *Lattimore v. Wild Flavors, Inc.*, No. CV 09-23-WOB, 2011 WL 13318962, at *2 (E.D. Ky. Apr. 7, 2011) (granting motion in part because "[a]t this stage of the litigation, it cannot be known with certainty whether any of the fifty-nine employees

---

[5] Recent amendments to Rule 26 have neither altered the broad scope of discovery in employment discrimination cases nor abrogated past decisions regarding the appropriate scope of discovery in civil rights actions. *See Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 472 (D.N.M. 2018) (recognizing that "the post-2015 rule 26(b) standard for the scope of discovery . . . in employment discrimination cases is still broad").

in question could ultimately prove to be a proper comparator").

Although the Court will ultimately have to determine the types of data, including comparator data, that may be considered, limiting Plaintiffs' access to the data in question during the discovery phase would be premature. *See Hills v. AT&T Mobility Servs., LLC*, No. 3:17-CV-556, 2021 WL 3088629, at *5 (N.D. Ind. July 22, 2021) (noting in a pregnancy discrimination suit that the determination of which individuals can serve as valid comparators is "a fact-intensive inquiry into whether a similarly situated person is comparable in all material respects and is reserved for the factfinder"). The question of relevance in discovery is distinct from the question of what is ultimately required to succeed on summary judgment. *Lindquist v. Arapahoe Cnty.*, No. 10-CV-02264, 2011 WL 3163095, at *2 n.1 (D. Colo. July 26, 2011). Allowing Frontier to unilaterally define the scope of the relevant comparator universe at this stage in the litigation would hamstring the Court from making an informed decision about the evidence and constrain Plaintiffs from obtaining information in Defendant's control that could be highly relevant. *See Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 429–30 (S.D.N.Y. 2014) (criticizing reliance on pregnancy discrimination summary judgment decisions at motion to dismiss stage); *see also Hills*, 2021 WL 3088629, at *7 (noting defendant "cannot unilaterally define the scope of discovery based upon its own theory of the case").

## II.   Plaintiffs in Putative Class Actions Are Entitled to Broad Discovery Necessary to Satisfy Class Certification Requirements

Furthermore, in proposed class actions such as this one, broad discovery is necessary for Plaintiffs to demonstrate satisfaction of the requirements of Fed. R. Civ. P. 23. *See Kennicott*, 2018 WL 2206880, at *4 (granting plaintiffs' motion to compel after finding that "[t]he disputed discovery is potentially relevant not just to the individual and class claims currently pled in the

Complaint but also to the extensive factual showing that Plaintiffs must someday make to convince the presiding judge to certify a class in this case under Rule 23"); *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1998) (stating that discovery "should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23").

Most pertinent here, Plaintiffs are entitled to broad discovery to meet the commonality requirement by showing "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For purposes of class certification in a discrimination case, Plaintiffs will need to show that class members "have suffered the same injury" to demonstrate commonality. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). Plaintiffs seek to certify two classes of Frontier flight attendants: a "pregnancy class," which consists of all current and former flight attendants who became pregnant at any point during the class period, and a "breastfeeding class," which consist of all current and former flight attendants who breastfed while employed by Frontier at any time during the class period. Compl. ¶ 144. Questions common to all members of the classes include whether pregnant or breastfeeding flight attendants have been disparately and disproportionally harmed in a common manner by Frontier's points-based attendance policy ("Dependability Policy"), the airline's forcing of pregnant flight attendants onto unpaid leave, its ban on pumping during flight, and its refusal to provide breastfeeding accommodations. Compl. ¶¶ 148–49. The information sought is tailored at demonstrating that Frontier's discriminatory practices had common effects *across the proposed classes* and that pregnant and breastfeeding flight attendants were harmed disproportionately *compared with employees outside of the protected groups as a whole*. For instance, if pregnant or breastfeeding flight attendants accrue

points at a disproportionately high rate, suffer discipline at a higher rate, are granted promotions at a lower rate, or are terminated or separate from Frontier at higher rates than those not affected by pregnancy or lactation, such data would support the contention that the proposed classes are harmed in a common manner. *See Zuniga v. Bernalillo Cty.*, No. CV 11-877 RHS-ACT, 2013 WL 12333609, at *6 (D.N.M. Jan. 10, 2013) (discovery on gender discrimination complaints by others is relevant to commonality as "the existence of a pattern of discrimination in a job category may well justify an inference that the practices complained of were motivated by improper factors"). The data sought is thus highly relevant to proving their class allegations.

III.    **For Plaintiffs' Disparate Treatment Claims, Frontier Must Provide Data for All Flight Attendants Similar in Their Ability or Inability to Work**

The data Plaintiffs seek is plainly relevant to their disparate treatment claims, specifically, to their ability to demonstrate "circumstances giving rise to an inference of discrimination," *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007), under the familiar *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). One means of making that required showing is by providing proof that other employees outside the protected group were treated more favorably.[6] *See id.* In the context of failure to accommodate claims, the Supreme Court has set forth a modified version of this test under which the plaintiff must show "[1] that she belongs to the protected class, [2] that she sought accommodation, [3] that the employer did not accommodate her, and [4] that the employer did accommodate others 'similar in their ability or inability to work.'" *See Young v. United Parcel*

_____

[6] To establish disparate treatment, a plaintiff must show the defendant's actions were motivated by discriminatory intent, either through "direct" or "indirect" methods of proof. *Cf. Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (observing that *McDonnell Douglas* framework applies when direct evidence is unavailable). Plaintiffs are pursuing both theories in this case, but the discovery disputes at issue mainly pertain to the indirect method of proof.

*Serv., Inc.*, 135 S. Ct. 1338, 1354 (2015).

At issue in this motion is the fourth prong, the individuals who are considered "similar in their ability or inability to work." *Id.* Frontier seeks to limit the discovery to those flight attendants "who had their own physical restrictions or limitations, of any kind, that prevented them from working without accommodation (including, but not limited to, leaves of absence)." Ex. F, Email from Danielle Kitson to Jayme Jonat, dated Aug. 30, 2021. Frontier's proposed limitation ignores both the facts and the law. Frontier's position ignores that Plaintiffs bring claims that do not hinge on requests for accommodations—*i.e.*, those related to Frontier's Dependability Policy and the ban on use of breaks for pumping. The comparator universe includes all flight attendants because all flight attendants are subject to the challenged policies. Plaintiffs must be able to compare Frontier's treatment of pregnant or breastfeeding flight attendants under those policies to other flight attendants who may never have sought accommodations (*e.g.*, those who were and were not disciplined for taking in-flight breaks and those who were and were not assigned points pursuant to the Dependability Policy). For Plaintiffs' disparate treatment claims that do relate to failure to accommodate pregnancy or breastfeeding, the comparator universe includes all flight attendants who sought or were granted accommodations, regardless of the reason—not just those flight attendants who requested accommodations for medical reasons.

### A. Plaintiffs' Claims Related to Frontier's Dependability Policy Require Data on All Flight Attendants

Plaintiffs allege that Frontier's Dependability Policy penalized pregnancy-related tardiness or absences while excusing the same behavior when the cause was unrelated to pregnancy, such as for military and other medical leaves, in violation of the FMLA, Title VII,

and CADA. Compl. ¶¶ 38–44. As a result of this policy, Plaintiffs allege it is nearly impossible

for a pregnant flight attendant to achieve a perfect attendance record and the benefits that attend

it, due to common pregnancy-related health issues and the need to obtain regular prenatal care—

absences that *should* qualify for FMLA leave and therefore be exempt under the Dependability

Policy. *Id.* ¶ 44. Instead, pregnant flight attendants under Frontier's current practice are more

likely to face disciplinary action, including termination, because of their accrual of pregnancy-

related points. *Id.* ¶¶ 43–44.

Thus, Plaintiffs seek information on "each flight attendant who was assigned or accrued

points during the Time Period" along with "all flight attendants who were granted a 'perfect

attendance' record pursuant to the Dependability Policy and/or the Collective Bargaining

Agreement in effect at the time for any year during the Time Period." Exs. A and C, Plaintiffs'

Interrogatories Nos. 15, 20–22. Under these requests, the requested information on all flight

attendants is relevant, as all flight attendants have either accrued points or they have not. For

example, data that reveals few pregnant women with perfect records but many non-pregnant

individuals with perfect records would tend to support Plaintiffs' claims that Frontier's policies

had disparate effects, as well as common effects across the class.[7]

Plaintiffs' Dependability Policy claims are not limited to flight attendants who sought

accommodations. First, Plaintiffs' claim that Frontier's application of the Dependability Policy

has interfered with their ability to exercise their FMLA rights does not relate to accommodations

at all. Compl. ¶¶ 211–20. Indeed, FMLA interference claims are entirely separate from *Young*'s

---

[7] Plaintiffs seek the same information to prove their disparate impact claims regarding the consequences of both the Dependability Policy and the in-flight pumping ban, as described in the previous section, so the same analysis applies to those claims.

"similar in their ability or inability to work" framework. *See Janczak v. Tulsa Winch, Inc.*, 621 F. App'x 528, 531 (10th Cir. 2015) ("Three elements are necessary to establish an FMLA interference claim: (1) that the employee was entitled to FMLA leave; (2) that some adverse action by the employer interfered with the employee's right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights.").

Even Plaintiffs' Title VII and CADA challenges to the Dependability Policy do not rely on comparisons with flight attendants who sought medical accommodations or, for that matter, any accommodations at all. In a similar case challenging AT&T's penalization of pregnancy-related absences under its points-based attendance policy, the court found that "non-pregnant workers at AT&T can arguably be similar to [the plaintiff] 'in their ability or inability to work' *simply by being absent*, by being unable to perform any work, regardless of whether their absence and inability to work was caused by a medical or non-medical reason." *Hills*, 2021 WL 3088629, at *5 (emphasis added). For example, if Frontier were to have excused absences under the Dependability Policy for reasons such as jury duty, bereavement, or caregiving for a family member, individuals who took such leaves of absence would be "similar in their ability or inability to work" even though they would not have sought *medical* accommodations to do so or have had any physical restrictions themselves. Moreover, flight attendants with perfect attendance records may well have never sought leave or any other form of accommodations.

## B. Plaintiffs' Claims Related to Pumping During Flight Are Not Tied to Medical Accommodations

Plaintiffs allege that in banning flight attendants from using breaks to pump, Frontier treated such flight attendants differently than those who used breaks for all other reasons, such as stretching one's legs to relieve cramping or using the restroom. Compl. ¶¶ 53–75. As a result,

Plaintiffs seek information related to relevant policies and disciplinary actions against all flight attendants who took breaks during flight for any reason. The information relevant to this claim is not limited to flight attendants who sought accommodations because the policy regarding use of breaks did not apply only to those who requested accommodations. Moreover, because many breaks taken during flight, like those taken to facilitate pumping, are situations in which employees may be temporarily unable to perform their duties, *all* flight attendants are potentially "similar in their . . . inability to work" during such breaks. *Young*, 135 S. Ct. at 1354; *Falk v. City of Glendale*, No. 12-CV-00925, 2012 WL 2390556, at *4 (D. Colo. June 25, 2012) ("If lactation is a natural consequence of pregnancy, then expressing milk is equivalent to any other involuntary bodily function."). Defendant's attempt to limit the allowable discovery to disciplinary actions against flight attendants *who sought medical accommodations* is thus divorced from the claims actually asserted, and Plaintiffs are entitled to all of the discipline-related information sought.

### C. For Disparate Treatment "Failure to Accommodate" Claims, the Inquiry Focuses on Comparators' Ability or Inability to Work, Regardless of the Reason

Plaintiffs argue that Frontier provided certain accommodations, such as temporary ground positions, to employees not affected by pregnancy while categorically denying those accommodations to pregnant and breastfeeding employees. Compl. ¶¶ 45–52. Accordingly, Plaintiffs seek information related to accommodations Frontier granted to other flight attendants similar in their ability to work. However, Frontier maintains that it will only provide accommodation information for flight attendants who sought accommodations for *medical* reasons, and not those who were unable to fly for other reasons—for example, because they were caring for a family member, or because they had been unable to complete required recurrent

training. This is contrary to the Supreme Court's direction in *Young*.

In *Young*, a plaintiff challenged her employer's policy of refusing to accommodate delivery drivers with pregnancy-related lifting restrictions while accommodating other, non-pregnant employees temporarily unable to work. *Young*, 135 S. Ct. at 1347. There, the Supreme Court considered comparators beyond those drivers who sought light duty for medical or disability reasons, including, for example, employees who lost their licenses for non-medical reasons, such as suspension for having a conviction for driving under the influence. *Id.* The reason for the accommodation was irrelevant. What mattered was that the comparator group had the same limitation: an inability to drive. *Id.* at 1355. Likewise, here, the key similarity between Plaintiffs and the comparator group is their inability to fly without an accommodation. *See Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1286 (11th Cir. 2020) ("[T]he comparator analysis under the PDA focuses on a single criterion—one's ability to do the job."); *Hills*, 2021 WL 3088629, at *4–6 (granting plaintiff's discovery request in a pregnancy discrimination matter for comparator data related to both medical and non-medical leave of other employees).

The information sought is also relevant to Frontier's defenses. Once the plaintiff has established a prima face case, the burden shifts to the employer to show a "legitimate, nondiscriminatory" reason for its actions, before returning to the plaintiff to show that the employer's offered reason is in fact "pretextual." *Young*, 135 S. Ct. at 1354. As held in *Young*, the availability of accommodations to others—regardless of the reason they were needed—is highly relevant to a showing of pretext. *See id.* at 1355 (questioning "why, when the employer accommodated so many, could it not accommodate pregnant women as well?").[8] At a minimum,

---

[8] The data sought are also relevant to Frontier's defenses in disparate impact. If an employer can show a legitimate,

therefore, Plaintiffs are entitled to the information as to all comparators who sought or were provided accommodations, no matter the reason.

**D. Plaintiffs' WANMA and PWFA Claims Also Require Discovery of Nonmedical Accommodations**

The analysis of accommodations Frontier provided to others is also relevant to Plaintiffs' WANMA and PWFA claims. *See* Compl. ¶¶ 221–40; 260–69. An employer's obligations under WANMA and PWFA do not depend on a comparison to others similar in their inability to work, but rather are an independent, affirmative obligation to provide accommodations so long as they are either "reasonable," under WANMA, or do not impose "an undue hardship," under PWFA. Colo. Rev. Stat. Ann. § 8-13.5-104; Colo. Rev. Stat. Ann. § 24-34-402.3(1)(a)(I). Evidence that an accommodation has been granted in the past is highly relevant to the inquiry as to whether the accommodation is reasonable or imposes a hardship. *See, e.g.*, Colo. Rev. Stat. Ann. § 24-34-402.3(4)(c)(II). And neither statute references that employees granted such accommodations be "similar in their ability or inability to work." There is therefore no principled basis on which to limit allowable discovery in the manner Defendant asks.

**IV. Plaintiffs' Requests for Certain Data for All Flight Attendants are Relevant to Their Disparate Impact Claims**

**A. The Data Plaintiffs Seek Would Enable Them to Show Adverse Effects of the Challenged Policies**

The Court should also find that the data sought is relevant to Plaintiffs' disparate impact claims and implicates their ability to make the showing required to prevail on those claims.

---

non-discriminatory reason for the challenged practice, a plaintiff can still prevail if they can show a less discriminatory alternative. *See* 42 U.S.C. §§ 2000e-2(k)(1)(A)(ii) & (k)(1)(C). In this case, provision of accommodations to others is relevant to the availability of less discriminatory alternatives.

A disparate impact claim involves the "consequences of employment practices," *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971), and requires plaintiffs to show that a particular employment practice caused "discrimination against a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 997 (1988). Plaintiffs identify several specific employment practices they allege have a disparate impact: (1) the practice of refusing to accommodate pregnancy when flight attendants are grounded; (2) the practice of ignoring or denying accommodation requests related to breastfeeding; (3) the ban on pumping during flight; and (4) the penalization of pregnancy-related absences under the Dependability Policy.

To prove the disparate impact of these practices, Plaintiffs seek data that would enable them to draw comparisons between the adverse effects of these policies on Plaintiffs and members of the putative classes (*i.e.*, flight attendants who have been pregnant or breastfed) versus other flight attendants outside those protected groups. Plaintiffs seek to prove, for example, that pregnant and breastfeeding flight attendants not only needed accommodations (including medical leave and breaks for pumping) at a greater rate than flight attendants who were not pregnant or breastfeeding, but also that as a consequence of being denied accommodations or of being prohibited from pumping during flight they suffered harms, including loss of income and other employment benefits. Compl. ¶¶ 175, 193, 209, 257, 284, 300. Such losses may include lower salaries or annual rates of pay, promotion at lower rates, or being discharged or separated from Frontier at higher rates than other flight attendants.

Moreover, although Title VII contains no express requirement that a plaintiff make a statistical showing of the discriminatory effects of a challenged policy, courts often require it. *See, e.g.*, *Watson*, 487 U.S. at 994 (plaintiffs in a disparate impact case must present statistical

evidence "sufficient to show that the practice in question has caused [harm to plaintiffs] . . . because of their membership in a protected group"); *Eggers v. Wells Fargo Bank, N.A.*, 899 F.3d 629, 635 (8th Cir. 2018) (affirming judgment for employer because plaintiff did not show "any statistical evidence of a disparate impact").[9] The comparator data Plaintiffs have sought—including both pay and promotion data—are necessary to make the kind of statistical showing that may ultimately be required.

## B. The Appropriate Comparator Universe for Disparate Impact Is Not "All Others Who Sought Accommodations," But All Other Flight Attendants

Frontier would limit the comparator data to flight attendants who requested accommodations on the assumption that only flight attendants who requested accommodations are similarly situated to Plaintiffs. As discussed above, not all of Plaintiffs' claims relate to requests for accommodations. Moreover, when a policy applies to an entire group of employees, the comparator universe for purposes of a pregnancy discrimination disparate impact claim properly consists of all those employees subject to the policy. *See, e.g.*, *Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 819 (D.C. Cir. 1981) (holding that a maximum length of disability leave potentially caused a disparate impact on women employees of childbearing age compared to all others subject to union contract); *U.S. E.E.O.C. v. Warshawsky & Co.*, 768 F. Supp. 647, 655 (N.D. Ill. 1991) (finding disparate impact on pregnant plaintiffs under policy that fired any first-year employee requiring long-term sick leave, based on a comparison of termination rates of

---

[9] Certainly, Plaintiffs allege and intend to prove that the challenged policies harm all or most pregnant and breastfeeding flight attendants and no flight attendants who are not pregnant or breastfeeding, and therefore have a discriminatory impact per se. *See, e.g.*, *Legg v. Ulster Cty.*, 832 Fed. App'x 727, 731, 732 (2d Cir. 2020) (no requirement to demonstrate "statistically significant impact" to make out a prima facie disparate impact case if plaintiff could show that all or most pregnant correction officers would need an accommodation); *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 813 (5th Cir. 1996). But Plaintiffs should have access to the data necessary to make, in the alternative, a statistical showing of some of the concrete effects of Frontier's discriminatory policies.

female first-year employees to all first-year employees). Similarly broad analyses are found in other Title VII contexts.[10]

Even if the Court does not ultimately define the comparator universe that broadly, determining the appropriate comparator population for a disparate impact pregnancy discrimination claim ultimately depends on the facts of the case as *developed in discovery*, just as it does for other species of Title VII claims. *See, e.g.*, *Ruddy v. Bluestream Pro. Serv., LLC*, 444 F. Supp. 3d 697, 709 (E.D. Va. 2020) (on summary judgment, courts consider "characteristics, positions, and responsibilities" when defining an appropriate comparator group for a pregnancy discrimination claim). It would therefore be premature to decide that question for purposes of discovery, just as it would be inappropriate to decide the question of the proper comparator universe on a motion to dismiss. *See, e.g.*, *Barrett*, 39 F. Supp. 3d at 451 (on a motion to dismiss, upholding disparate impact claim that requires comparing pregnant women to all others and explaining that defendants "will have the opportunity, after discovery," to refute prima facie case); *Roberts v. U.S. Postmaster Gen.*, 947 F. Supp. 282, 289 (E.D. Tex. 1996) (on a motion to dismiss, upholding disparate impact claim after looking to alleged disparity in discharge of mothers taking leave to care for children compared to all others).

Here, Plaintiffs' claims and the factual allegations that inform them support discovery of all flight attendants.

### C.  Discovery Related to Promotions and Hiring Is Relevant to Show Harms

Contrary to Frontier's argument, discovery related to flight attendants who "applied for a

---

[10] *See, e.g.*, *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977) (comparing racial composition of school's teaching staff and all qualified public school teachers in relevant labor market); *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 604 (1st Cir. 1995) (comparing composition of workers admitted to union versus entire Boston-area available labor force).

supervisory, management, or training position" is relevant to demonstrating a disparate impact of Frontier's challenged policies, as well as to establishing commonality for Rule 23(b) purposes. Ex. C, Interrogatory No. 23; Ex. D, Request for Production No. 24. For example, if flight attendants who had been pregnant or breastfed were hired or promoted into such positions at lower rates than those who were not, that would support Plaintiffs' disparate impact claims as well as their assertion that the challenged policies had a common impact across the class.

Furthermore, even beyond that direct link to Plaintiffs' claims, courts routinely grant broad discovery in discrimination cases, even where the information sought goes beyond the factual crux of the claims themselves. For example, in *Kennicott*, the court granted discovery related to "pregnancy discrimination, sexual harassment, hostile work environment, and retaliation" even though the plaintiffs alleged gender discrimination only in performance evaluations, pay, and promotions. 327 F.R.D. at 471–74. The court reasoned, "[a]lthough disputed discovery may not be directly tied to a claim or defense in the case, that discovery may still be relevant to issues that are likely to arise in the case. . . . Problems in one area may indicate that there are problems in other areas." *Id.*; *see also Sidari v. Orleans Cty.*, 2000 WL 33407343, at *4 (W.D.N.Y. Oct. 3, 2000) ("[C]ourts have recognized that . . . evidence of one type of discrimination may be relevant to a claim for another type of discrimination if there is a sufficient nexus between the two types."); *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 897–98 (9th Cir. 1994) (upholding district court's decision to allow testimony about sexual harassment in discriminatory discharge case "[b]ecause hostility against women underlies decisions to discharge or to refuse to hire women because of their gender, [so] evidence of sexual harassment often will be relevant to claims of gender-based employment discrimination."). Here, because the

information sought on promotion and hiring into management positions has a bearing on

Plaintiffs' allegations that they and other members of the putative class were subject to a pattern

of discriminatory treatment more broadly, the requests are proper.

**V.     Plaintiffs' Requests Are Proportionate and Not Unduly Burdensome**

Frontier is unable to demonstrate that producing the data Plaintiffs seek is

disproportionate or unduly burdensome. Proportionality is assessed with six factors: "[1] the

importance of the issues at stake in the case, [2] the amount in controversy, [3] the parties'

relative access to relevant information, [4] the parties' resources, [5] the importance of the

discovery in resolving the issues, and [6] whether the burden or expense of the proposed

discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). It is Frontier's burden to

establish with "specific information," *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D.

460, 465 (N.D. Tex. 2016), that the discovery sought is irrelevant or that "the burden or expense

of the proposed discovery outweighs its likely benefit." *Frappied v. Affinity Gaming Black

Hawk, LLC*, No. 17-CV-01294, 2018 WL 1899369, at *3 (D. Colo. Apr. 20, 2018).

All factors weigh in Plaintiffs' favor. First, Plaintiffs' antidiscrimination claims "seek[] to

vindicate vitally important personal and public values"—specifically the right to a workplace

free from pregnancy discrimination. *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322

F.R.D. 1, 7 (D.D.C. 2017). Particularly in the class context, courts have recognized that the

injunctive and class wide relief requested in connection with Plaintiffs' claims will benefit

nonparties to the litigation. *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306

(S.D.N.Y. 2012). Second, as the advisory committee notes to Rule 26(b)(1) recognize,

challenges to "employment practices . . . may have importance far beyond the monetary amount

involved." Third, Frontier has exclusive access to the information sought and "shielding" it from discovery would "handicap[] [Plaintiffs'] ability to marshal facts that support [their] claims." *Theidon v. Harvard Univ.*, 314 F.R.D. 333, 335 (D. Mass. 2016). Fourth, Frontier has the resources necessary to make the requested productions. Its publicly traded parent stated $550 million in total revenue in the last quarter.[11] Fifth, as discussed, accessing the requested data is vital for Plaintiffs to develop their statistical disparate impact analysis and establish the requisites for class certification, and for the Court to determine the appropriate comparator universe and resolve the issues presented.

Finally, with respect to burden and expense, Defendant has disclosed through the meet and confer process that, in the ordinary course of business, much of the data requested is kept by Frontier in a readily accessible database. *See* Declaration of Karen Sebaski ¶ 9. Given this recordkeeping, and Frontier's acknowledgment that it is required to produce the records sought for at least some flight attendants, there is no reason to believe that granting Plaintiffs' requests will result in a materially greater burden on or expense for Frontier. To the extent that Frontier can demonstrate that other specific requests (or components of those requests) pose an unduly heavy burden, Plaintiffs remain open to discussing reasonable ways to limit their scope, but Frontier has not to date made any such showing—which is its burden to do.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court issue an order compelling the production of the full scope of data sought for all Frontier flight attendants.

---

[11] *See* Frontier Group Holdings, Inc. Form 10-Q, period ending June 30, 2021, https://ir.flyfrontier.com/node/6971/html.

Dated: September 24, 2021

By: /s/ Karen Sebaski
Jayme Jonat
Karen Sebaski
HOLWELL SHUSTER & GOLDBERG LLP
IN COOPERATION WITH THE
AMERICAN CIVIL LIBERTIES UNION
425 Lexington Avenue, 14th Floor
New York, NY 10019
Phone: 646-837-5151
Fax: 646-837-5150
Email: jjonat@hsgllp.com
Email: ksebaski@hsgllp.com

Sara R. Neel
Mark Silverstein
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
Phone: 720-402-3107
Fax: 303-777-1773
Email: sneel@aclu-co.org
Email: msilverstein@aclu-co.org

Galen Sherwin
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-519-7819
Email: gsherwin@aclu.org

Juno Turner
TOWARDS JUSTICE
2840 Fairfax St., Suite 220
Denver, CO 80207
Phone: 720-441-2236
Email: juno@towardsjustice.org

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Melissa Hodgkins, et al.,

          Plaintiffs,

     v.                                   Case No. 1:19-cv-03469-RM-MEH

Frontier Airlines, Inc.

          Defendant.

**CERTIFICATE OF SERVICE**

     I hereby certify that on this 24th day of September, 2021, I caused a true and correct copy of the foregoing Plaintiffs' Motion to Compel Comparator Data to be served electronically on all counsel of record via the Court's ECF filing system.

                             /s/ Karen Sebaski
                             Karen Sebaski, Esq.