1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
2
     Case No. 19-cv-3469-RM-MEH
3    _____

4    MELISSA HODGKINS, et al.,

5         Plaintiffs,

6    vs.

7    FRONTIER AIRLINES, INC.,

8         Defendant.
     _____
9

10            Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 11:25 a.m., September 16,

13   2021, in the United States Courthouse, Denver, Colorado.

14   _____

15            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                         APPEARANCES

19            SARA NEEL, GALEN SHERWIN and JUNO TURNER, Attorneys

20   at Law, appearing for the Plaintiffs.

21            DANIELLE KITSON, Attorney at Law, appearing

22   for the Defendants.

23   _____

24                    DISCOVERY CONFERENCE

25
```

1             P R O C E E D I N G S

2             (Whereupon, the within electronically recorded

3    proceedings are herein transcribed, pursuant to order of

4    counsel.)

5             THE COURT:  So you guys have this motion pending

6    also in the other case?

7             MS. KITSON:  Yes.

8             MS. NEEL:  Yes, Your Honor.

9             THE COURT:  Okay.  Well, it's -- you know, it's not

10   great to have the same issue before two people in the same

11   courthouse in -- related to the same parties, or at least the

12   same lawyers.  So I've got to figure out what to do about

13   that.

14            MS. NEEL:  We agree, Your Honor.  There is also a

15   motion to consolidate pending.

16            THE COURT:  I know, I know.  It's eight months old.

17            MS. NEEL:  We're hoping September might bring some

18   movement on that.

19            THE COURT:  You're hoping what?

20            MS. NEEL:  September might bring some movement on

21   that.

22            THE COURT:  That's likely, because I've seen

23   communications from her even in the last week or two paying

24   attention to that issue, not in this case, but she's very

25   tuned in on that --

1          MS. NEEL:  Okay.

2          THE COURT:  -- so, yeah.  I just might engage in a

3     little discovery.  Well, I'll see what I can do on that while

4     we're talking.

5          MS. NEEL:  Your Honor, may I -- may I add something

6     as well?  The motion that -- it was filed eight months ago,

7     and said there was much conjecture on both sides.  It's to --

8          THE COURT:  Oh, it was fully briefed eight months

9     ago.  It was probably filed more than eight months ago.

10          MS. NEEL:  Right, so -- but there was much

11     conjecture on both sides about what we thought the issues

12     would be and how overlapping they would be, and it turns out

13     we were correct in our assumption that there would be many

14     overlapping issues in discovery disputes.  So --

15          THE COURT:  Are you speaking for her too or just

16     for yourself?  Is that the royal we or just got a mouse in

17     your pocket?

18          MS. NEEL:  This side of the table -- this side of

19     the courtroom.  We -- so I don't know what that might change

20     or impact.

21          THE COURT:  Yeah, I don't think, unless you filed a

22     supplement, that that's going to come to anybody's attention

23     because it's referred to Kato Crews.  So -- but I don't know

24     if she's in or not.  She's not responding.

25          Okay, what do we got?

```
1              MS. NEEL:  Do you want me to enter my appearance?

2              THE COURT:  Sure.

3              MS. NEEL:  That's fine.

4              THE COURT:  Let's have appearances.

5              MS. NEEL:  Sara Neel on behalf of the plaintiffs

6    the ACLU of Colorado, and we have two of my colleagues on the

7    video.

8              THE COURT:  Thank you.  You can go ahead and

9    identify them.

10             MS. NEEL:  Galen Sherwin and Juno Turner.

11             THE COURT:  Thank you.

12             MS. SHERWIN:  Good morning, Your Honor.

13             THE COURT:  Good morning, Galen.

14             MS. KITSON:  Good morning, Your Honor.  Danielle

15   Kitson on behalf of Frontier.

16             THE COURT:  Okay, just make it simple, please.

17             MS. NEEL:  Okay.  So we're back on the same issue

18   that we have discussed with Your Honor on two separate

19   occasions and briefed in discovery dispute memos to the

20   Court.  It's the issue of the comparator data and the

21   universe of the comparator data.  Like you already

22   recognized, we have the same issue pending in the pilots'

23   case in front of Judge Crews, and I think we're at an

24   impasse.

25             The parties at this point, I believe, have both
```

1    requested the ability to just brief the issue.  Frontier has

2    indicated that it is sort of sticking with its original

3    position of only providing information on comparators who

4    sought accommodations for medical reasons, essentially.  And

5    since we're back to the starting point, really, we believe

6    that briefing at this point is probably necessary.

7           THE COURT:  And did you brief the other one or is

8    that still at the informal stage?

9           MS. NEEL:  Our reply is due on Monday, I believe,

10   and the sur-reply is due the following week.

11          THE COURT:  So really all you want to do is copy

12   those briefs into this case?

13          MS. NEEL:  It's going to be very similar briefing,

14   yes.  The issues are already pending, so what we -- what

15   plaintiffs would propose as one option would be to do

16   cross-motions, or either we do a motion and we go through the

17   motion response/reply, or since it's already briefed, we

18   could -- both parties could submit cross-motions and

19   cross-responses and have it fully briefed within a couple of

20   weeks.

21          THE COURT:  Do you strongly oppose consolidation?

22          MS. KITSON:  We do, Your Honor.  And candidly, I

23   have not looked back at that briefing, it has been so long.

24   You know, for purposes of this particular motion, there is

25   one major distinction between the two cases, and that is the

6

1    flight attendant dependability policy and the discipline

2    based on attendance, which is an issue that's not present in

3    the pilot case, and so we would, at a minimum, be addressing

4    that afresh for Your Honor, and it would not be an issue that

5    would -- you would be able to review in the pilot case.

6            THE COURT:  Okay.  Yeah, well, I think since it's

7    going to require minimal effort, given the fact that you

8    already laid the groundwork, that's fine.  And in fact, yeah,

9    I mean, you'll have already filed your respective briefs

10   through the reply in the other case before you get around to

11   doing that here.  You might as well just get them in as soon

12   as you can and not rely on the briefing schedule.

13           MS. NEEL:  Sure, we would propose -- we could get

14   our motion filed by a week from tomorrow.

15           THE COURT:  Okay, that's fine.  And then a week?

16           MS. KITSON:  Sure, Your Honor.

17           THE COURT:  And then a week?

18           MS. NEEL:  Sure.

19           THE COURT:  All right, that's good, we can have it

20   briefed in two weeks.  In the meantime, I'm going to be

21   poking around, trying to get you a decision on that other

22   issue, because it's kind of critical.  Who are you going to

23   be in front of?

24           MS. NEEL:  That case is in front of Judge Arguello.

25           THE COURT:  That is, yeah.  So as you know, she has

1    the authority as a judicial officer on the older case to

2    decide yes or no.  I don't have an opinion.  I would be

3    finished, though, if it was consolidated, which is okay.

4            Okay, what else?

5            MS. NEEL:  That is it from the plaintiffs, I

6    believe, unless my colleagues have anything further to add.

7            THE COURT:  Are you guys just still on auto pilot?

8            MS. NEEL:  Funny.  We are not on auto pilot.  We

9    are doing successive --

10           THE COURT:  Yeah, the auto pilot was a reference to

11   heading straight for that tower, not turning to the right or

12   left or landing that plane.  You're just on litigation auto

13   pilot.

14           MS. NEEL:  Oh, litigation?  Yes.  There has not

15   been any talk of a settlement and there hasn't been in quite

16   a while.

17           THE COURT:  Okay.  Have there been any changes at

18   all in policies or practices either?

19           MS. KITSON:  I think only the one you're aware of,

20   Your Honor, which was Frontier, in the wake of these new

21   wearable lactation devises, had conducted a safety risk

22   analysis --

23           THE COURT:  I know.

24           MS. KITSON:  -- into that, and that was the last

25   development in terms of policy change that I'm aware of.

8

1          THE COURT:  Did you get the FAA to weigh in too, if

2     I recall?

3          MS. KITSON:  We got the FAA to weigh in on the

4     issue of whether pilots sitting on the tarmac, you know, with

5     the parking brake set, whether they can take a break to

6     express breast milk, and the FAA's answer on that was, no,

7     they cannot.

8          THE COURT:  Under what administration was that

9     decision issued?  The previous one?

10         MS. KITSON:  That would be correct, Your Honor.

11         THE COURT:  All right, just saying.  The answer

12    might be different now.  Okay.  Well, I guess I'll look

13    forward to getting your briefs and I will see if -- I think

14    you're right in the sense that you'll have a decision in the

15    next two weeks.  You guys are on the six-month list.

16         Have you had other discovery disputes in that case?

17         MS. NEEL:  That's the only one that's been briefed,

18    I believe.  We've had other disputes, but we're working

19    through them as we have been in this case.

20         THE COURT:  But have you had informal conferences

21    with Judge Crews?

22         MS. NEEL:  I think with Judge Crews we've just had

23    the one informal conference, but I actually -- yeah, only one

24    informal conference with him, Judge Crews, which resulted in

25    the briefing schedule.

9

1          THE COURT:  Okay, thank you, you guys.  Good to see

2    you.

3          MS. NEEL:  Thank you.

4          MS. KITSON:  Thank you, Your Honor.

5          THE COURT:  Take care.  Bye, Galen; bye, Juno.

6          MS. SHERWIN:  Thank you, Judge.

7          MS. TURNER:  Thank you, Your Honor.

8          (Whereupon, the within hearing was then in

9    conclusion at 11:35 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    TRANSCRIBER'S CERTIFICATION

2      I certify that the foregoing is a correct transcript to the

3      best of my ability to hear and understand the audio recording

4      and based on the quality of the audio recording from the

5      above-entitled matter.

6

7      /s/ Dyann Labo                      October 15, 2021

8      Signature of Transcriber            Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25